# EXHIBIT A



# PROCESS SERVER DELIVERY DETAILS

**Date:**                                        Mon, Feb 5, 2024
**Server Name:**                                 Drop Service

| Entity Served | CABLE NEWS NETWORK, INC. |
|---|---|
| Case Number | **24CV061464** |
| Jurisdiction | GA |

| Inserts |
|---|
| | | |



**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
CABLE NEWS NETWORK, INC.,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CAROL LESH, individually and on behalf of all others similarly situated,

**ELECTRONICALLY FILED**
Superior Court of California
County of Alameda
**01/25/2024**
Chad Finke, Executive Officer / Clerk of the Court
By: _____ M. Cortez _____ Deputy

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court of California,

County of Alameda, 1225 Fallon Street, Oakland, CA 94612

| CASE NUMBER: *(Número del Caso):* | **24CV061464** |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Emily A. Horne, Bursor & Fisher, P.A., 1990 N. California Blvd., Suite 940, Walnut Creek, CA, Tel. (925) 300-4455

DATE: 01/25/2024    Chad Finke, Executive Officer / Clerk of the Court    Clerk, by _____, Deputy
*(Fecha)*    *(Secretario)*    M. Cortez    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Cable News Network, Inc.
   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Emily A. Horne (State Bar No. 347723)<br>Bursor & Fisher, P.A., 1990 N. California Blvd., Ste 940, Walnut Creek, CA 94596<br>TELEPHONE NO.: (925) 300-4455    FAX NO.: (925) 407-2700<br>EMAIL ADDRESS: ehorne@bursor.com<br>ATTORNEY FOR *(Name):* Plaintiff Carol Lesh | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Alameda<br>**01/25/2024 at 05:36:50 PM**<br>By: Milagros Cortez,<br>Deputy Clerk |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME:

CASE NAME:
Carol Lesh v. Cable News Network, Inc.

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|
| [×] **Unlimited** (Amount demanded exceeds $35,000) [ ] **Limited** (Amount demanded is $35,000 or less) | [ ] Counter [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | **24CV061464**<br>JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1.  Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[×] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2.  This case [×] is [ ] is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
    a. [ ] Large number of separately represented parties
    b. [×] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
    c. [×] Substantial amount of documentary evidence
    d. [×] Large number of witnesses
    e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
    f. [ ] Substantial postjudgment judicial supervision

3.  Remedies sought *(check all that apply):* a. [×] monetary  b. [×] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4.  Number of causes of action *(specify):* One
5.  This case [×] is [ ] is not  a class action suit.
6.  If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: January 25, 2024
Emily A. Horne

(TYPE OR PRINT NAME)    ▶    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                                                CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
    Auto (22)–Personal Injury/Property
        Damage/Wrongful Death
        Uninsured Motorist (46) *(if the
        case involves an uninsured
        motorist claim subject to
        arbitration, check this item
        instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death) Tort**
    Asbestos (04)
        Asbestos Property Damage
        Asbestos Personal Injury/
            Wrongful Death
    Product Liability *(not asbestos or
        toxic/environmental)* (24)
    Medical Malpractice (45)
        Medical Malpractice–
            Physicians & Surgeons
        Other Professional Health Care
            Malpractice
    Other PI/PD/WD (23)
        Premises Liability (e.g., slip
            and fall)
        Intentional Bodily Injury/PD/WD
            (e.g., assault, vandalism)
        Intentional Infliction of
            Emotional Distress
        Negligent Infliction of
            Emotional Distress
        Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
    Business Tort/Unfair Business
        Practice (07)
    Civil Rights (e.g., discrimination,
        false arrest) *(not civil
        harassment)* (08)
    Defamation (e.g., slander, libel) (13)
    Fraud (16)
    Intellectual Property (19)
    Professional Negligence (25)
        Legal Malpractice
        Other Professional Malpractice
            *(not medical or legal)*
    Other Non-PI/PD/WD Tort (35)
**Employment**
    Wrongful Termination (36)
    Other Employment (15)

**Contract**
    Breach of Contract/Warranty (06)
        Breach of Rental/Lease
            Contract *(not unlawful detainer
                or wrongful eviction)*
        Contract/Warranty Breach–Seller
            Plaintiff *(not fraud or negligence)*
        Negligent Breach of Contract/
            Warranty
        Other Breach of Contract/Warranty
    Collections (e.g., money owed, open
        book accounts) (09)
        Collection Case–Seller Plaintiff
        Other Promissory Note/Collections Case
    Insurance Coverage *(not provisionally
        complex)* (18)
        Auto Subrogation
        Other Coverage
    Other Contract (37)
        Contractual Fraud
        Other Contract Dispute
**Real Property**
    Eminent Domain/Inverse
        Condemnation (14)
    Wrongful Eviction (33)
    Other Real Property (e.g., quiet title) (26)
        Writ of Possession of Real Property
        Mortgage Foreclosure
        Quiet Title
        Other Real Property *(not eminent
            domain, landlord/tenant, or
            foreclosure)*
**Unlawful Detainer**
    Commercial (31)
    Residential (32)
    Drugs (38) *(if the case involves illegal
        drugs, check this item; otherwise,
        report as Commercial or Residential)*
**Judicial Review**
    Asset Forfeiture (05)
    Petition Re: Arbitration Award (11)
    Writ of Mandate (02)
        Writ–Administrative Mandamus
        Writ–Mandamus on Limited Court
            Case Matter
        Writ–Other Limited Court Case Review
    Other Judicial Review (39)
        Review of Health Officer Order
        Notice of Appeal–Labor Commissioner
            Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
    Antitrust/Trade Regulation (03)
    Construction Defect (10)
    Claims Involving Mass Tort (40)
    Securities Litigation (28)
    Environmental/Toxic Tort (30)
    Insurance Coverage Claims
        *(arising from provisionally complex
        case type listed above)* (41)
**Enforcement of Judgment**
    Enforcement of Judgment (20)
        Abstract of Judgment (Out of County)
        Confession of Judgment *(non-domestic
            relations)*
        Sister State Judgment
        Administrative Agency Award
            *(not unpaid taxes)*
        Petition/Certification of Entry of
            Judgment on Unpaid Taxes
        Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
    RICO (27)
    Other Complaint *(not specified above)* (42)
        Declaratory Relief Only
        Injunctive Relief Only *(non-
            harassment)*
        Mechanics Lien
        Other Commercial Complaint
            Case *(non-tort/non-complex)*
        Other Civil Complaint
            *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
    Partnership and Corporate
        Governance (21)
    Other Petition *(not specified above)* (43)
        Civil Harassment
        Workplace Violence
        Elder/Dependent Adult Abuse
        Election Contest
        Petition for Name Change
        Petition for Relief From Late Claim
        Other Civil Petition

