**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CAROL LESH, individually and on behalf of all others similarly situated, | |
| Plaintiff, | 1:24-cv-03132-VM |
| v. | |
| CABLE NEWS NETWORK, INC., | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

*Attorneys for Defendant Cable News*
*Network, Inc.*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................... 3

    A.    The Alleged Collection of IP Addresses ................................................. 3

    B.    CNN's Terms of Use and Privacy Policy ............................................... 4

LEGAL STANDARD ............................................................................................................ 7

ARGUMENT ...................................................................................................................... 8

    A.    Plaintiff's Section 638.51 Claim Is Barred by the Choice of Law Provision in CNN's Terms of Use ............................................................. 8

    B.    Section 638.51 Is Limited to Devices or Processes Used to Record Telephone Signaling Information ....................................................... 11

    C.    Section 638.51 Does Not Apply to the Collection of Plaintiff's IP Address ........ 15

    D.    Plaintiff Consented to Any Disclosure ............................................... 19

    E.    CNN's Consent Bars Plaintiff's Claim ............................................... 21

    F.    Plaintiff's Class Claims Should Be Dismissed and/or Stricken Due to Her Agreement to the Class Action Waiver in the CNN Terms of Use ...................... 22

CONCLUSION .................................................................................................................. 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Application of U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digit.*
    *Analyzer*, 885 F. Supp. 197, 199-200 (C.D. Cal. 1995)...........................................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................................7

*Bausch & Lomb Inc. v. Mimetogen Pharms., Inc.*,
    No. 14-CV-6640-FPG, 2016 WL 2622013 (W.D.N.Y. May 5, 2016) ....................................11

*Biggs v. Midland Credit Mgmt., Inc.*,
    No. 17-CV-340 (JFB)(ARL), 2018 WL 1225539 (E.D.N.Y. Mar. 9, 2018) .........................24

*Camilo v. Uber Techs., Inc.*,
    No. 17 CIV. 9508 (AKH), 2018 WL 2464507 (S.D.N.Y. May 31, 2018) .............................23

*Capitol Recs. Inc. v. Thomas-Rasset*,
    No. CIV 06-1497(MJD/RLE), 2009 WL 1664468 (D. Minn. June 11, 2009) .......................17

*Capstone Logistics Holdings, Inc. v. Navarrete*,
    No. 17-cv-4819 (GBD), 2018 U.S. Dist. LEXIS 216940 (S.D.N.Y. Oct. 25,
    2018), *aff'd & remanded*, 796 F. App'x 55 (2d Cir. 2020) ....................................................10

*Casillas v. Transition Optical Inc.*,
    No. 23STCV30742, Minute Order (Cal. Super. Ct. L.A. Cnty. Apr. 23, 2024)...............16, 18

*Castellanos v. Raymours Furniture Co.*,
    291 F. Supp. 3d 294 (E.D.N.Y. 2018) ...................................................................................23

*Columbia Pictures Indus. v. Bunnell*,
    No. CV 06-1093FMCJCX, 2007 WL 2080419 (C.D. Cal. May 29, 2007)............................18

*Cont'l Airlines, Inc. v. Mundo Travel Corp.*,
    412 F. Supp. 2d 1059 (E.D. Cal. 2006)..................................................................................11

*Cooper v. Bonobos, Inc.*,
    No. 21-CV-854 (JMF), 2022 WL 170622 (S.D.N.Y. Jan. 19, 2022) .....................................17

*Coscarelli v. ESquared Hosp. LLC*,
    364 F. Supp. 3d 207 (S.D.N.Y. 2019).....................................................................................10

*Dane v. UnitedHealthcare Ins. Co.*,
    974 F.3d 183 (2d Cir. 2020).......................................................................................................7

*Dino Moody v. C2 Educ. Sys. Inc. et al.*,
    No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367 (C.D. Cal. July 25, 2024) ......................14

*In re DoubleClick Inc. Priv. Litig.*,
    154 F. Supp. 2d 497 (S.D.N.Y. 2001)..............................................................................21, 22

*Fensterstock v. Educ. Fin. Partners*,
    No. 08 CIV. 3622 TPG, 2012 WL 3930647 (S.D.N.Y. Aug. 30, 2012)................................23

*Fernandez v. Zoni Language Ctrs., Inc.*,
    No. 15-cv-6066 (PKC), 2016 WL 2903274 (S.D.N.Y. May 18, 2016), *aff'd*,
    858 F.3d 45 (2d Cir. 2017)....................................................................................................2

*Golden v. NBCUniversal Media, LLC*,
    688 F. Supp. 3d 150 (S.D.N.Y. Aug. 23, 2023)....................................................................2

*Greenley v. Kochava, Inc.*,
    684 F. Supp. 3d 1024 (S.D. Cal. 2023)..............................................................12, 13, 18, 19

*Guerriero v. Sony Elecs. Inc.*,
    No. 21 CV 2618 (VB), 2022 WL 736428 (S.D.N.Y. Mar. 11, 2022) ....................................23

*Heeger v. Facebook, Inc.*,
    509 F. Supp. 3d 1182 (N.D. Cal. 2020) ...............................................................................19

*Himber v. Live Nation Worldwide, Inc.*,
    16-CV-5001(JS) (GRB), 2018 WL 2304770 (E.D.N.Y. May 21, 2018)..................................8

*Hines v. Overstock.com*, Inc.,
    380 F. App'x 22, 25 (2d Cir. 2010) ......................................................................................8

*Horton v. Dow Jones & Co., Inc.*,
    804 F. App'x 81 (2d Cir. 2020) .............................................................................................23

*Jaffe v. Cap. One Bank*,
    No. 09 CIV. 4106 (PGG), 2010 WL 691639 (S.D.N.Y. Mar. 1, 2010)....................................8

*Levings v. Choice Hotels International, Inc*,
    No. 23 STCV28359, 2024 WL 1481189 (Cal. Super. Ct. L.A. Cnty, Apr. 3,
    2024) .......................................................................................................................................15

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014)...............................................................................................................15

*Licea v. Hickory Farms LLC*,
    No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024) ........................13, 16

*Malibu Media, LLC v. Pontello*,
No. 13-12197, 2013 WL 12180709 (E.D. Mich. Nov. 19, 2013)............................................18

*Massie v. GM LLC*,
No. 21-787-RGA, 2022 WL 534468 (D. Del. Feb. 17, 2022) ...................................................1

*McDaniel v. Home Box Off., Inc.*,
No. 22-CV-1942 (VEC), 2023 WL 1069849 (S.D.N.Y. Jan. 27, 2023)................................23

*Ministers & Missionaries Benefit Bd. v. Snow*,
26 N.Y.3d 466 (2015) ...............................................................................................................9

*Montalti v. Catanzariti*,
191 Cal. App. 3d 96 (1987) ......................................................................................................4

*Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*,
414 U.S. 453 (1974)................................................................................................................12

*Nat'l Union Fire Ins. Co. v. Seneca Fam. of Agencies*,
255 F. Supp. 3d 480 (S.D.N.Y. 2017).....................................................................................13

*Nayal v. HIP Network Servs. IPA, Inc.*,
620 F. Supp. 2d 566 (S.D.N.Y. 2009)......................................................................................23

