**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CAROL LESH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CABLE NEWS NETWORK, INC.,<br><br>Defendant. | 1:24-cv-03132-VM |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE</u>**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

*Attorneys for Defendant Cable News Network, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 1

I. The Materials Attached to the Steinberg Declaration Can Be Considered by the Court ..... 1

II. Plaintiff Consented to the Terms of Use and Privacy Policy ..... 3

III. Plaintiff's Opposition Failed to Resuscitate Her Deficient § 638.51 Claim ..... 5

- A. Plaintiff Cannot Show § 638.51 Applies Beyond Telephone Communications ..... 5
- B. Plaintiff Cannot Show She Has a Legally Protected Interest in Her IP Address ..... 7
- C. Both Plaintiff and CNN Consented to the Alleged Conduct ..... 9

IV. Plaintiff Should Not Be Granted Leave to Amend ..... 10

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re College Bound Consol. Litig.*,
1994 WL 236163 (S.D.N.Y., May 31, 1994) ....................4

*Columbia Pictures Indus. v. Bunnell*,
2007 WL 2080419 (C.D. Cal. May 29, 2007) ....................8

*Distributorsoutlet.com, LLC v. Glasstree, Inc.*,
2016 WL 3248310 (E.D.N.Y. June 10, 2016) ....................2

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)....................9, 10

*Fernandez v. Zoni Language Ctrs., Inc.*,
2016 WL 2903274 (S.D.N.Y. May 18, 2016), *aff'd*, 858 F.3d 45 (2d Cir. 2017) ....................2

*Golden v. NBCUniversal Media, LLC*,
688 F. Supp. 3d 150 (S.D.N.Y. 2023)....................2, 3

*Gruber v. Yelp Inc.*,
55 Cal. App. 5th 591 (2020) ....................10

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024) ....................6, 7, 8

*Nat'l Union Fire Ins. Co. v. Seneca Fam. of Agencies*,
255 F. Supp. 3d 480 (S.D.N.Y. 2017)....................7

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ....................4

*Orozco v. Fresh Direct, LLC*,
2016 WL 5416510 (S.D.N.Y. Sept. 27, 2016)....................2

*Price v. Carnival Corp.*,
2024 WL 221437 (S.D. Cal. Jan. 19, 2024)....................5

*Rodriguez v. Fountain9, Inc.*,
2024 WL 3886811 (Cal. Super. Ct. July 9, 2024) ....................7

*Starke v. Gilt Groupe, Inc.*,
2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014)....................4

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
864 F.3d 236 (2d Cir. 2017)....................10

*TechnoMarine SA v. Giftports, Inc.*,
758 F.3d 493 (2d Cir. 2014)....................10

*United States v. Bansal*,
663 F.3d 634 (3d Cir. 2011)....................3

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ....................8

*United States v. Soybel*,
13 F.4th 584 (7th Cir. 2021) ....................8

*United States v. Ulbricht*,
858 F.3d 71 (2d Cir. 2017)....................7

*Vincent v. National Debt Relief LLC*,
2024 WL 3344227 (S.D.N.Y. July 8, 2024) ....................4

**Statutes**

Cal. Penal Code § 631....................10

Cal. Penal Code § 632....................10

Cal. Penal Code § 638.51.................... *passim*

Cal. Penal Code § 638.52....................5, 6

Electronic Communications Privacy Act....................9

Pen Register Act ....................6, 8

**Other Authorities**

Bill Analysis, Assemb. B. 929, Reg. Sess. (Cal. July 8, 2015),
http://www.leginfo.ca.gov/pub/15-16/bill/asm/ab_0901-0950/ab_929_cfa_20150406_093935_asm_comm.html ....................6

Black's Law Dictionary (12th ed. 2024)....................4

Judge Marrero, Individual Rules of Practice, Part II.B....................10

## PRELIMINARY STATEMENT

Plaintiff's Opposition fails to revive her deficient claim under the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code § 638.51. To begin, the materials CNN attached to its motion showing the website pop-ups notifying visitors of the Terms of Use and Privacy Policy are plainly appropriate for consideration by the Court, given they are publicly available website materials incorporated by reference into the Amended Complaint. These materials, coupled with Plaintiff's own allegation that she "regularly" visited the CNN website "throughout the entirety of the class period[,]" "sometimes multiple times a day[,]" establish that Plaintiff consented to CNN's Terms of Use and Privacy Policy. FAC ¶ 85. This is fatal to Plaintiff's claim, including because the Terms of Use contain a choice of law provision specifying application of New York law and a class action waiver, and the Privacy Policy discloses that CNN may collect visitors' IP addresses.