| Short Title: | | Case Number: |
|---|---|---|
| Carol Lesh v. Cable News Network, Inc. | | |

## CIVIL CASE COVER SHEET ADDENDUM

**THIS FORM IS REQUIRED IN ALL NEW UNLIMITED CIVIL CASE FILINGS IN THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**

| [ x ] Oakland, Rene C. Davidson Alameda County Courthouse (446) | [ ] Hayward Hall of Justice (447) |
|---|---|
| | [ ] Pleasanton, Gale-Schenone Hall of Justice (448) |

| Civil Case Cover Sheet Category | Civil Case Cover Sheet Case Type | Alameda County Case Type (check only one) | | |
|---|---|---|---|---|
| Auto Tort | Auto tort (22) | [ ] | 34 | Auto tort (G) |
| | | **Is this an uninsured motorist case? [ ] yes [ ] no** | | |
| Other PI /PD / WD Tort | Asbestos (04) | [ ] | 75 | Asbestos (D) |
| | Product liability (24) | [ ] | 89 | Product liability (not asbestos or toxic tort/environmental) (G) |
| | Medical malpractice (45) | [ ] | 97 | Medical malpractice (G) |
| | Other PI/PD/WD tort (23) | [ ] | 33 | Other PI/PD/WD tort (G) |
| Non - PI /PD / WD Tort | Bus tort / unfair bus. practice (07) | [x] | 79 | Bus tort / unfair bus. practice (G) |
| | Civil rights (08) | [ ] | 80 | Civil rights (G) |
| | Defamation (13) | [ ] | 84 | Defamation (G) |
| | Fraud (16) | [ ] | 24 | Fraud (G) |
| | Intellectual property (19) | [ ] | 87 | Intellectual property (G) |
| | Professional negligence (25) | [ ] | 59 | Professional negligence - non-medical (G) |
| | Other non-PI/PD/WD tort (35) | [ ] | 03 | Other non-PI/PD/WD tort (G) |
| Employment | Wrongful termination (36) | [ ] | 38 | Wrongful termination (G) |
| | Other employment (15) | [ ] | 85 | Other employment (G) |
| | | [ ] | 53 | Labor comm award confirmation |
| | | [ ] | 54 | Notice of appeal - L.C.A. |
| Contract | Breach contract / Wrnty (06) | [ ] | 04 | Breach contract / Wrnty (G) |
| | Collections (09) | [ ] | 81 | Collections (G) |
| | Insurance coverage (18) | [ ] | 86 | Ins. coverage - non-complex (G) |
| | Other contract (37) | [ ] | 98 | Other contract (G) |
| Real Property | Eminent domain / Inv Cdm (14) | [ ] | 18 | Eminent domain / Inv Cdm (G) |
| | Wrongful eviction (33) | [ ] | 17 | Wrongful eviction (G) |
| | Other real property (26) | [ ] | 36 | Other real property (G) |
| Unlawful Detainer | Commercial (31) | [ ] | 94 | Unlawful Detainer - commercial **Is the deft. in possession** |
| | Residential (32) | [ ] | 47 | Unlawful Detainer - residential **of the property?** |
| | Drugs (38) | [ ] | 21 | Unlawful detainer - drugs **[ ] Yes [ ] No** |
| Judicial Review | Asset forfeiture (05) | [ ] | 41 | Asset forfeiture |
| | Petition re: arbitration award (11) | [ ] | 62 | Pet. re: arbitration award |
| | Writ of Mandate (02) | [ ] | 49 | Writ of mandate |
| | | **Is this a CEQA action (Publ.Res.Code section 21000 et seq) [ ] Yes [ ] No** | | |
| | Other judicial review (39) | [ ] | 64 | Other judicial review |
| Provisionally Complex | Antitrust / Trade regulation (03) | [ ] | 77 | Antitrust / Trade regulation |
| | Construction defect (10) | [ ] | 82 | Construction defect |
| | Claims involving mass tort (40) | [ ] | 78 | Claims involving mass tort |
| | Securities litigation (28) | [ ] | 91 | Securities litigation |
| | Toxic tort / Environmental (30) | [ ] | 93 | Toxic tort / Environmental |
| | Ins covrg from cmplx case type (41) | [ ] | 95 | Ins covrg from complex case type |
| Enforcement of Judgment | Enforcement of judgment (20) | [ ] | 19 | Enforcement of judgment |
| | | [ ] | 08 | Confession of judgment |
| Misc Complaint | RICO (27) | [ ] | 90 | RICO (G) |
| | Partnership / Corp. governance (21) | [ ] | 88 | Partnership / Corp. governance (G) |
| | Other complaint (42) | [ ] | 68 | All other complaints (G) |
| Misc. Civil Petition | Other petition (43) | [ ] | 06 | Change of name |
| | | [ ] | 69 | Other petition |

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF ALAMEDA

COURTHOUSE ADDRESS:
Rene C. Davidson Courthouse
Administration Building, 1221 Oak Street, Oakland, CA 94612

PLAINTIFF:
Carol Lesh

DEFENDANT:
Cable News Network, Inc.