*Pena v. Gamestop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023)......................................................................................1

*People v. Black*,
32 Cal. 3d 1 (1982) ..................................................................................................................15

*Serrano v. Cablevision Sys. Corp.*,
863 F. Supp. 2d 157 (E.D.N.Y. 2012) .....................................................................................20

*Smidga v. Spirit Airlines, Inc.*,
No. 2:22-cv-1578-MJH, 2024 WL 1485853 (W.D. Penn. Apr. 5, 2024),
*appeal filed*, No. 24-1757 (3d Cir. Apr. 5, 2024) ....................................................................1

*Smith v. Maryland*,
442 U.S. 735 (1979).................................................................................................................18

*Sollinger v. SmileDirectClub, LLC*,
No. 19-CV-5977 (JPO), 2020 WL 774135 (S.D.N.Y. Feb. 18, 2020) ......................................9

*Sparshott v. Feld Ent., Inc.*,
311 F.3d 425 (D.C. Cir. 2002)..................................................................................................21

*Starke v. Gilt Groupe, Inc.*,
No. 13 Civ. 5497(LLS), 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) .....................................8

*Swarts v. Home Depot, Inc.*,
   689 F. Supp. 3d 732 (N.D. Cal. 2023) ................................................................1

*Underhill v. Kornblum*,
   No. 16-CV-1598-AJB-WVG, 2017 WL 2869734 (S.D. Cal. Mar. 16, 2017) ........18

*United States v. Garcia-Villalba*,
   585 F.3d 1223 (9th Cir. 2009) ...........................................................................11

*United States v. Hernandez*,
   No. 19 CR 0097(VM), 2020 WL 3257937 (S.D.N.Y. June 16, 2020) ..................16

*United States v. Huezo*,
   546 F.3d 174 (2d Cir. 2008)................................................................................13

*United States v. Kidd*,
   394 F. Supp. 3d 357 (S.D.N.Y. 2019) ................................................................16

*United States v. Rodriguez*,
   968 F.2d 130 (2d Cir. 1992)..........................................................................11, 18

*United States v. Stuart*,
   No. 21-CR-7-LJV-JJM, 2024 U.S. Dist. LEXIS 30650 (W.D.N.Y. Feb. 22,
   2024) ...................................................................................................................17

*United States v. Ulbricht*,
   858 F.3d 71 (2d Cir. 2017).......................................................................3, 16, 17

*Willis Re Inc. v. Herriott*,
   550 F. Supp. 3d 68 (S.D.N.Y. 2021) ..................................................................10

**Statutes**

18 U.S.C. § 2701....................................................................................................22

18 U.S.C. § 3123.........................................................................................14, 17, 18

California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code §§ 630-638.55..................... *passim*

**Rules**

California Rule of Court 8.1115 .............................................................................13

Federal Rules of Civil Procedure Rule 12(b)(6) .................................................1, 7

Federal Rules of Civil Procedure Rule 12(f) ......................................................1, 7

Federal Rules of Civil Procedure Rule 23(d)(1)(D) ..................................................1, 7

**Legistlative Materials**

Assem. B. 929 Reg. Sess. (Cal. 2015),
    https://legiscan.com/CA/text/AB929/id/1258696..................................................12

Bill Analysis, Assem. B. 929 Reg. Sess. (Cal. July 8, 2015),
    http://www.leginfo.ca.gov/pub/15-16/bill/asm/ab_0901-
    0950/ab_929_cfa_20150406_093935_asm_comm.html..................................................12, 21

**Other Authorities**

86 Cal. Op. Att'y Gen. 198 (2003) ..................................................12

Defendant Cable News Network, Inc. ("CNN") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff's First Amended Complaint (the "Complaint" or "FAC") for failure to state a claim upon which relief can be granted, and to dismiss and/or strike the class allegations pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(f), and 23(d)(1)(D).

## PRELIMINARY STATEMENT

This case is an attempt to stretch a California law—the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code §§ 630-638.55—far beyond its intended bounds.  The majority of California courts interpreting the statute have dismissed attempts to apply the CIPA provision prohibiting unauthorized wiretapping, Cal. Pen. Code § 631(a), to routine Internet advertising and analytics technologies,[1] as have other courts around the country.[2]  The claim at issue here is an attempted work-around, aiming to convince this Court to apply a different provision of CIPA, Cal. Pen. Code § 638.51, to online advertising technologies.  This effort should also fail.  Specifically, Plaintiff Carol Lesh ("Plaintiff") contends that certain standard marketing technologies that collect CNN website visitors' IP addresses are "pen registers" within the meaning of Section 638.51, which are "device[s] or process[es] that record[] or decode[] dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication."  Cal. Pen. Code § 638.50(b).  Section 638.51 generally prohibits the installation of such a device without a court order, subject to certain exceptions.  Plaintiff's claim, however, fails as a matter of law for several reasons:

---

[1] *See, e.g.*, *Pena v. Gamestop, Inc.*, 670 F. Supp. 3d 1112 (S.D. Cal. 2023); *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732 (N.D. Cal. 2023).

[2] *See, e.g.*, *Smidga v. Spirit Airlines, Inc.*, No. 2:22-cv-1578-MJH, 2024 WL 1485853 (W.D. Penn. Apr. 5, 2024), *appeal filed*, No. 24-1757 (3d Cir. Apr. 5, 2024); *Massie v. GM LLC*, No. 21-787-RGA, 2022 WL 534468 (D. Del. Feb. 17, 2022).

*First*, Plaintiff cannot state a claim under California law because she consented to the CNN Terms of Use, which provide that any "claims . . . arising out of or in connection with [her] access to, and/or use of the Sites . . . shall be governed by and construed exclusively in accordance with the laws and decisions of the State of New York . . . without giving effect to its conflict of laws provisions[.]"  *See* Declaration of Blake Steinberg ("Steinberg Decl.") ¶ 6, Ex. D § 10 (attaching copy of the CNN Terms of Use, also available at https://www.cnn.com/terms0).[3]  Because New York law, not California law, governs Plaintiff's interactions with the CNN website, Plaintiff's CIPA claim must be dismissed.

*Second,* even if Plaintiff could bring a claim under California law, Section 638.51 only covers devices or processes used to record *telephone* signaling information.  Plaintiff does not allege that she used a telephone to access the CNN website, instead claiming that she "regularly visits the Websites *on her desktop browser*."  FAC ¶ 85 (emphasis added).  Because Plaintiff has failed to point to a device or process used to record *telephone* signaling, her claim must be dismissed.

*Third*, the gravamen of Plaintiff's claim is that certain technologies on the CNN website collected her IP address, but Plaintiff lacks a protectable privacy interest in her IP address, and Section 638.51 therefore does not apply to its collection.