Moreover, even if Plaintiff could somehow sidestep CNN's Terms of Use and Privacy Policy—which she cannot given her own allegations—her Opposition did not and could not remedy the pleading deficiencies with her CIPA claim. Among other things, CIPA does not apply beyond telephone communications, Plaintiff lacks a legally protected interest in her IP address, and Plaintiff cannot overcome either her consent or CNN's consent to the alleged conduct, which bar her claim. Because Plaintiff's Opposition fails to suggest that providing her with the opportunity to amend would allow her to remedy these pleading deficiencies, the Amended Complaint should be dismissed with prejudice.

## ARGUMENT

### I. The Materials Attached to the Steinberg Declaration Can Be Considered by the Court

Contrary to Plaintiff's suggestion, the materials attached to the Steinberg Declaration are appropriately considered by the Court on this motion, as they are screenshots or similar printouts

from the CNN website or the archived version of the CNN website available through the Wayback Machine. Courts in this Circuit have repeatedly found these types of materials can be considered on motions to dismiss. Plaintiff ignores *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150 (S.D.N.Y. 2023), where this court took judicial notice of a webpage archived on the Wayback Machine attached to a lawyer's declaration where the "archived version [wa]s consistent with NBCU's representation." *Id.* at 165 n.14; *see also Distributorsoutlet.com, LLC v. Glasstree, Inc.*, 2016 WL 3248310, at *2 (E.D.N.Y. June 10, 2016) (collecting cases) ("[C]ourts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned[.]"); *Fernandez v. Zoni Language Ctrs., Inc.*, 2016 WL 2903274, at *3 (S.D.N.Y. May 18, 2016) ("Courts may also take judicial notice of information contained on websites where 'the authenticity of the site has not been questioned'"), *aff'd*, 858 F.3d 45 (2d Cir. 2017).

Plaintiff also ignores that the materials that CNN submitted—current and past webpages—are incorporated by reference into the Amended Complaint. Plaintiff repeatedly references CNN's website in her complaint. *E.g.*, FAC ¶¶ 1, 2, 3, 6, 20, 21, 35, 36, 37, 43, 44, 45, 46, 52, 53. The website materials are therefore appropriately considered by the Court in resolving CNN's motion. *Orozco v. Fresh Direct, LLC*, 2016 WL 5416510, at *5 (S.D.N.Y. Sept. 27, 2016) (assessing the "totality" of a website "incorporated by reference" into a complaint "at the center of Plaintiffs' allegations" in resolving a motion to dismiss).

Plaintiff's arguments to the contrary fail. Without explanation, Plaintiff purports to challenge the authenticity of the exhibits to the Steinberg Declaration (Opp. at 4), citing out-of-jurisdiction precedent to suggest that Wayback Machine screenshots needed to be authenticated

by a Wayback Machine representative. *United States v. Bansal*, 663 F.3d 634 (3d Cir. 2011).[1] But this Court has not required such authentication of Wayback Machine materials in considering such materials on resolving motions to dismiss. *Golden*, 688 F. Supp. 3d at 165 n.14 (considering Wayback Machine captures in resolving a motion to dismiss where the defendant attached these captures to a lawyer's declaration). Moreover, as to Plaintiff's purported authenticity concern, Mr. Steinberg has submitted a reply declaration explaining how the exhibits were generated, which cures any concern Plaintiff raised as to their origins. Steinberg Reply Decl. ¶¶ 4-6.[2]