**NOTICE OF CASE MANAGEMENT CONFERENCE**

**FILED**
Superior Court of California
County of Alameda

01/25/2024

Chad Finke, Executive Officer/Clerk of the Court

By: _Nahyma Utley_ Deputy

M. Cortez

CASE NUMBER:
24CV061464

TO THE PLAINTIFF(S)/ATTORNY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve all named defendants and file proofs of service on those defendants with the court within 60 days of the filing of the complaint (Cal. Rules of Court, 3.110(b)).

Give notice of this conference to all other parties and file proof of service.

Your Case Management Conference has been scheduled on:

> Date: 05/24/2024    Time: 8:30 AM    Dept.: 23
>
> Location: Rene C. Davidson Courthouse
> Administration Building, 1221 Oak Street, Oakland, CA 94612

TO DEFENDANT(S)/ATTORNEY(S) FOR DEFENDANT(S) OF RECORD:

The setting of the Case Management Conference does not exempt the defendant from filing a responsive pleading as required by law, you must respond as stated on the summons.

TO ALL PARTIES who have appeared before the date of the conference must:

Pursuant to California Rules of Court, 3.725, a completed Case Management Statement (Judicial Council form CM-110) must be filed and served at least 15 calendar days before the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record.

**Meet and confer**, in person or by telephone as required by Cal. Rules of Court, rule 3.724.

**Post jury fees** as required by Code of Civil Procedure section 631.

If you do not follow the orders above, the court may issue an order to show cause why you should not be sanctioned under Cal. Rules of Court, rule 2.30. Sanctions may include monetary sanctions, striking pleadings or dismissal of the action.

The judge may place a Tentative Case Management Order in your case's on-line register of actions before the conference. This order may establish a discovery schedule, set a trial date or refer the case to Alternate Dispute Resolution, such as mediation or arbitration. Check the court's eCourt Public Portal for each assigned department's procedures regarding tentative case management orders at https://eportal.alameda.courts.ca.gov.

**NOTICE OF**
**CASE MANAGEMENT CONFERENCE**

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>01/25/2024<br>Chad Finke, Executive Officer/Clerk of the Court<br>By: _Madigan Cortez_ Deputy<br>M. Cortez |
| PLAINTIFF/PETITIONER:<br>Carol Lesh | |
| DEFENDANT/RESPONDENT:<br>Cable News Network, Inc. | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>24CV061464 |

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the attached document upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Oakland, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.


Emily A. Horne
Bursor & Fisher, P.A.
1990 N. California Blvd. 940
Walnut Creek, CA 94596


Chad Finke, Executive Officer / Clerk of the Court

Dated: 01/26/2024          By:

_Madigan Cortez_

M. Cortez, Deputy Clerk

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
01/25/2024 at 05:36:50 PM
By: Milagros Cortez,
Deputy Clerk

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Emily A. Horne (State Bar No. 347723)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
         ehorne@bursor.com

*Attorneys for Plaintiff*

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ALAMEDA

24CV061464

CAROL LESH, individually and on behalf of all others similarly situated,

                                        Plaintiff,

v.

CABLE NEWS NETWORK, INC.,

                                        Defendant.

CLASS ACTION

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Carol Lesh ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.    Defendant Cable News Network, Inc. ("Defendant" or "CNN") owns and operates a website, cnn.com (the "Website").

2.    When users visit the Website, Defendant causes three Trackers—the PubMatic Tracker, Rubicon Tracker, and Aniview Tracker (the "Trackers")—to be installed on Website visitors' internet browsers.  Defendant then uses these Trackers to collect Website visitors' IP addresses.

3.    Because the Trackers capture Website visitors' "routing, addressing, or signaling information," the Trackers constitute a "pen register" under Section 638.50(b) of the California Invasion of Privacy Act ("CIPA").  (Cal. Penal Code § 638.50(b); *see also Greenley v. Kochava, Inc.* (S.D. Cal. July 27, 2023) 2023 WL 4833466.)

4.    By installing and using the Trackers without Plaintiff's prior consent and without a court order, Defendant violated CIPA section 638.51(a).

5.    Plaintiff brings this action to prevent Defendant from further violating the privacy rights of California residents, and to recover statutory damages for Defendant's violation of CIPA § 638.51.

## PARTIES

6.    Plaintiff Lesh resides in Berkeley, California and has an intent to remain there, and is therefore a citizen of California.  Plaintiff Lesh was in California when she visited the Website.

7.    Defendant CNN is a Delaware corporation with its principal place of business in Atlanta, Georgia.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction over this action pursuant to Article VI, section 10 of the California Constitution and California Code of Civil Procedure section 410.10.

This action is brought as a class action on behalf of Plaintiff and Class Members pursuant to California Code of Civil Procedure section 382.