*Fourth*, Plaintiff fails to state a claim because she consented to the collection and

---

[3]  The Court may consider the materials from the CNN website attached to the Steinberg Declaration in resolving the motion to dismiss, including those archived on the Wayback Machine. *Fernandez v. Zoni Language Ctrs., Inc.*, No. 15-cv-6066 (PKC), 2016 WL 2903274, at *3 (S.D.N.Y. May 18, 2016) ("Courts may also take judicial notice of information contained on websites where 'the authenticity of the site has not been questioned'"), *aff'd*, 858 F.3d 45 (2d Cir. 2017); *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 165 n.14 (S.D.N.Y. Aug. 23, 2023) (taking judicial notice of webpage archived on Wayback Machine where the "archived version [wa]s consistent with NBCU's representation").

distribution of her IP address.  Here, the Privacy Policy to which Plaintiff agreed clearly disclosed that CNN may collect her IP address, and that her IP address may be provided to CNN's third party service providers.  Steinberg Decl. ¶ 7, Ex. E at 1-4 (attaching copy of the CNN Privacy Policy, available at https://www.wbdprivacy.com/policycenter/b2c/en-us/).  Because consent is a complete defense to a § 638.51 claim, Plaintiff's claim should be dismissed for this reason as well.

*Fifth*, CNN's consent to the alleged collection of website visitor's IP addresses also bars Plaintiff's CIPA claim under § 638.51(b)(5).  Section 638.51(b)(5) provides that an "electronic or wire communication service" may use a pen register if the "user" of the service consents.  Here, CNN may properly be considered a user of an electronic communication service, and CNN's consent to the alleged collection of IP addresses therefore bars Plaintiff's CIPA claim.

*Sixth*, Plaintiff's putative class claims disregard a class waiver in CNN's Terms of Use, which requires Plaintiff to resolve her claims "only in an individual capacity, and not participate as a plaintiff, claimant, or class member in any class, collective, consolidated, private attorney general, or representative proceeding."  Steinberg Decl. ¶ 6, Ex. D § 13.  Courts routinely enforce similar class waivers, and the Court should accordingly dismiss and/or strike Plaintiff's class claims.

## BACKGROUND

### A.    The Alleged Collection of IP Addresses

Plaintiff alleges that when users visit the CNN website, CNN "causes" certain technologies offered by PubMatic, Rubicon, and Aniview "to be installed on Website visitors' internet browsers."  FAC ¶ 2.  Plaintiff further alleges that CNN uses these technologies "to collect Website visitors' IP addresses."  *Id.*  An "IP address is a unique identifier for a device," which, as Plaintiff concedes, "enables a device to communicate with another device—such as a computer's browser communicating with a server."  *Id.* ¶¶ 23, 24; *see also United States v. Ulbricht*, 858 F.3d 71, 96

(2d Cir. 2017) (explaining that IP addresses are "provided to and used by Internet service providers for the specific purpose of directing the routing of information" from a "third party's servers"), *abrogated on other grounds by Carpenter v. United States*, 585 U.S. 296 (2018). According to Plaintiff, CNN "uses the IP address of Website visitors, including those of Plaintiff and Class Members, to serve targeted advertisements and conduct website analytics." FAC ¶ 66. Based on these allegations, Plaintiff brings a single claim asserting that CNN violated CIPA § 638.51. *Id.* ¶¶ 98-107.

### B.    CNN's Terms of Use and Privacy Policy

Per Plaintiff's own allegations, she "regularly visits the [CNN website] on her desktop browser—sometimes multiple times a day—and has done so throughout the entirety of the class period." *Id.* ¶ 85. Plaintiff does not expressly define "the class period" in her Complaint. *See generally id.* Nevertheless, because CIPA has a one-year statute of limitations, *Montalti v. Catanzariti*, 191 Cal. App. 3d 96, 98 (1987), CNN presumes that Plaintiff is alleging that she regularly visited the CNN website from January 25, 2023—one year before the Complaint was filed—until January 25, 2024.

In late 2022 and early 2023, including on January 25, 2023, the CNN website displayed a pop-up notifying users that they were agreeing to CNN's Terms of Use. *See* Steinberg Decl. ¶ 3, Ex. A (attaching screenshot of archived version of the CNN website, available on the Wayback Machine at https://web.archive.org/web/20221227000207/https://www.cnn.com/). Specifically, this pop-up stated that "[b]y using the CNN sites and/or maintaining your account, you agree to our updated **Terms of Use**, including an updated arbitration clause. By clicking 'X', you acknowledge you have read and agreed to the updated **Terms**." *Id.* The words "Terms of Use" and "Terms" were bolded hyperlinks that appeared in a different color than the surrounding text, and clicking on them led individuals to CNN's Terms of Use in place in late 2022 and early 2023

(the "2022 Terms"), which they could easily scroll through and read. This pop-up persisted until website visitors clicked "X", confirming they had read and agreed to the Terms. *See id.*

The 2022 Terms provided that "[a]ny and all disputes, claims and controversies arising out of or in connection with your access to, and/or use of the Sites . . . shall be governed by and construed exclusively in accordance with the laws and decisions of the State of New York . . . without giving effect to its conflict of laws provisions, except to the extent that law is inconsistent with or preempted by federal law." *Id.* ¶ 4, Ex. B § 10 (attaching archived version of the 2022 CNN Terms of Use available on the Wayback Machine at https://web.archive.org/web/20230210191905/https://www.cnn.com/terms0). The 2022 Terms also included a class action waiver which provided that "each party may bring claims (whether in court or in arbitration) against the other only in an individual capacity[.]" *Id.* ¶ 4, Ex. B § 13.

The 2022 Terms also provided that "[t]hese Terms of Use, along with . . . the CNN Privacy Policy, set forth the terms and conditions that apply to your use of the CNN.com Site." *Id.* Ex. B at 1.[4] The 2022 Terms then stated that "[b]y using the Site, [users] agree to comply with all of the terms and conditions hereof." *Id.* The words "CNN Privacy Policy" were an underlined hyperlink, and clicking on them led individuals to the Privacy Policy in place at that time (the "2022 Privacy Policy"), which they could easily scroll through and read. *Id.* The 2022 Privacy Policy clearly disclosed CNN may collect "[i]nformation about [a user's] location" from the user, including "an IP address." *Id.* ¶ 5, Ex. C at 2 (attaching archived version of 2022 Privacy Policy, available at https://web.archive.org/web/20230129191828/https://www.warnermediaprivacy.com/policycenter/b2c/WMNS/en-us/). It also disclosed that CNN's third party service providers "have access to

---

[4] The current version of the CNN Terms of Use contains the same choice of law clause and class waiver. *Id.* Ex. D at 1, § 10.

Information to help carry out the services they are performing for us, such as, but not limited to, . . . conduct[ing] marketing, . . . conduct[ing] research and analytics, or customer service." *Id.* at 4.[5]

Before the putative class period, CNN also used pop-ups that notified visitors that they were agreeing to its terms on numerous prior occasions, including in 2015, 2016, 2017, 2018, and 2019, and these pop-ups all pointed visitors to CNN's Terms of Use and Privacy Policy, and the relevant disclosures therein. *See* Steinberg Decl. ¶¶ 8, 11, 13, Ex. F (attaching screenshot of archived version of CNN webpage, also available at web.archive.org/web/20150114000558/http://www.cnn.com/), Ex. I (attaching screenshot of archived version of CNN webpage, also available at web.archive.org/web/20170105012002/http://www.cnn.com/), Ex. K (attaching screenshot of archived version of CNN webpage, also available at https://web.archive.org/web/20190324084412/https://www.cnn.com/).