## II. Plaintiff Consented to the Terms of Use and Privacy Policy

Plaintiff cannot avoid her own allegation establishing that she consented to the Terms of Use and Privacy Policy. Taking as true her claim that she "regularly visits" the CNN website—"sometimes multiple times a day"—and "has done so throughout the entirety of the class period[,]" Plaintiff encountered the pop-up in place on the CNN website in early 2023. FAC ¶ 85. As CNN explained, it presumes that Plaintiff is alleging that she regularly visited the CNN website from at least January 25, 2023—one year before the Complaint was filed—until January 25, 2024. MTD at 11. Assuming Plaintiff in fact visited the website "multiple times a day . . . throughout the entirety of the class period," as she alleges, she necessarily encountered the pop-up in place at that time, which required her to agree to the Terms of Use and Privacy Policy. *See* Steinberg Decl. Ex. A (showing that the pop-up remained in place at least as of February 11, 2023).

---

[1] The Third Circuit in *Bansal* admitted Wayback Machine captures, finding them to be authentic representations of the website at issue. 663 F.3d at 668.

[2] Plaintiff suggests that CNN was required to submit a separate request for judicial notice, but the Local Rules do not require this and this Court has considered materials from the Wayback Machine without such a request. *Golden*, 688 F. Supp. 3d at 165 n.14. Moreover, CNN requested that the Court take judicial notice of these materials in its moving brief. *See* MTD at 2 n.3. In any event, to the extent the Court determines that the submission of a separate request for judicial notice is required, CNN has submitted one with this Reply Brief. *See* CNN's Request for Judicial Notice.

Plaintiff selectively quotes her own allegation, omitting both the "multiple times a day" and "throughout the entirety of the class period" language, but she cannot avoid the allegation's actual phrasing. *See generally* Opp. Indeed, her allegation establishes that she visited the website on an at least daily basis from January 25, 2023 forward. *See, e.g.*, *In re College Bound Consol. Litig.*, 1994 WL 236163, at *2 (S.D.N.Y., May 31, 1994) (allegations that parties owned a certain percentage of College Bound's stock "[t]hroughout the Class Period" meant that those parties owned at least that percentage of stock for the duration of the entire class period); Black's Law Dictionary (12th ed. 2024) ("Entirety" means "[t]he whole, as opposed to a moiety or part").

Furthermore, CNN's pop-ups were sufficient to obtain visitors' consent to the Terms of Use and Privacy Policy, because, as CNN has explained, they required visitors to take action to manifest assent. *Starke v. Gilt Groupe, Inc.*, 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014) (plaintiff agreed to Terms of Membership where he was directed "exactly where to click in order to review those terms," regardless of whether he actually reviewed them). Moreover, regardless of whether a visitor in fact clicked "X" on the pop-ups, each pop-up informed visitors that by using the website, they were agreeing to CNN's terms. Steinberg Decl. Exs. A, F, I, K. This is consistent with this Court's recent decision in *Vincent v. National Debt Relief LLC*, where it explained the website could have "offer[ed] a pop-up page or any other technology informing the visitor upon entering the Website that there will be terms and conditions and that by staying on the Website for a specified period of time the visitor will be deemed to have consented to the terms and conditions" to convey its terms of use to the visitor. 2024 WL 3344227, at *12 (S.D.N.Y. July 8, 2024).[3]

[3] Plaintiff's cases invoked to suggest the pop-ups amount to unenforceable browsewrap agreements are inapposite for various reasons. In several of Plaintiff's cases, the website failed to provide any notice to visitors that they would be bound by the terms, unlike CNN. *E.g.*, *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178-79 (9th Cir. 2014). Plaintiff's cases involving pop-ups are similarly distinguishable, given CNN's pop-ups were more conspicuous, appeared

Based on her own allegations, the Court should find Plaintiff consented to CNN's Terms of Use and Privacy Policy. And, as CNN explained in its moving brief, the Court should therefore dismiss Plaintiff's CIPA claim, given the choice of law provision in the Terms of Use specifying application of New York law, as well as the disclosures in the Privacy Policy explaining that CNN may collect IP addresses. MTD at 10-11, 19-20. In addition, the Terms of Use contain a class action waiver, and Plaintiff's agreement to these Terms thus further requires dismissal and/or striking of her class claims. *Id.* at 22-24. Plaintiff has failed to address CNN's arguments as to the enforceability of these provisions, which the Court should apply to dismiss the complaint.