9.    This Court has personal jurisdiction over Defendant. *First*, using the information collected by the Trackers (as alleged in more detail below), Defendant targets Californians with advertisements based on their California residence, and analyzes the web traffic of California visitors in order to more effectively gauge website performance.    Accordingly, Defendant's conduct is expressly aimed at California. *Second*, Defendant knowingly avails itself of the privilege of doing business in California because the Website includes California-specific provisions in its Privacy Statement in recognition that California citizens use Defendant's Website.    *Third*, Defendant maintains offices in Los Angeles, which are linked to Defendant's provision of news stories through Defendant's Website. *See Kauffman v. Papa John's Int'l, Inc.*, 2024 WL 171363, at \*3-4 (S.D. Cal. Jan. 12, 2024) (finding personal jurisdiction over website operator based on aforementioned three factors). *Finally*, the conduct alleged in this Complaint occurred in and emanated from this State because it was in California that CNN caused the Trackers to be installed on Plaintiff's browser, and it was in California that the Trackers instructed Plaintiff's browser to send her IP address to the third parties. *See Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 131 (3d Cir. 2022).

10.    Venue is proper in this District because the conduct alleged in this Complaint occurred in this County.

## FACTUAL ALLEGATIONS

### I.    THE CALIFORNIA INVASION OF PRIVACY ACT

11.    The California Legislature enacted CIPA to protect certain privacy rights of California citizens.  The California Legislature expressly recognized that "the development of new devices and techniques for the purpose of eavesdropping upon private communications … has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." (Cal. Penal Code § 630.)

12.    As relevant here, CIPA section 638.51(a) proscribes any "person" from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order."

13.     A "pen register" is a "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." (Cal. Penal Code § 638.50(b).)

14.     A "trap and trace device" is a "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." (Cal. Penal Code § 638.50(b).)

15.     In plain English, a "pen register" is a "device or process" that records *outgoing* information, while a "trap and trace device" is a "device or process" that records *incoming* information.

16.     Historically, law enforcement used "pen registers" to record the numbers of outgoing calls from a particular telephone line, while law enforcement used "trap and trace devices" to record the numbers of incoming calls to that particular telephone line. As technology advanced, however, courts have expanded the application of these surveillance devices.

17.     For example, if a user sends an email, a "pen register" might record the email address it was sent from, the email address the email was sent to, and the subject line—because this is the user's *outgoing* information. On the other hand, if that same user receives an email, a "trap and trace device" might record the email address it was sent from, the email address it was sent to, and the subject line—because this is *incoming* information that is being sent to that same user.

18.     Although CIPA was enacted before the dawn of the Internet, "the California Supreme Court regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme." (*In re Google Inc.* (N.D. Cal. Sep. 26, 2013) 2013 WL 5423918, at *21; *see also Greenley, supra*, 2023 WL 4833466, at *15 [referencing CIPA's "expansive language" when finding software was a "pen register"]; *Javier v. Assurance IQ, LLC* (9th Cir. May 31, 2022) 2022 WL 1744107, at *1 ["Though written in terms of wiretapping, [CIPA] Section 631(a) applies to Internet communications."].) This accords with the fact that, "when faced with two possible interpretations of CIPA, the California Supreme Court has construed CIPA in accordance with the

1    interpretation that provides the greatest privacy protection." (*Matera v. Google Inc.* (N.D. Cal. Aug.

2    12, 2016) 2016 WL 8200619, at *19.)

3        19.    Individuals may bring an action against the violator of any provision of CIPA—

4    including CIPA section 638.51—for $5,000 per violation. (Cal. Penal Code § 637.2(a)(1).)

5    **II.    DEFENDANT VIOLATES THE CALIFORNIA INVASION OF PRIVACY ACT**

6        **A.    The Trackers Are "Pen Registers"**

7        20.    To make Defendant's Website load on a user's internet browser, the browser sends

8    an "HTTP request" or "GET" request to Defendant's server where the relevant Website data is stored.

9    In response to the request, Defendant's server sends an "HTTP response" back to the browser with

10   a set of instructions. A general diagram of this process is pictured at Figure 1, which explains how

11   Defendant's Website transmits instructions back to users' browsers in response to HTTP requests.

12   *See* Figure 1.

13       **Figure 1:**



20       21.    The server's instructions include how to properly display the Website—*e.g.*, what

21   images to load, what text should appear, or what music should play.

22       22.    In addition, the server's instructions cause the Trackers to be installed on a user's

23   browser. The Trackers then cause the browser to send identifying information—including the user's

24   IP address—to PubMatic, Magnite, and Aniview.

25       23.    The IP address is a unique identifier for a device, which is expressed as four sets of

26   numbers separated by periods (*e.g.*, 192.168.123.132). The first two sets of numbers indicate what

network the device is on (*e.g.*, 192.168), and the second two sets of numbers identify the specific device (*e.g.*, 123.132).

24.    Thus, the IP address enables a device to communicate with another device—such as a computer's browser communicating with a server—and the IP address contains geographical location. Through an IP address, the device's state, city, and zip code can be determined.

25.    As alleged below, Defendant installs each of the Trackers on the user's browser, and the Trackers collect information—users' IP addresses—that identifies the outgoing "routing, addressing, or signaling information" of the user. Accordingly, the Trackers are each "pen registers."

　　　　*1.    PubMatic Tracker*

26.    PubMatic is a software-as-a-service company that develops the PubMatic Tracker, which it provides to website owners like Defendant for a fee.

27.    According to PubMatic, it is "one of the world's leading scaled digital advertising platforms" and "offer[s] more transparent advertising solutions to publishers, media buyers and data owners, allowing [their clients] to harness the power and potential of the open internet to drive better business outcomes."[1]

28.    In other words, PubMatic enables companies to sell advertising space on their websites, thereby earning revenue, and allows companies to place advertisements on other companies' websites, thereby driving brand awareness and sales. To achieve this, PubMatic uses its Tracker to receive, store, and analyze information collected from website visitors, such as visitors of Defendant's Website.