The prior versions of the CNN Terms of Use and Privacy Policy contained very similar provisions, including choice of law provisions calling for application of New York law, class action waivers, and disclosures informing visitors that CNN may collect their IP addresses. *Id.* Ex. G §§ 10, 12 (attaching copy of the 2015 CNN Terms of Use, also available on the Wayback Machine at https://web.archive.org/web/20151230112222/cnn.com/terms); Ex. H at 1 (attaching copy of the 2015 CNN Privacy Policy, also available on the Wayback Machine at https://web.archive.org/web/20151201215943/http://www.cnn.com/privacy); Ex. J §§ 10, 12 (attaching copy of 2017 CNN Terms of Use, also available on the Wayback Machine at https://web.archive.org/web/20170720080914/cnn.com/terms); Ex. L §§ 10, 12 (attaching copy of

---

[5] The current version of the Privacy Policy contains very similar disclosures. *Id.* Ex. E at 4.

2018 CNN Terms of Use, also available on the Wayback Machine at https://web.archive.org/web/20181017044634/http://cnn.com/terms); Ex. M at 1 (attaching copy of 2018 CNN Privacy Policy, also available on the Wayback Machine at https://web.archive.org/web/20181017044627/https://www.cnn.com/privacy0?no-st=9999999999).  All of these earlier pop-ups persisted until website visitors clicked "X."  *See* Steinberg Decl. ¶ 8 Ex. F, ¶ 11 Ex. I, ¶ 13 Ex. K.

Given Plaintiff's allegation that she regularly visited the website—including throughout the last year—as well as the many pop-ups that CNN displayed over the last decade which notified individuals they were agreeing to CNN's Terms of Use and Privacy Policy, Plaintiff plainly agreed to both the Terms of Use and the Privacy Policy.  *See* FAC ¶ 85.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  In determining a complaint's adequacy, a court must disregard conclusory allegations and legal conclusions, which are not entitled to the assumption of truth, and determine whether the remaining "well-pleaded factual allegations" suggest the plaintiff has a plausible—as opposed to merely conceivable—claim for relief.  *Id.* at 679.  The court is "not required to credit conclusory allegations or legal conclusions couched as factual . . . allegations." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020).

Pursuant to Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter[,]" and Rule 23(d)(1)(D) further provides that "the court may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."  New York courts have held that motions to strike class allegations "may be addressed 'prior to the

certification of the class if the inquiry would not mirror the class certification inquiry and if resolution of the motion is clear.'" *Jaffe v. Cap. One Bank*, No. 09 CIV. 4106 (PGG), 2010 WL 691639, at *10 (S.D.N.Y. Mar. 1, 2010) (citations omitted).

## ARGUMENT

### A.  Plaintiff's Section 638.51 Claim Is Barred by the Choice of Law Provision in CNN's Terms of Use

In regularly using the CNN website, including during the class period, Plaintiff repeatedly agreed to the CNN Terms of Use.  Per Plaintiff's allegations, she "regularly visits the Websites on her desktop browser—sometimes multiple times a day—and has done so throughout the entirety of the class period."  FAC ¶ 85.  CNN has displayed numerous pop-ups on its website over the last decade, beginning in 2015 and continuing in 2016, 2017, 2018, 2019, 2022, and 2023.  Steinberg Decl. Exs. A, F, I, K.  In addition, in late 2022 and early 2023, CNN utilized a pop-up on its website notifying individuals that by using the website, they were agreeing to the Terms of Use.  This pop-up persisted until an individual clicked an 'X' button to permanently close the pop-up and specifically provided that "By clicking 'X', you acknowledge you have read and agreed to the updated Terms." *Id.* Ex. A.  Because these pop-ups required Plaintiff to affirmatively acknowledge the agreement by clicking 'X,' Plaintiff consented to the Terms of Use.  *Himber v. Live Nation Worldwide, Inc.*, 16-CV-5001(JS) (GRB), 2018 WL 2304770, at *3 (E.D.N.Y. May 21, 2018) ("[I]n the context of agreements made over the internet, New York courts find that binding contracts are made when the user takes some action demonstrating that they have at least constructive knowledge of the terms of the agreement, from which knowledge a court can infer acceptance.") (quoting *Hines v. Overstock.com*, Inc., 380 F. App'x 22, 25 (2d Cir. 2010)).[6]

---

[6] *See also Starke v. Gilt Groupe, Inc.*, No. 13 Civ. 5497(LLS), 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014) (holding that plaintiff agreed to Terms of Membership where he was directed "exactly where to click in order to review those terms," regardless of whether he actually reviewed

CNN's Terms of Use provide that "[a]ny and all disputes, claims and controversies arising out of or in connection with [a user's] access to, and and/or use of the Sites . . . shall be governed by and construed exclusively in accordance with the laws and decisions of the State of New York . . . without giving effect to its conflict of laws provisions, except to the extent that law is inconsistent with or preempted by federal law."  Steinberg Decl. Ex. D § 10.  Prior versions of the Terms of Use have included nearly identical choice of law provisions.  *Id.* B § 10, G § 10, J § 10, L § 10.  Because Plaintiff agreed that any claims would be governed by New York law without effect to its conflict of laws provisions, she cannot state a claim under California law.

Under New York law, choice of law provisions selecting New York law must be enforced by their terms, since "by including a choice-of-law provision in their contracts, the parties intended for only New York substantive law to apply."  *Ministers & Missionaries Benefit Bd. v. Snow*, 26 N.Y.3d 466, 475 (2015).  Per *Ministers*, the decision to include a New York choice of law provision "obviates the application of both common-law conflict-of-laws principles and statutory choice-of-law directives," and indeed, engaging in such an application "would contravene the primary purpose of including a choice-of-law provision in a contract — namely, to avoid a conflict-of-laws analysis and its associated time and expense."  *Id.* at 468, 475.[7]  Courts within this district have thus followed *Ministers'* approach and found that New York courts should not "consider the public policy of foreign states—including California—to overturn an otherwise valid contractual choice

---

them); *Sollinger v. SmileDirectClub, LLC*, No. 19-CV-5977 (JPO), 2020 WL 774135, at *2 (S.D.N.Y. Feb. 18, 2020) (enforcing Terms and Conditions where plaintiff checked box agreeing to Terms and Conditions prior to purchase).

[7] Recently, in *Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, the New York Court of Appeals again stated that "[t]he inclusion of a New York choice-of-law clause in a contract demonstrates the parties' intent that 'courts not conduct a conflict-of-laws analysis,' which thereby 'obviates the application of both common-law conflict-of-laws principles and statutory choice-of-law directives,' unless the parties or the legislature clearly express a contrary intent."  41 N.Y.3d 462, 474 (2024) (quoting *Ministers*, 26 N.Y.3d at 468).

of law provision," lest such a consideration "swallow whole the *Ministers* holding that courts need not engage in conflicts analysis." *Capstone Logistics Holdings, Inc. v. Navarrete*, No. 17-cv-4819 (GBD), 2018 U.S. Dist. LEXIS 216940, at *66-67 (S.D.N.Y. Oct. 25, 2018), *aff'd & remanded*, 796 F. App'x 55 (2d Cir. 2020).  Because the parties here unambiguously selected New York law, this Court should enforce the New York choice of law provision without regard for the public policy of any other state.