## III. Plaintiff's Opposition Failed to Resuscitate Her Deficient § 638.51 Claim

### A. Plaintiff Cannot Show § 638.51 Applies Beyond Telephone Communications

Plaintiff unsuccessfully attempts to avoid § 638.51's plain text, which makes clear the provision applies only to telephone communications. Section 638.51(a) incorporates § 638.52 by reference, stating "a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52[.]" Section 638.52 provides that such an order must specify "[t]he identity, if known, of the person . . . in whose name is listed the *telephone* line to which the pen register or trap and trace device is to be attached" and "[t]he *number* and, if known, *physical location of the telephone line* to which the . . . device is to be attached." Cal. Penal Code § 638.52 (emphasis added). As CNN explained, if the legislature intended for the statute to apply beyond telephone communications, it would not require law enforcement to obtain an order specifying the "number" and "physical location" of the "telephone line." MTD at 18-19.

---

immediately, and persisted for the duration of users' visits. *Compare*, *e.g.*, *Price v. Carnival Corp.*, 2024 WL 221437, at *4 (S.D. Cal. Jan. 19, 2024) *with e.g.*, Steinberg Decl. Ex. A. Plaintiff's citation to *Javier* for the point that retroactive consent cannot be obtained is similarly misplaced because CNN's pop-ups appeared immediately on visitors landing on the website. Opp. at 7.

Indeed, the legislative history makes clear that the pen register provisions were specifically enacted to enable law enforcement to use pen registers and trap and trace devices. Federal law at the time authorized law enforcement "to use pen register and trap and trace devices by obtaining a court order[,]" but did not "allow them to obtain an emergency order unless there [was] a state statute authorizing and creating a process for [them] to do so." Bill Analysis, Assemb. B. 929, Reg. Sess., at pg. T (Cal. July 8, 2015), http://www.leginfo.ca.gov/pub/15-16/bill/asm/ab_0901-0950/ab_929_cfa_20150406_093935 _asm_comm.html. At the time, California did not have such a statute. *Id.* Plaintiff ignores this legislative history, which underscores that the statute applies only to telephone communications. *Id.* at pg. S ("[A] 'pen register' . . . allows *law enforcement officers* to record all outgoing numbers from a particular telephone line . . . a 'trap and trace device' . . . allows them to record what numbers have called a specific telephone line.") (emphasis added).

Plaintiff also cannot distinguish *Cellular Telephone Digital Analyzer* by arguing the language of CIPA is "virtually identical" to the federal Pen Register Act, which was amended in 2001. Opp. at 15. As CNN explained, the federal Pen Register Act now permits technology to be "attached *or applied*" to a "telephone line *or other facility*," unlike CIPA. MTD at 14. Plaintiff offers no rebuttal to CNN's point that despite having amended CIPA several times, the legislature has not amended § 638.52 to apply to devices that can be "applied" to "other facilities." *See id.* This is why *Cellular Telephone Digital Analyzer*—which assessed a prior version of the federal statute that also did not contain the "applied" and "other facilities" language—is persuasive here.[4]

Lastly, Plaintiff cannot avoid *Licea* by asserting it is an unpublished trial court decision

[4] Plaintiff points to only two cases interpreting CIPA's pen register provisions to support her argument that it applies beyond telephonic communications: *Moody* and *Greenley*. Opp. at 12. Both are inapposite. As CNN explained, *Moody* involved distinct alleged facts and failed to consider the legislative history, and *Greenley* involved use of a telephone and recognized that pen registers traditionally "record all numbers called from a particular telephone." MTD at 12, 14 n.9.

that assessed conclusory allegations. Opp. at 14. This Court has recognized that "when there is no other binding authority on which to rely," as here, "federal courts may consider unpublished California opinions[.]" *Nat'l Union Fire Ins. Co. v. Seneca Fam. of Agencies*, 255 F. Supp. 3d 480, 486 n.3 (S.D.N.Y. 2017) (citation omitted). In addition, *Licea* dismissed the complaint because it made no "specific reference to a *mobile phone* or other . . . communication device potentially qualifying as a *cellular* device[.]" *Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (Cal. Super. Ct. Mar. 13, 2024) (emphasis added). In her Opposition, Plaintiff still does not assert she used a telephone, and her CIPA claim should be dismissed accordingly.