29.    The first time a user visits Defendant's Website, the user's browser sends an HTTP request to Defendant's server, and Defendant's server sends an HTTP response with directions to install the PubMatic Tracker on the user's browser. The PubMatic Tracker, in turn, instructs the user's browser to send PubMatic the user's IP address.

30.    Moreover, PubMatic stores a cookie with the user's IP address in the user's browser cache. When the user subsequently visits Defendant's Website, the PubMatic Tracker locates the

---

[1] *The Supply Chain Of The Future. Delivered*, PUBMATIC, https://pubmatic.com/about-us (last visited Jan. 18, 2024).

cookie identifier stored on the user's browser. If the cookie is stored on the browser, the PubMatic Tracker causes the browser to send the cookie along with the user's IP address to PubMatic. A general diagram of this process is pictured as Figure 2, which explains how the Website causes the PubMatic Tracker to install a cookie on the user's browser instructs the user's browser to send the user's IP address through the cookie. *See* Figure 2.

**Figure 2:**



31.     If the user clears his or her cookies, then the user wipes out the PubMatic Tracker from its cache. Accordingly, the next time the user visits Defendant's Website the process begins over again: (i) Defendant's server installs the PubMatic Tracker on the user's browser, (ii) the PubMatic Tracker instructs the browser to send PubMatic the user's IP address, (iii) the PubMatic Tracker stores a cookie in the browser cache, and (iv) PubMatic will continue to receive the user's IP address on subsequent Website visits as part of the cookie transmission (*see* ¶ 30, *supra*).

32.     In all cases, however, PubMatic receives a user's IP address each and every time a user interacts with the website of one of PubMatic's clients, including Defendant's Website. *See* Figure 3.

**Figure 3:**



33.     The PubMatic Tracker is at least a "process" because it is "software that identifies consumers, gathers data, and correlates that data." (*Greenley, supra,* 2023 WL 4833466, at *15.)

34.     Further, the PubMatic Tracker is a "device" because "in order for software to work, it must be run on some kind of computing device." (*See, e.g., James v. Walt Disney Co.* (N.D. Cal. Nov. 8, 2023) --- F. Supp. 3d ---, at *13 [2023 WL 7392285].)

35.     Because the PubMatic Tracker captures the outgoing information—the IP address—from visitors to websites, it is a "pen register" for the purposes of CIPA § 638.50(b).

      2.     *Rubicon Tracker*

36.     Magnite, Inc. ("Magnite") is a software-as-a-service company that develops the Rubicon Tracker, which it provides to website owners like Defendant for a fee.

37.     According to Magnite, it "is the world's largest independent sell-side advertising company. Publishers use [their] technology to monetize their content [and] [t]he world's leading agencies and brands trust [Magnite's] platform to access ... billions of advertising transactions each month."[2]

---

[2] *iHeartMedia and Magnite Unify Access to Broadcast and Digital Audio, Providing Advertisers with a Direct Path to Premium Inventory,* Magnite (Jan. 9, 2024), https://investor.magnite.com/

38.     In other words, Magnite enables companies to sell advertising space on their websites, thereby earning revenue, and allows companies to place advertisements on other companies' websites, thereby driving brand awareness and sales.  To achieve this, Magnite uses its Tracker to receive, store, and analyze information collected from website visitors, such as visitors of Defendant's Website.

39.     Similar to above, the first time a user visits Defendant's Website, the user's browser sends an HTTP request to Defendant's server, and Defendant's server sends an HTTP response with directions to install the Rubicon Tracker on the user's browser.  The Rubicon Tracker, in turn, instructs the user's browser to send Magnite the user's IP address.

40.     Moreover, Magnite stores a cookie with the user's IP address in the user's browser cache.  When the user subsequently visits Defendant's Website, the Rubicon Tracker locates the cookie identifier stored on the user's browser.  If the cookie is stored on the browser, the Rubicon Tracker causes the browser to send the cookie along with the user's IP address to Magnite.  A general diagram of this process is pictured as Figure 2, which explains how the Website causes the Rubicon Tracker to install a cookie on the user's browser instructs the user's browser to send the user's IP address through the cookie.  *See* Figure 2.

41.     If the user clears his or her cookies, then the user wipes out the Rubicon Tracker from its cache.  Accordingly, the next time the user visits Defendant's Website the process begins over again: (i) Defendant's server installs the Rubicon Tracker on the user's browser, (ii) the Rubicon Tracker instructs the browser to send Magnite the user's IP address, (iii) the Rubicon Tracker stores a cookie in the browser cache, and (iv) Magnite will continue to receive the user's IP address on subsequent Website visits as part of the cookie transmission (*see* ¶ 30, *supra*).

42.     In all cases, however, Magnite receives a user's IP address each and every time a user interacts with the website of one of Magnite's clients, including Defendant's Website.  *See* Figure 4.

---

news-releases/news-release-details/iheartmedia-and-magnite-unify-access-broadcast-and-digital-audio.

**Figure 4:**



43.     The Rubicon Tracker is at least a "process" because it is "software that identifies consumers, gathers data, and correlates that data." (*Greenley, supra,* 2023 WL 4833466, at *15.)

44.     Further, the Rubicon Tracker is a "device" because "in order for software to work, it must be run on some kind of computing device." (*James, supra,* --- F. Supp. 3d ---, 2023 WL 7392285, at *13.)

45.     Because the Rubicon Tracker captures the outgoing information—the IP address—from visitors to websites, it is a "pen register" for the purposes of CIPA § 638.50(b).