Even if New York courts were still required to consider "whether the choice-of-law provision is a 'violation of public policy' or has 'sufficient contacts with the transaction'" after *Ministers*, New York substantive law would still apply.  *Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 94-95 (S.D.N.Y. 2021).   The New York choice-of-law provision bears "a reasonable relationship to the parties or the transaction" here.  *Id.* at 95.  Per the Complaint, CNN "maintains an office in New York . . . and Plaintiff's claims arise from or relate to these contacts" with New York.  FAC ¶ 9.   In addition, there is no New York public policy that would be harmed by the application of New York law here.  To the extent Plaintiff points to California public policy as a potential consideration, New York law is clear that "the only public policy relevant to the analysis is the public policy 'of *this* State' — that is, New York."  *Willis*, 550 F. Supp. 3d at 95.  Since neither of these considerations bar the application of New York law here, this Court should enforce the New York choice-of-law provision.

Because the parties agreed that Plaintiff's claims would be governed by New York law, her claim under California law must be dismissed.  *Coscarelli v. ESquared Hosp. LLC*, 364 F. Supp. 3d 207, 220-21 (S.D.N.Y. 2019) ("Accordingly, the Court concludes that the NFL Agreement requires that all of Coscarelli's claims be 'governed by and construed in accordance with the internal laws of the State of New York and without regard to conflicts of laws principles.'

. . . It follows that her claims under California law . . . must be dismissed."); *see also Bausch & Lomb Inc. v. Mimetogen Pharms., Inc*., No. 14-CV-6640-FPG, 2016 WL 2622013, at *13 (W.D.N.Y. May 5, 2016) ("Because New York law applies, Valeant's motion to dismiss is granted with respect to MPI's claim under the Massachusetts Consumer Protection Act."); *Cont'l Airlines, Inc. v. Mundo Travel Corp.*, 412 F. Supp. 2d 1059, 1070 (E.D. Cal. 2006) ("A valid choice-of-law provision selecting another state's law is grounds to dismiss a claim under California's UCL.").

**B.    Section 638.51 Is Limited to Devices or Processes Used to Record Telephone Signaling Information**

Even if the court applies California law, Plaintiff has failed to plausibly allege that CNN violated Section 638.51 because she does not allege she used a *telephone* to access the CNN website, and instead claims that she "regularly visits the Websites *on her desktop browser*."  FAC ¶ 85 (emphasis added).  Section 638.51, which prohibits the "install[ation] or use [of] a pen register or a trap and trace device without first obtaining a court order[,]" applies only to devices or processes used to record telephone signaling information.  Cal. Pen. Code § 638.51(a).  Section 638.50(b) defines a pen register as a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication."  A trap and trace device does the same, except for incoming communications.  Cal. Pen. Code § 638.50(c).

This comports with the traditional understanding that a "pen register is a mechanical device that simply records the telephone numbers dialed on a given *telephone*."  *United States v. Rodriguez*, 968 F.2d 130, 135 (2d Cir. 1992) (emphasis added); *see also United States v. Garcia-Villalba*, 585 F.3d 1223, 1226 (9th Cir. 2009) (finding that "pen register and trap-and-trace device[s] are used to record the numbers dialed from a particular *telephone* number") (emphasis added).  Indeed, the Office of the California Attorney General has recognized that "[a] 'pen

register' records the numbers dialed out from a particular *telephone* line[,]" and that a "'trap and trace device' records the originating telephone numbers of the calls dialed into a particular *telephone* line."  86 Cal. Op. Att'y Gen. 198 (2003) (citations omitted).

Although Plaintiff contends that the technologies at issue constitute "pen registers" under CIPA, CIPA's legislative history demonstrates that California's legislature never intended the pen register provisions to apply to the website tracking to which Plaintiff points here.  *See* Assemb. B. 929, Reg. Sess. (Cal. 2015), https://legiscan.com/CA/text/AB929/id/1258696 (explaining the "bill would clarify that any location information obtained by a pen register or a track and trace device is limited to the information that can be determined from the telephone number"); Bill Analysis, Assemb. B. 929, Reg. Sess., at pg. S (Cal. July 8, 2015), http://www.leginfo.ca.gov/pub/15-16/bill/asm/ab_0901-0950/ab_929_cfa_20150406_093935_asm_comm.html ("One of the tools available to law enforcement is called a 'pen register' which allows law enforcement officers to record all outgoing numbers from a particular telephone line.  [A]nother tool . . . is called a 'trap and trace device' which allows them to record what numbers have called a specific telephone line."); *see also Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974) (statutory interpretation must "yield to" and "must be consistent with the evident legislative intent and, of course, with the effectuation of the purposes intended to be served by the [statute].").

Indeed, even the case Plaintiff cites in favor of this contention recognizes that pen registers traditionally "record all numbers called from a particular telephone."  *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023).  The *Greenley* court found that "a private company's surreptitiously embedded software installed in a telephone" might "constitute a 'pen register'" under the statute.  *Id.*  Conversely, a California state trial court recently sustained a defendant's demurrer regarding a Section 638.51 claim where "the operative complaint only allege[d] a

12

'device' without any actual specific reference to a mobile phone or other potential form of communication device potentially qualifying as a cellular device[.]" *Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *4 (Cal. Super. Ct. Mar. 13, 2024).[8]

This reading of the statute is further confirmed by other sections of CIPA. *See United States v. Huezo*, 546 F.3d 174, 179 (2d Cir. 2008) ("The use of similar language, let alone identical language, in two different provisions of the same statute is, as the Supreme Court has emphasized, a strong indication that the two provisions should be interpreted *pari passu*, *i.e.*, in the same manner."). Section 638.52, for instance, makes clear that a pen register or trap and trace device collects information pertaining to telephones. Section 638.52(c) provides that "[i]nformation acquired solely pursuant to the authority for a pen register or a trap and trace device shall not include any information that may disclose the physical location of the subscriber, except to the extent that the location may be determined *from the telephone number*." Cal. Pen. Code § 638.52(c) (emphasis added). Section 638.52(d) further provides that an order granting authority to use a pen register or trap and trace device shall specify "[t]he identity" of the person "in whose name is listed *the telephone line* to which the pen register or trap and trace device is to be attached," along with "[t]he number and, if known, physical location *of the telephone line* to which the pen register or trap and trace device is to be attached." *Id.* § 638.52(d)(1), (3) (emphasis added). Plaintiff's theory proposes application of the "pen register" and "trap and trace device" definitions to encompass technologies that law enforcement could not receive authorization to use under this provision. A court order to use a pen register or trap and trace device could not be obtained for

---

[8] While state California Rule of Court 8.1115 prohibits citing unpublished opinions, "when there is no other binding authority on which to rely, federal courts may consider unpublished California opinions as persuasive authority." *Nat'l Union Fire Ins. Co. v. Seneca Fam. of Agencies*, 255 F. Supp. 3d 480, 486 n.3 (S.D.N.Y. 2017) (citation omitted).

the technologies Plaintiff points to in her Complaint, because compliance with Section 638.52 requires specifying the "telephone line" to which the technology could "attach." *Id.*[9]

Indeed, a California federal court interpreted a substantially similar definition in the federal Pen Register Act of "trap and trace device" to that used in CIPA, and found that this definition of trap and trace device covered "only devices that are attached to a telephone line." *Application of U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digit. Analyzer*, 885 F. Supp. 197, 199-200 (C.D. Cal. 1995). Moreover, the court there pointed to "related sections" of the federal Pen Register Act that were identical to CIPA §§ 638.52(d)(1) and (d)(3) and concluded that these provisions reflected a legislative intent for the federal Pen Register Act to apply only to devices attached to telephone lines. *Id.* at 200.