### B. Plaintiff Cannot Show She Has a Legally Protected Interest in Her IP Address

Plaintiff cites no cases holding CIPA's pen register provisions apply to collection of IP addresses. *See* Opp. at 16-21. Instead, she tries to avoid CNN's cases by arguing her case is distinct because she has pled that her IP address was disclosed to a third party, not just CNN. *Id.* at 18-19. But the § 638.51 decisions assessing the alleged disclosure of IP addresses do not hinge on who the recipient is—they simply find that plaintiffs lack a legally protected privacy interest in their IP addresses. For example, in *Rodriguez v. Fountain9, Inc.*, 2024 WL 3886811 (Cal. Super. Ct. July 9, 2024), the court dismissed a § 638.51 complaint where the defendant allegedly installed third party beacons that collected plaintiff's IP address, describing the "alleged injury [as] abstract and hypothetical because it is solely premised on statutory damages under CIPA." *Id.* at *3-4.[5]

Plaintiff also ignores that the cases she cites to assert IP addresses are analogous to phone numbers found the parties did not have legally protected interests in their IP addresses. *See* Opp. at 16; *United States v. Ulbricht*, 858 F.3d 71, 98 (2d Cir. 2017) (no reasonable expectation of

[5] Plaintiff also incorrectly claims the use of her information for marketing purposes suffices. Opp. at 18-20. *Rodriguez* dismissed plaintiff's pen register claim where she alleged her information was sold "to third parties for advertising and marketing purposes." 2024 WL 3886811, at *4.

privacy where an IP address reveals only if someone "is home and using the Internet"); *United States v. Soybel*, 13 F.4th 584, 593-94 (7th Cir. 2021) (defendant had "no reasonable expectation of privacy in the routing information collected by the pen registers[,]" that is, IP addresses); *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) (Individuals "have no expectation of privacy in the to/from addresses of their [emails] or the IP addresses of the websites they visit[.]").[6]

Moreover, Plaintiff does not dispute the collection of IP addresses is part of the normal functioning of the internet. MTD at 17. Finding a legally protected interest in Plaintiff's IP address would not only be inconsistent with the cases cited by both parties, it would render the statutory exception in § 638.51(b)(1) meaningless. That provision allows "[a] provider of [an] electronic or wire communication service" to use a pen register or trap and trace device to "operate, maintain, and test a wire or electronic communication service." Under the analogous federal Pen Register Act, "the collection of incoming IP addresses" by website operators is exempt from "the prohibition against the unauthorized use of trap and trace devices" where "defendants already and necessarily capture such data . . . to operate the website." *Columbia Pictures Indus. v. Bunnell*, 2007 WL 2080419, at *11 (C.D. Cal. May 29, 2007). As the *Licea* court recognized, finding a legally protected interest here would threaten to render every website "visited by a potential plaintiff, thereby providing an IP address[,]" a violator of CIPA. *Licea*, 2024 WL 1698147, at *4. The Court should not accept Plaintiff's sweeping invitation to interpret CIPA so broadly.[7]

---

[6] Plaintiff asserts the Court should not consider CNN's Fourth Amendment cases, but each of these cases on which she relies is a Fourth Amendment case. *Compare* Opp. at 16 *with id.* at 20-21.

[7] Plaintiff's footnote response to CNN's argument that the alleged conduct does not resemble the operation of a traditional pen register fails to dispute that an IP address reflects the source of an outgoing communication, not its destination. Opp. at 16 n.5. Plaintiff therefore cannot demonstrate that the alleged conduct is analogous to the operation of a traditional pen register, which records telephone numbers dialed. She also cannot show the alleged conduct is analogous to the operation of a trap and trace device, because it does not reflect collection of the sources of incoming communications, as a trap and trace device collects.