3.     *Aniview Tracker*

46.     Aniview Inc. ("Aniview") is a software-as-a-service company that develops the Aniview Tracker, which it provides to website owners like Defendant for a fee.

47.     According to Aniview, it "is a global adtech and media company whose platform is playing an increasingly central role in delivering efficient and effective video advertising across the open web."[3]

48.     Just like PubMatic and Magnite, Aniview uses its Tracker to receive, store, and analyze data collected from website visitors, such as visitors of Defendant's Website.

_____

[3] *About Us,* ANIVIEW, https://www.aniview.com/about (last visited Jan. 18, 2024).

49.    As discussed above, the first time a user visits Defendant's Website, the user's browser sends an HTTP request to Defendant's server, and Defendant's server sends the HTTP response. This response also includes directions to install the Aniview Tracker on the user's browser. The Aniview Tracker, in turn, instructs the user's browser to send the user's IP address to Aniview.

50.    Moreover, Aniview stores a cookie with the user's IP address in the user's browser cache. When the user subsequently visits Defendant's Website, the Aniview Tracker locates the cookie identifier stored on the user's browser. If the cookie is stored on the browser, the Aniview Tracker causes the browser to send the cookie along with the user's IP address to Aniview. A general diagram of this process is pictured as Figure 2, which explains how the Website causes the Aniview Tracker to install a cookie on the user's browser instructs the user's browser to send the user's IP address through the cookie. *See* Figure 2.

51.    If the user clears his or her cookies, then the user wipes out the Aniview Tracker from its cache. Accordingly, the next time the user visits Defendant's Website the process begins over again: (i) Defendant's server installs the Aniview Tracker on the user's browser, (ii) the Aniview Tracker instructs the browser to send Aniview the user's IP address, (iii) the Aniview Tracker stores a cookie in the browser cache, and (iv) Aniview will continue to receive the user's IP address on subsequent Website visits as part of the cookie transmission (*see* ¶ 30, *supra*).

52.    In all cases, however, Aniview receives a user's IP address each and every time a user interacts with the website of one of Aniview clients, including Defendant's Website. *See* Figure 5.

**Figure 5:**



53.     The Aniview Tracker is at least a "process" because it is "software that identifies consumers, gathers data, and correlates that data." (*Greenley, supra*, 2023 WL 4833466, at *15.)

54.     Further, the Aniview Tracker is a "device" because "in order for software to work, it must be run on some kind of computing device." (*James, supra*, 2023 WL 7392285, at *13.)

55.     Because the Aniview Tracker captures the outgoing information—the IP address—from visitors to websites, it is a "pen register" for the purposes of CIPA § 638.50(b).

**B.      Defendant Installed And Used The Trackers On Plaintiff's and Users' Browsers Without Prior Consent Or A Court Order**

56.     Defendant owns and operates the Website. The Website "is the world leader in online news and information and seeks to inform, engage and empower the world."[4] The Website provides news on politics, business, finance, technology, sports, national and international affairs, as well as op-eds, entertainment information, and short films.

---

[4] *About CNN Digital*, CNN, https://www.cnn.com/about (last visited Jan. 18, 2024).

57.     When companies build their websites, they install or integrate various third-party scripts into the code of the website in order to collect data from users or perform other functions.[5]

58.     Often times, third-party scripts are installed on websites "for advertising purposes."[6]

59.     Further, "[i]f the same third-party tracker is present on many sites, it can build a more complete profile of the user over time."[7]

60.     Defendant has long incorporated the code of the Trackers into the code of its Website, including when Plaintiff and Class Members visited the Website.  Thus, when Plaintiff visited the Website, the Website caused the Trackers to be installed on Plaintiff's and other users' browsers.

61.     As outlined above, when a user visits the Website, the Website's code—as programmed by Defendant—installs the Trackers onto the user's browser.

62.     Upon installing the Trackers on its Website, Defendant uses the Trackers to collect the IP address of visitors to the Website, including the IP address of Plaintiff and Class Members.  *See* Figures 6 (PubMatic Tracker), 7 (Rubicon Tracker), and 8 (Aniview Tracker).

**Figure 6:**



---

[5] *See Third-party Tracking*, PIWIK, https://piwik.pro/glossary/third-party-tracking/ ("Third-party tracking refers to the practice by which a tracker, other than the website directly visited by the user, traces or assists in tracking the user's visit to the site. Third-party trackers are snippets of code that are present on multiple websites. They collect and send information about a user's browsing history to other companies…") (last visited Jan. 19, 2024).

[6] *Id.*

[7] *Id.*

**Figure 7:**



**Figure 8:**



63.     Defendant then uses the IP address of Website visitors, including those of Plaintiff and Class Members, to serve targeted advertisements and conduct website analytics.

64.     At no time prior to the installation and use of the Trackers on Plaintiff's and Class Members's browsers, or prior to the use of the Trackers, did Defendant procure Plaintiff's and Class Members's consent for such conduct.  Nor did Defendant obtain a court order to install or use the Trackers.

### C.    Defendant's Conduct Constitutes An Invasion Of Plaintiff's And Class Members' Privacy

65.     The collection of Plaintiff's and Class Members personally identifying, non-anonymized information through Defendant's installation and use of the Trackers constitutes an invasion of privacy.

66.    As alleged herein, the Trackers are designed to analyze Website data and marketing campaigns, conduct targeted advertising, and boost Defendant's revenue, all through their surreptitious collection of Plaintiff's and Class Members' data.