Congress later amended the federal Pen Register Act following the court's decision in *Cellular Telephone Digital Analyzer* in 2001 to permit the use of technology on a "telephone line *or other facility*" which is to be "attached *or applied*," explicitly expanding the provision to technologies beyond devices which could be "attached" to a "telephone line." 18 U.S.C. § 3123(b)(1)(A) (emphasis added). No such language appears in CIPA § 638.52, which references only "telephone numbers" traced from devices capable of physical "attach[ment]" on telephone lines. Section 638.52 does not include language addressing technology that could be used on "other facilities" apart from "telephone line[s]" upon which the tracking device could be electronically "applied" and not just physically attached. The California legislature has amended

---

[9] The recent decision in *Dino Moody v. C2 Educ. Sys. Inc. et al.*, No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367 (C.D. Cal. July 25, 2024) does not establish otherwise, as it did not address CIPA's legislative history or the *Licea* case. Moreover, the plaintiff there alleged use of "fingerprinting," "a process through which the site collects data . . . and matches that data with [a] database to uncover . . . visitors' identities" by "using device and browser information, geographic information, referral tracking, and URL tracking." *Id.* at *1. The allegations here differ significantly, asserting at most that website visitors' IP addresses were collected. *See* FAC ¶ 91.

CIPA since the enactment of the "pen register" provisions in 2015, but has not altered its language to apply beyond devices capable of attachment to telephone lines.[10]  Accordingly, this Court should find that only devices or processes used to record telephone signaling information implicate CIPA § 638.51.  *People v. Black*, 32 Cal. 3d 1, 9 (1982) ("[F]ailure to make changes in a given statute in a particular respect when the subject is before the Legislature, and changes made in other respects, is indicative of an intention to leave the law unchanged in that respect.").

Because Section 638.51 only applies to devices attached to telephone lines and the Complaint attempts to utilize the "pen register" subsection of CIPA in a way that the California legislature never intended or contemplated, Plaintiff has not and cannot state a CIPA claim based on the theory set forth in her Complaint.[11]

### C.  Section 638.51 Does Not Apply to the Collection of Plaintiff's IP Address

Plaintiff's claim that Defendant's alleged use of the Rubicon, Aniview, and PubMatic technologies to collect her IP address "constitutes an invasion of privacy" also lacks any support. FAC ¶ 68.  Section 630 specifies that the California Legislature enacted CIPA "to protect the *right of privacy* of the people of [California]."  Cal. Penal Code § 630 (emphasis added).  "[A] statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (citations omitted).

Here, Plaintiff's Complaint focuses entirely on the alleged collection of her and putative

---

[10] Cal. Pen Code §§ 631 (amended 2022, eff. Jan. 1, 2023), 632 (amended 2016), 633 (amended 2018).

[11] The recent decision in *Levings v. Choice Hotels International, Inc.*—a California state trial court demurrer decision on a Section 638.51 claim—is inapposite because it did not analyze whether plaintiffs have to plead they used a telephone to plausibly allege a violation of Section 638.51.  No. 23STCV28359, 2024 WL 1481189, at *2-4 (Cal. Super. Ct. L.A. Cnty. Apr. 3, 2024).

class members' IP addresses by certain technologies on the CNN website. *E.g.*, FAC ¶¶ 65, 86. California state court cases evaluating CIPA pen register claims have rejected attempts to apply the statute to the collection of IP addresses. *Licea*, 2024 WL 1698147, at *4 ("[P]ublic policy strongly disputes Plaintiff's potential interpretation of privacy laws as one rendering every single entity voluntarily visited by a potential plaintiff, thereby providing an IP address for purposes of connecting the website, as a violator. Such a broad based interpretation would potentially disrupt a large swath of internet commerce without further refinement as the precise basis of liability, which the court declines to consider."); Steinberg Decl. Ex. N, *Casillas v. Transition Optical Inc.*, No. 23STCV30742, Minute Order at 1, 4 (Cal. Super. Ct. L.A. Cnty. Apr. 23, 2024) (sustaining demurrer of pen register claim alleging "that Defendant website . . . deployed tracking software that relies upon the user's unique Internet Protocol address (IP address)").

Moreover, courts in this jurisdiction have recognized that individuals do not have a privacy interest in their IP addresses where such IP addresses do not provide a "detailed and comprehensive record of a person's movements." *United States v. Hernandez*, No. 19 CR 0097(VM), 2020 WL 3257937, at *21 (S.D.N.Y. June 16, 2020) (Marrero, J.); *United States v. Kidd*, 394 F. Supp. 3d 357, 366 (S.D.N.Y. 2019) (Marrero, J.) (no reasonable expectation of privacy in IP address information where that information did not provide the ability to "precisely track [plaintiff's] daily movements"). Indeed, where "monitoring IP address traffic" reveals only "whether an Internet subscriber (or, more precisely, a person who uses the subscriber's Internet connection) is home and using the Internet," there is no reasonable expectation of privacy. *See Ulbricht*, 858 F.3d at 98. Here, Plaintiff fails to allege whether the IP address allegedly collected revealed anything more than her static location, FAC ¶ 86, much less that it revealed information that could plausibly constitute a "detailed and comprehensive record of [her] movements." *Hernandez*, 2020 WL

3257937, at *21.

That Plaintiff does not have a legally protected interest in her IP address makes sense given IP addresses are automatically conveyed to websites that an internet user visits, and this conveyance is necessary for individuals to interact with websites. *See Ulbricht*, 858 F.3d at 96 (holding internet users lacked a reasonable expectation of privacy in IP addresses because they "should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information."); *United States v. Stuart*, No. 21-CR-7-LJV-JJM, 2024 U.S. Dist. LEXIS 30650, at *8 (W.D.N.Y. Feb. 22, 2024) ("[C]ourts mostly agree that a typical internet user does not have a reasonable expectation of privacy in his or her IP address," "because, like phone users who should know that by using their phone they are disclosing information to the phone company, internet users 'should know that [IP] information is provided to and used by Internet service providers for the specific purpose of directing the routing of information.'") (quoting *Ulbricht*, 858 F.3d at 96); *see also Cooper v. Bonobos, Inc.*, No. 21-CV-854 (JMF), 2022 WL 170622, at *4 (S.D.N.Y. Jan. 19, 2022) (dismissing claim based on data breach leading to disclosure of, among other things, names, addresses, phone numbers, and IP addresses because that information is "generally publicly available").