For these reasons, Plaintiff has failed to plausibly allege that CNN violated § 638.51 through the alleged collection and disclosure of her IP address.

**C. Both Plaintiff and CNN Consented to the Alleged Conduct**

Not only did Plaintiff consent to the alleged collection of IP addresses, she fails to demonstrate why CNN's alleged consent does not satisfy the statutory exception set forth in § 638.51(b)(5). *Id.* ("A provider of electronic or wire communication service may use a pen register or a trap and trace device . . . [i]f the consent of the user of that service has been obtained."). To begin, Plaintiff does not adequately explain why PubMatic, Rubicon, and Aniview cannot be considered "electronic or wire communication services" under the statute. By her own description, all three can be used to "target specific users or specific groups of users for advertisements"—that is, to communicate with website visitors electronically via advertisement. FAC ¶ 74. This satisfies even her preferred definition for "electronic communication service" as one "that provides to its subscribers or users the ability to send or receive electronic communications." Opp. at 21. Because CNN as the user of these technologies allegedly consented to their collection of IP addresses, the alleged conduct is exempt from liability under § 638.51(b)(5). *See* FAC ¶ 2.

Plaintiff also cannot avoid this Court's decision in *DoubleClick*, which involved very similar facts and an analogous statute. *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 510 (S.D.N.Y. 2001) (websites affiliated with an advertising technology provider validly consented to alleged collection of website visitors' information under the federal Electronic Communications Privacy Act ("ECPA")). As CNN explained, like CIPA § 638.51, the ECPA allows for disclosure with the consent of the user of the electronic communication service. MTD at 22. In addition, like the DoubleClick-affiliated websites, CNN consented to the alleged collection of website visitors' IP addresses by PubMatic, Rubicon, and Aniview. FAC ¶¶ 2, 31.

The Court should therefore apply the reasoning of *DoubleClick* and dismiss Plaintiff's claim here.[8]

Lastly, Plaintiff incorrectly suggests § 638.51 is a two-party consent statute. Opp. at 22. As CNN explained, the singular word "user" in § 638.51 differs from § 631, which prohibits wiretapping "without the consent of all parties . . . ." MTD at 21. Indeed, Plaintiff's cited case—*Gruber v. Yelp Inc.*—evaluated CIPA § 632, which also contains the "consent of all parties" language. 55 Cal. App. 5th 591, 607 (2020). The Court should therefore find that CNN's alleged consent to the collection of Plaintiff's IP address suffices for purposes of § 638.51(b)(5).

## IV. Plaintiff Should Not Be Granted Leave to Amend

The Court should deny Plaintiff's request for leave to amend because she fails to specify how she would cure her pleading deficiencies. *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if it fails to specify . . . how amendment would cure the pleading deficiencies in its complaint."); Opp. at 23. Moreover, because Plaintiff has repeatedly failed to plead key facts necessary for her § 638.51 claim, including that she used a telephone, leave to amend would be futile. *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 252 (2d Cir. 2017) (amendments are futile if they would still fail to state a claim); *see also* Judge Marrero, Individual Rules of Practice, Part II.B (encouraging amendment to cure pleading deficiencies identified in pre-motion correspondence).

## CONCLUSION

For the foregoing reasons and those in its moving brief, CNN respectfully requests that the Court dismiss the Amended Complaint with prejudice. CNN further requests that the Court dismiss and/or strike Plaintiff's class allegations based on her agreement to the class action waiver.

---

[8] Moreover, contrary to Plaintiff's suggestion, the decision in *DoubleClick* was made on a motion to dismiss. *See DoubleClick*, 154 F. Supp. 2d at 507 ("We must first address . . . whether DoubleClick's argument . . . is resolvable on a motion to dismiss.").

Dated: September 20, 2024

Respectfully submitted,

*/s/ David L. Yohai*

David L. Yohai
David R. Singh
Blake J. Steinberg
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
david.yohai@weil.com
david.singh@weil.com
blake.steinberg@weil.com

Amy Tu Quyen Le (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 6th Floor
Redwood Shores, CA 94065-1134
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
amy.le@weil.com

Attorneys for Defendant CABLE NEWS NETWORK, INC.