*1.    Defendant Discloses User's Data To PubMatic For The Purpose Of Marketing, Advertising, And Analytics*

67.    PubMatic describes itself as a digital advertising platform that "exist[s] to enable content creators to run a more profitable advertising business, which in turn allows them to invest back into the multi-screen and multi-format content that consumers demand."[8]

68.    PubMatic helps companies like Defendant market, advertise, and analyze user data from its website.    For example, PubMatic enables publishers to place advertisements on their webpages to further monetize their websites.[9]    To ensure that an effective advertisement is shown to the consumer, the publisher shares data about the user with PubMatic and PubMatic serves the targeted ad.[10]

69.    PubMatic also helps advertisers select where to place their ads, to help companies "[s]mash [their] campaign KPIs" and "reach [their] target audiences more effectively."[11]    One of the ways in which PubMatic accomplishes this is by selling "action packages," which are data sets—pulled together from different sources—to help advertisers target specific customers.[12]    In other words, PubMatic utilizes third-party data, as well as data from the publisher where the ad is ultimately placed (*i.e.*, first-party), to determine where to place advertisers' ads and who to place them in front of.

---

[8] *The Supply Chain Of The Future. Delivered*, PUBMATIC, https://pubmatic.com/about-us (last visited Jan. 18, 2024).

[9] *Future Of Monetization. Build For You.*, PUBMATIC, https://pubmatic.com/solutions/publishers (last visited Jan. 18, 2024).

[10] *Id.*

[11] *Connect With PubMatic's Auction Packages*, PUBMATIC, https://pubmatic.com/auction-packages (last visited Jan. 18, 2024).

[12] *Connect With PubMatic's Auction Packages*, PUBMATIC, https://pubmatic.com/auction-packages-apac (last visited Jan. 18, 2024).

70.     By way of example, PubMatic sells a "Ramadan Auction Package" that targets consumers who observe Ramadan.[13]    This package helps companies target people who have indicated interest in Ramadan Events through consumer behavior, have internet search history such as "Prayer & Fasting," have location data that is "[f]requently seen at places of worship," or have "[d]emographic data" that shows they are married or live with people "who have shown interest towards Ramadan."[14]

71.     In summary, when users visit Defendant's Website, Defendant utilizes the PubMatic Tracker to collect IP addresses so that Defendant can analyze user data, create and analyze the performance of marketing campaigns, and target specific users or specific groups of users for advertisements.  All of this helps Defendant further monetize its Website and maximize revenue by collecting and disclosing user information.

        2.     *Defendant Discloses User's Data To Magnite For The Purpose Of Marketing, Advertising, And Analytics*

72.     Magnite is a digital advertising platform that helps companies like Defendant market, advertise, and analyze user data from its website.

73.     Similar to PubMatic, Magnite enables publishers to place advertisements on their webpages to further monetize their websites.  To ensure that an effective advertisement is shown to the consumer, the publisher shares data about the user with Magnite and Magnite serves the targeted ad.[15]

74.     Magnite also "help[s] [advertisers] reach more of the audiences [they] care about, more efficiently than ever" with targeted ads.[16]  Using Magnite's technology, companies can "[r]each [their] target wherever [the targets] are in their day (and in the world)."[17]

---

[13] *Connect With PubMatic's Auction Packages: Ramadan*, PUBMATIC, https://pubmatic.com/auction-packages-apac (last visited Jan. 18, 2024).

[14] *Id.*

[15] *Sellers*, MAGNITE, https://www.magnite.com/sellers/ (last visited Jan. 18, 2024).

[16] *Buyers*, MAGNITE, https://www.magnite.com/buyers/ (last visited Jan. 18, 2024).

[17] *Id.*

75.     Magnite enables companies to target specific people through their Custom Auction Packages, which "[l]everage behavior and context by bringing [] first and third-party data, or by using open-market seller data to build [data sets]" identifying targets.[18]

76.     In order to perform the functions listed above, Magnite needs to collect data that identifies a particular user. This is why Magnite collects IP addresses: it allows Magnite to ascertain a user's location and target that user with advertisements tailored to their location, as well as to track a user's Website activity over time (*i.e.*, through repeated Website visits) to target a user with advertisements relevant to the user's personal browsing activity.

77.     In other words, when users visit Defendant's Website, Defendant utilizes the Magnite Tracker to collect IP addresses so that Defendant can analyze user data, create and analyze the performance of marketing campaigns, and target specific users or specific groups of users for advertisements. All of this helps Defendant further monetize its Website and maximize revenue by collecting and disclosing user information.

### 3.     *Defendant Discloses User's Data To Aniview For The Purpose Of Marketing, Advertising, And Analytics*

78.     Aniview describes itself as a video monetization platform that "powers the most efficient & effective advertising across the open web with unrivaled product versatility, operating transparency & customer support."[19]

79.     Aniview helps companies like Defendant market, advertise, and analyze user data from its website, specifically for video content. For example, Aniview enables publishers to place advertisements in videos or embedded in broadcasts. To ensure that an effective advertisement is shown to the consumer, the publisher shares data about the user with Aniview and Aniview serves the targeted ad.[20]

80.     Aniview also helps advertisers select where to place their ads with a "vast supply of advertising space from publishers around the world" and enables companies to "use advance

---

[18] *Id.*

[19] ANIVIEW, https://aniview.com (last visited Jan. 19, 2024).

[20] *Selling Your Inventory Is A Breeze*, ANIVIEW, https://Aniview.com/marketplace/publishers (last visited Jan. 19, 2024).

targeting" to "reach ideal customers."[21]  In other words, Aniview utilizes third-party data, as well as data from the publisher where the ad is ultimately placed (*i.e.*, first-party), to determine where to place advertisers' ads and who to place them in front of.