Indeed, recognizing that IP addresses are "transmitted as part of the normal process of connecting one computer to another over the Internet[,]" courts have found that the analogous federal Pen Register Act does not apply to recording of IP addresses. *Capitol Recs. Inc. v. Thomas-Rasset*, No. CIV 06-1497(MJD/RLE), 2009 WL 1664468, at *1, *3 (D. Minn. June 11, 2009) (finding the federal "Pen Register Act cannot be intended to prevent individuals who receive electronic communications from recording the IP information sent to them[,]" and noting "[i]f it did apply in those cases, then the Internet could not function because standard computer operations

require recording IP addresses so parties can communicate with one another over the Internet.").[12]

Given the limited case law interpreting Section 638.51, the Court should look to the case law

interpreting the analogue federal Pen Register Act to conclude that CIPA does not confer a privacy

right to Plaintiff in her IP address. *See Underhill v. Kornblum*, No. 16-CV-1598-AJB-WVG, 2017

WL 2869734, at *6 (S.D. Cal. Mar. 16, 2017) ("The analysis for a violation of CIPA is the same

as that under the federal Wiretap Act.").

CIPA's pen register provision also cannot apply to collection of website visitors' IP

addresses because the collection of website visitors' IP addresses is not analogous to the collection

of phone numbers a caller dialed, given a website visitor's IP address at most reflects the source

of a communication. *Smith v. Maryland*, 442 U.S. 735, 736 n.1 (1979) ("A pen register is a

mechanical device that records the numbers dialed on a telephone by monitoring the electrical

impulses caused when the dial on the telephone is released."); *Rodriguez*, 968 F.2d at 135

(explaining a "pen register is a mechanical device that simply records the telephone numbers dialed

on a given telephone.")

Lastly, *Greenley* cannot support any argument that Section 638.51 applies to the collection

of IP addresses.  In *Greenley*, "the defendant was a data broker that provided software to

application developers in return for which it surreptitiously intercepted location data from

application users[,]" whereas here, the defendant operates the website that Plaintiff allegedly

visited.  Steinberg Decl. Ex. N, *Casillas*, No. 23STCV30742, Minute Order at 3 (explaining that

---

[12] *Malibu Media, LLC v. Pontello*, No. 13-12197, 2013 WL 12180709, at *4 (E.D. Mich. Nov. 19, 2013) ("Because the IP address was voluntarily sent, the Pen Register Act cannot prevent [plaintiff] from recording that information."); *Columbia Pictures Indus. v. Bunnell*, No. CV 06-1093FMCJCX, 2007 WL 2080419, at *11 (C.D. Cal. May 29, 2007) (holding that a website operator's "collection of incoming IP addresses" was exempt from liability under the federal Pen Register Act because the website operator "already and necessarily capture[s] such data . . . to operate the website.").

"Plaintiff's reliance on *Greenley v. Kochava* . . . is unpersuasive" where the plaintiff brought a claim based on alleged tracking occurring on defendant's website, and explaining "[t]he alleged conduct and relationship to the plaintiff" in *Greenley* "was very different from the allegations here"); FAC ¶ 86.  In addition, *Greenley* involved "cell-site location information data" ("CSLI") which differs significantly from IP addresses in that "CSLI data is much more sticky and persistent, as it is generated 'several times a minute whenever [a cell phone's] signal is on, even if the owner is not using one of the phone's features.' . . . IP address data is far less finely detailed." *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189-90 (N.D. Cal. 2020) (describing CSLI and IP addresses as "apples and oranges for privacy purposes."); *Greenley*, 684 F. Supp. 3d at 1035.

Plaintiff has therefore failed to plausibly allege that CNN violated a legally protected privacy interest, and she cannot state a claim under Section 638.51.

### D. Plaintiff Consented to Any Disclosure

Plaintiff's Complaint must also be dismissed because CNN is legally permitted to install a pen register "[i]f the consent of the user of that service has been obtained."  Cal. Pen. Code § 638.51(b)(5).  Plaintiff herself alleges that she regularly visited the CNN website, including in the last year, and it is beyond dispute that CNN displayed many pop-ups on the website which notified individuals they were agreeing to the Terms of Use and Privacy Policy.  FAC ¶ 85; Steinberg Decl. Exs. A, F, I, K.  Therefore, Plaintiff should be found to have consented to the collection and transmission of her IP address, and any installation of a pen register would fall within the exception to liability laid out in § 638.51(b)(5).

The 2022 Terms provided in its very first section that "[t]hese Terms of Use, along with . . . the <u>CNN Privacy Policy</u>, set forth the terms and conditions that apply to your use of the CNN.com Site."  *Id.* Ex. B at 2.  These terms then state that "[b]y using the Site, [users] agree to comply with all of the terms and conditions hereof."  *Id.*  In the 2022 Terms, the words "CNN

19

Privacy Policy" were an underlined hyperlink, and clicking on them led individuals to the CNN Privacy Policy, which they could easily scroll through and read.  *Id.*[13]  Because the CNN Terms of Use are clearly identified the CNN Privacy Policy, the CNN Terms of Use incorporate the CNN Privacy Policy, and Plaintiff consented to the CNN Privacy Policy.  *Serrano v. Cablevision Sys. Corp.*, 863 F. Supp. 2d 157, 165 (E.D.N.Y. 2012) ("When a contract clearly identifies a single document, it eliminates all reasonable doubt and thus qualifies as an effective incorporation.  '[A] party's failure to read a duly incorporated document will not excuse the obligation to be bound by its terms.'") (citations omitted).  Furthermore, CNN displayed pop-ups in 2015, 2016, 2017, 2018, and 2019 which hyperlinked directly to the Privacy Policy, and she should be deemed to have consented to the Privacy Policy for that reason as well.  *Id.* Exs. F, I, K.

Every version of the CNN Privacy Policy since 2015 has clearly disclosed that CNN may collect IP addresses.  *See id.* Exs. C at 3, E at 2, H at 1, M at 1.  The current CNN Privacy Policy further discloses that CNN "may disclose Information to business partners and third parties . . . for their own purposes, including marketing products or services to you" and "showing you relevant advertising."  *Id.* Ex. E at 4.  Accordingly, even if CNN had caused certain technologies collecting Plaintiff's IP address to be installed on Plaintiff's internet browser, Plaintiff consented to both this collection and the dissemination of Plaintiff's IP address to third party service providers assisting CNN in "serv[ing] targeted advertisements and conduct[ing] website analytics."  FAC ¶ 66.  Any installation of a pen register thus falls under the exception to liability described in § 638.51(b)(5), thereby barring Plaintiff's claim.  For this reason as well, Plaintiff's claim must be dismissed.

---

[13] In the versions predating the 2022 Terms of Use, the words "Privacy Policy" were hyperlinks that appeared in a different color than the surrounding text or underlined.  *Id.* Exs. G, J, L.

### E.    CNN's Consent Bars Plaintiff's Claim

As explained above, CIPA provides that "[a] provider of electronic or wire communication service may use a pen register or a trap and trace device . . . [i]f the consent of the user of that service has been obtained." Cal. Pen. Code § 638.51(b)(5). Here, not only does Plaintiff's consent bar her claim, CNN's consent to the alleged collection of IP addresses as the "user" of Rubicon, Aniview, and Pubmatic's technologies also bars her claim. *See* FAC ¶ 2 (alleging CNN "causes" the installation of these technologies, and that CNN "uses" the technologies "to collect Website visitors' IP addresses.").