81.    In summary, when users visit Defendant's Website, Defendant utilizes the Aniview Tracker to collect IP addresses so that Defendant can analyze user data, create and analyze the performance of marketing campaigns, and target specific users or specific groups of users for advertisements.  All of this helps Defendant further monetize its Website and maximize revenue by collecting and disclosing user information.

## III.    PLAINTIFF'S EXPERIENCE

82.    Plaintiff regularly visits the Websites on her desktop browser—sometimes multiple times a day—and has done so throughout the entirety of the class period.

83.    When Plaintiff visited the Website, the Website's code—as programmed by Defendant—caused the Trackers to be installed on Plaintiff's browser.  Defendant, PubMatic, Magnite, and Aniview, then used the Trackers to collect Plaintiff's IP address.  *See* Figures 9 (PubMatic Tracker), 10 (Rubicon Tracker) and 11 (Aniview Tracker).  Notably, with the PubMatic and Magnite Trackers (Figures 9-10), Plaintiff's IP address is used to ascertain her location as Santa Clara, California, along with specific latitude-longitude coordinates and a zip code.

---

[21] *Join Our Ad Marketplace For Advertisers*, ANIVIEW,
https://aniview.com/marketplace/advertisers (last visited Jan. 19, 2024).

**Figure 9:**

**Figure 10:**



**Figure 11:**

84.     Defendant, PubMatic, Magnite, and Aniview used the information collected by the Trackers to analyze Website data and marketing campaigns, conduct targeted advertising based on Plaintiff's location, and ultimately boost Defendant's and advertisers' revenue.

85.     Plaintiff did not provide her prior consent to Defendant to install or use the Trackers on Plaintiff's browser.

86.     Defendant did not obtain a court order before installing or using the Trackers.

87.     Plaintiff has, therefore, had her privacy invaded by Defendant's violations of CIPA § 638.51(a).

## CLASS ALLEGATIONS

88.     Pursuant to Cal. Code Civ. Proc. § 382, Plaintiff seeks to represent a class defined as all California residents who accessed the Website in California and had their IP address collected by the Trackers (the "Class").

89.     The following people are excluded from the Class: (i) any Judge presiding over this action and members of her or her family; (ii) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest (including current and former employees, officers, or directors); (iii) persons who properly execute and file a timely request for exclusion from the Class; (iv) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (v) Plaintiff's counsel and Defendant's counsel; and (vi) the legal representatives, successors, and assigns of any such excluded persons.

90.     **Numerosity:** The number of people within the Class is substantial and believed to amount to thousands, if not millions of persons. It is, therefore, impractical to join each member of the Class as a named plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation. Moreover, the Class is ascertainable and identifiable from Defendant's records.

91.    **Commonality and Predominance:** There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary between members of the Class, and which may be determined without reference to the individual circumstances of any Class Member, include, but are not limited to, the following:

    (a)    Whether Defendant violated CIPA section 638.51(a);

    (b)    Whether the Trackers are "pen registers" pursuant to Cal. Penal Code § 638.50(b);

    (c)    Whether Defendant sought or obtained prior consent—express or otherwise—from Plaintiff and the Class;

    (d)    Whether Defendant sought or obtained a court order for its use of the Trackers; and

    (e)    Whether Plaintiff and members of the Class are entitled to actual and/or statutory damages for the aforementioned violations.

92.    **Typicality:** The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other members of the Class Members, visited the Website and had her IP address collected by the Trackers, which were installed and used by Defendant.

93.    **Adequate Representation:** Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class Members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiff and her counsel.

94.    **Superiority:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of members of the Class. Each individual member of the Class may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy

of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION
### COUNT I
**Violation Of The California Invasion Of Privacy Act,**
**Cal. Penal Code § 638.51(a)**

95.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

96.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

97.    CIPA section 638.51(a) proscribes any "person" from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order."

98.    A "pen register" is a "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." (Cal. Penal Code § 638.50(b).)

99.    The Trackers are "pen registers" because they are "device[s] or process[es]" that "capture[d]" the "routing, addressing, or signaling information"—the IP address—from the electronic communications transmitted by Plaintiff's and the Class's computers or smartphones. (Cal. Penal Code § 638.50(b).)

100.    At all relevant times, Defendant installed the Trackers—which are pen registers—on Plaintiff's and Class Members' browsers, and used the Trackers to collect Plaintiff's and Class Members' IP addresses.

101.    The Trackers do not collect the content of Plaintiff's and the Class's electronic communications with the Website.  (*In re Zynga Privacy Litig.* (9th Cir. 2014) 750 F.3d 1098, 1108 ["IP addresses constitute addressing information and do not necessarily reveal any more about the underlying contents of communication…"] [cleaned up].)

102.    Plaintiff and Class Members did not provide their prior consent to Defendant's installation or use of the Trackers.

103.    Defendant did not obtain a court order to install or use the Trackers.

104.    Pursuant to Cal. Penal Code § 637.2, Plaintiff and Class Members have been injured by Defendant's violations of CIPA § 638.51(a), and each seeks statutory damages of $5,000 for each of Defendant's violations of CIPA § 638.51(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)    For an order certifying the Class, naming Plaintiff as the representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b)    For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c)    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)    For statutory damages of $5,000 for each violation of CIPA § 638.51(a);

(e)    For pre- and post-judgment interest on all amounts awarded;

(f)    For an order of restitution and all other forms of equitable monetary relief; and

(g)    For an order awarding and the Class their reasonable attorney's fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: January 25, 2024

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: _____
    Emily A. Horne

L. Timothy Fisher (State Bar No. 191626)
Emily A. Horne (State Bar No. 347723)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
          ehorne@bursor.com

*Attorneys for Plaintiff*