The consent language in CIPA's pen register provision allows consent to be obtained from one party to the communication. The use of the singular word "user" in § 638.51(b)(5) is a departure from § 631, which prohibits wiretapping "without the consent of all parties . . . ." Cal. Pen Code § 631(a). Indeed, "[u]nlike a wiretap," "pen registers and track and trace devices do not provide [access to] the content of the messages which are transmitted." Bill Analysis, Assemb. B. 929, Reg. Sess., at pg. U (Cal. July 8, 2015), http://www.leginfo.ca.gov/pub/15-16/bill/asm/ab_0901-0950/ab_929_cfa_20150406_093935_asm_comm.html. For this reason, wiretapping under CIPA is "subject to a much higher standard of scrutiny than" the installation of pen register devices. *Id.* This makes sense given that if all parties had to consent before the installation of a pen register or trap and trace device, it would be "hard to see how any caller ID system, even that used for emergency services, would be legal." *Sparshott v. Feld Ent., Inc.*, 311 F.3d 425, 432 (D.C. Cir. 2002) (interpreting an identical provision of federal law on which Section 638.51 was modeled).

This court's conclusion in another case that website operators' consent barred claims brought under a similar federal privacy statute is instructive here. *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001) dismissed claims brought under the Electronic

Communications Privacy Act ("ECPA"), which provides "a civil right of action against persons who gain unauthorized access to communications facilities and thereby access electronic communications stored incident to their transmission." *Id.* at 507. Like CIPA, ECPA "does not apply with respect to conduct authorized . . . by a user of that [wire or electronic communications] service with respect to a communication of or intended for that user[.]" *See id.* (quoting 18 U.S.C. § 2701(c)). The court found that the websites affiliated with the defendant, DoubleClick—an advertising technology provider—validly consented to the alleged collection of website visitors' information under the ECPA given the websites were "users" of the Internet, which was the relevant "electronic communication service." *DoubleClick*, 154 F. Supp. 2d at 510.[14]

This case involves nearly identical facts with a statute containing nearly identical language. Plaintiff herself alleges that CNN consented to the alleged conduct by asserting that CNN "uses" the Rubicon, Aniview, and Pubmatic technologies "to collect Website visitors' IP addresses" "for marketing and analytics purposes[.]" FAC ¶¶ 2, 31. Moreover, just as the DoubleClick-affiliated web sites were users of the Internet, CNN uses the Internet to host the CNN.com website, and allegedly uses the Rubicon, Aniview, and Pubmatic technologies. *DoubleClick*, 154 F. Supp. 2d at 510. Like the DoubleClick-affiliated websites, CNN should also be deemed a "user" of an "electronic communication service" under § 638.51(b)(5), and CNN's consent to the alleged collection of IP addresses therefore should be held to bar Plaintiff's CIPA claim.

**F.    Plaintiff's Class Claims Should Be Dismissed and/or Stricken Due to Her Agreement to the Class Action Waiver in the CNN Terms of Use**

CNN's Terms of Use provide that "each party may bring claims . . . against the other only in an individual capacity, and not participate as a plaintiff, claimant, or class member in any class,

---

[14] The court also dismissed claims brought under the federal Wiretap Act, holding "the DoubleClick-affiliated Web sites are 'parties' to plaintiffs' intercepted communications" and consented "to DoubleClick's interceptions." *DoubleClick*, 154 F. Supp. 2d at 519.

collective, consolidated, private attorney general, or representative proceeding." Steinberg Decl. Ex. D § 13. The CNN Terms of Use have contained a nearly identical class waiver for almost a decade, including in 2015, 2016, 2017, 2018, and 2019. *Id.* Exs. B § 13, G § 12, J § 12, L § 12. Considering Plaintiff's allegation that she regularly visited the CNN website, including in the last year, and the many pop-ups that CNN displayed on the website which notified individuals they were agreeing to the Terms of Use, Plaintiff should be deemed to be bound by the class action waiver contained in the Terms of Use. *Id.* Exs. A, F, I, K; FAC ¶ 85.

Courts regularly enforce class waivers like the one contained in CNN's Terms. *See, e.g., Fensterstock v. Educ. Fin. Partners*, No. 08 CIV. 3622 TPG, 2012 WL 3930647, at *7 (S.D.N.Y. Aug. 30, 2012) ("Under *Concepcion*, the class action waiver in plaintiff's note is not substantively unconscionable."); *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 573 (S.D.N.Y. 2009) ("Courts applying New York law, however, have uniformly held that class action waivers are not unconscionable."). Courts have both dismissed and in other cases stricken class allegations where plaintiffs have agreed to class waivers. *Horton v. Dow Jones & Co., Inc.*, 804 F. App'x 81, 84-85 (2d Cir. 2020) (summary order) (finding the "class-waiver provision bars [plaintiff] from proceeding on a class basis[,]" and affirming dismissal); *McDaniel v. Home Box Off., Inc.*, No. 22-CV-1942 (VEC), 2023 WL 1069849, at *4 (S.D.N.Y. Jan. 27, 2023) ("Because the class waiver is enforceable, HBO's motion to dismiss the class claims with prejudice is granted."); *Guerriero v. Sony Elecs. Inc.*, No. 21 CV 2618 (VB), 2022 WL 736428, at *3 (S.D.N.Y. Mar. 11, 2022) (striking class action allegations from the complaint); *Camilo v. Uber Techs., Inc.*, No. 17 CIV. 9508 (AKH), 2018 WL 2464507, at *3 (S.D.N.Y. May 31, 2018) (granting motion to strike class allegations where plaintiff agreed to a class action waiver); *Castellanos v. Raymours Furniture Co.*, 291 F. Supp. 3d 294, 302 (E.D.N.Y. 2018) (striking complaint's class allegations due to an

enforceable class action waiver); *Biggs v. Midland Credit Mgmt., Inc.*, No. 17-CV-340 (JFB)(ARL), 2018 WL 1225539, at *9 (E.D.N.Y. Mar. 9, 2018) ("Accordingly, because plaintiff waived her right to participate in a class in court or arbitration, the Court compels arbitration of plaintiff's claims on an individual basis and dismisses plaintiffs class action claims."). Because Plaintiff agreed to the CNN Terms of Use, the Court should dismiss and/or strike her class claims.

## **CONCLUSION**

For the foregoing reasons, CNN respectfully requests that the Court dismiss the Complaint in its entirety. CNN further requests that the Court dismiss and/or strike Plaintiff's class allegations based on her agreement to the class action waiver.

Dated: August 7, 2024                                  Respectfully submitted,

                                                         */s/ David L. Yohai*
                                                        David L. Yohai
                                                        David R. Singh
                                                        Blake J. Steinberg
                                                        WEIL, GOTSHAL & MANGES LLP
                                                        767 Fifth Avenue
                                                        New York, NY 10153
                                                        Telephone: (212) 310-8000
                                                        Facsimile: (212) 310-8007
                                                        david.yohai@weil.com
                                                        david.singh@weil.com
                                                        blake.steinberg@weil.com

                                                        Amy Tu Quyen Le (*pro hac vice*)
                                                        WEIL, GOTSHAL & MANGES LLP
                                                        201 Redwood Shores Parkway, 6th Floor
                                                        Redwood Shores, CA 94065-1134
                                                        Telephone: (650) 802-3000
                                                        Facsimile: (650) 802-3100
                                                        amy.le@weil.com

                                                        Attorneys for Defendant CABLE NEWS
                                                        NETWORK, INC.