**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANTHONY D'ANTONIO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CABLE NEWS NETWORK, INC.,<br><br>Defendant. | 1:24-cv-03132-VM |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANT'S MOTION TO DISMISS</u>**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

*Attorneys for Defendant Cable News Network, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ........................................................................................................... 3

A. CNN's Website ......................................................................................... 3

B. Procedural History ..................................................................................... 4

LEGAL STANDARD.................................................................................................... 5

ARGUMENT ................................................................................................................ 6

I. Plaintiff Cannot Establish Article III Standing ................................................ 6

II. Plaintiff Has Insufficiently Alleged A "Pen Register" To Support His CIPA § 638.51 Claim ................................................................................................ 12

A. The Statute's Plain Text Forecloses Plaintiff's Claim ............................... 12

B. The Statute's Legislative History Forecloses Plaintiff's Claim .................. 14

III. Even Were The Court To Find CNN Used Or Installed A "Pen Register," CNN Was Authorized As An Electronic Communication Service Provider ............................ 16

CONCLUSION ............................................................................................................ 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................5, 6

*Aviles v. LiveRamp, Inc.*,
No. 24STCV19869, 2025 WL 487196 (Cal. Super. Ct. Jan. 28, 2025)....................15, 16

*Bohnak v. Marsh & McLennan Cos.*,
79 F.4th 276 (2d Cir. 2023)....................5, 6, 11

*Camacho v. DG Premium Brands LLC*,
No. 24STCV21672 (Cal. Super. Ct. Apr. 17, 2025)....................15, 17

*Carolus v. Nexstar Media Inc.*,
No. 24-CV-07790-VC, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025)....................10

*Casillas v. BOP LLC*,
No. 24STCV15581, 2025 WL 2161288 (Cal. Super. Ct. June 18, 2025)....................17

*Casillas v. Calvin Klein, Inc.*,
No. 25STCV04499, 2025 WL 3529009 (Cal. Super. Ct. Nov. 25, 2025)....................14

*Casillas v. Transitions Optical, Inc.*,
No. 23STCV30742, 2024 WL 4873370 (Cal. Super. Ct. Sept. 9, 2024)....................17, 18

*Columbia Pictures Indus. v. Bunnell*,
No. CV 06-1093FMCJCX, 2007 WL 2080419 (C.D. Cal. May 29, 2007)....................18

*Corley v. United States*,
556 U.S. 303 (2009)....................13

*Dane v. UnitedHealthcare Ins. Co.*,
974 F.3d 183 (2d Cir. 2020)....................6

*Deivaprakash v. Conde Nast Digit.*,
No. 25-CV-04021-RFL, 2025 WL 2541952 (N.D. Cal. Sept. 4, 2025)....................14

*Feldman v. Comp Trading, LLC*,
No. 19-CV-4452 (RPK) (RLM), 2021 WL 930222 (E.D.N.Y. Mar. 11, 2021)....................12

*Gabrielli v. Insider, Inc.*,
No. 24 Civ. 01566 (ER), 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025).................... *passim*

*Giammatteo v. Newton*,
452 F. App'x 24 (2d Cir. 2011) ....................5

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023)....................12

*Heiting v. FKA Distrib. Co.*,
No. 2:24-CV-07314-HDV-AGR, 2025 WL 736594 (C.D. Cal. Feb. 3, 2025)....................9

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) ....................9, 11

*Khamooshi v. Politico LLC*,
No. 24-CV-07836-SK, 2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) ....................7, 8, 9

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-cv-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025)....................14

*Lesh v. CNN*,
767 F. Supp. 3d 33 (S.D.N.Y. 2025)....................12, 13, 16

*Liau v. Weee! Inc.*,
No. 23 CIV. 1177 (PAE), 2024 WL 729259 (S.D.N.Y. Feb. 22, 2024)....................11

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024) ....................16

*In re Meta Pixel Tax Filing Cases*,
793 F. Supp. 3d 1147 (N.D. Cal. 2025) ....................13

*Mitchener v. CuriosityStream, Inc.*,
No. 25-CV-01471-NW, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025)
....................10, 12, 13, 14

*Palacios v. Fandom*,
No. 24STCV11264 (Cal. Super. Ct. Mar. 27, 2025) ....................15, 17

*In re Parmalat Sec. Litig.*,
421 F. Supp. 2d 703 (S.D.N.Y. 2006)....................12

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ....................7

*Price v. Converse, Inc.*,
Case No. 2:24-cv-08091, 2025 U.S. Dist. LEXIS 198738 (C.D. Cal. Sept. 30, 2025) ....................7, 9, 10

*Price v. Headspace, Inc.*,
No. 24STCV19921, 2025 WL 1237977 (Cal. Super. Ct. Apr. 01, 2025)....................12, 13, 14

*Rodriguez v. Culligan Int'l Co.*,
No. 25-CV-00225-AJB-KSC, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ..........................10

*Rodriguez v. First Am. Fin. Corp.*,
No. 24STCV05383 (Cal. Super. Ct. Apr. 30, 2025)..........................................................1, 17

*Salazar v. NBA*,
118 F.4th 533 (2d Cir. 2024), *cert. denied*, No. 24-994, 2025 WL 3506972
(U.S. Dec. 8, 2025) ..........................................................................................5, 8, 11, 12

*Sanchez v. Cars.com Inc.*,
No. 24STCV13201, 2025 WL 487194 (Cal. Super. Ct. Jan. 27, 2025)..................................14

*Scharon v. Paramount Glob.*,
No. 25STCV10585, 2025 Cal. Super. LEXIS 60786 (Cal. Super. Ct. Oct. 3,
2025) ..................................................................................................................................18

*Shields v. Citytrust Bancorp, Inc.*,
25 F.3d 1124 (2d Cir. 1994)..................................................................................................12

*Shoemaker v. Myers*
52 Cal. 3d 1 (1990) ...............................................................................................................13

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)..................................................................................................................6

*Sputz v. Alltran Fin., LP*,
No. 21-cv-4663 (CS), 2021 WL 5772033 (S.D.N.Y. Dec. 5, 2021) ........................................8

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)........................................................................................................1, 6, 7, 8

*United States v. Greenberg*,
127 F.4th 410 (2d Cir. 2025) ..................................................................................................13

*United States v. Ulbricht*,
858 F.3d 71 (2d Cir. 2017)......................................................................................................13

*Va. House of Delegates v. Bethune-Hill*,
587 U.S. 658 (2019)..................................................................................................................6

*Williams v. Harry's Nurses Registry, Inc.*,
No. 24-34-CV, 2025 WL 842041 (2d Cir. Mar. 18, 2025).......................................................6

*Zhizhi Xu v. Reuters News & Media Inc.*,
No. 24 CIV. 2466 (PAE), 2025 WL 488501 (S.D.N.Y. Feb. 13, 2025)........................ *passim*

**Statutes**

18 U.S.C. § 3127(4) ....................................................................................................13

Cal. Civ. Code §§ 1798.100(c), 1798.105 .....................................................................18

Federal Pen Register Act, 18 U.S.C. § 3121(b)(1) .........................................................18

**Other Authorities**

Federal Rules of Civil Procedure Rule 12(b)(1) ..............................................................1, 5, 11

Federal Rules of Civil Procedure Rule 12(b)(6) ...................................................................1, 5

Restatement (Second) of Torts § 652B (A.L.I. 1977).............................................................8

Restatement (Second) Torts § 652D (A.L.I. 1977)..................................................................8

Defendant Cable News Network, Inc. ("CNN") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff Anthony D'Antonio's Second Amended Complaint (the "Complaint" or "SAC") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

Within days of this Court's prior motion to dismiss ruling, two courts in this District dismissed near-identical "pen register" suits for lack of Article III standing. CNN promptly wrote to the Plaintiff's counsel explaining the Article III standing problem. In response, Plaintiff's counsel advised that they needed to substitute a new plaintiff and amend the pleadings. Now, adding only a smattering of largely irrelevant allegations about third party conduct, which do not cure the standing problem, D'Antonio tries to pick up where the prior plaintiff left off. But D'Antonio does not enter the same landscape. A wave of federal courts—including in California, the heartland of California Invasion of Privacy (CIPA) litigation—has now dismissed virtually identical allegations of data disclosure as too conclusory to anchor Article III standing. On the merits, state and federal courts have further keyed in on CIPA's plain text and history, exposing additional defects in Plaintiff's suit. At bottom, borne out by continued development of the jurisdictional *and* substantive law, Plaintiff's "pen register" suit is doomed multiple times over.

*First*, federal courts have now filtered Plaintiff's precise factual allegations through the teeth of *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). In so doing, federal courts have found that the alleged disclosure of a user's IP address, device metadata, and certain "user identifiers" —as Plaintiff alleges here—cannot support Article III standing. More specifically, in failing to plausibly plead the disclosure of *identifying* and *highly offensive* personal data, Plaintiff cannot demonstrate a "close relationship" to a "traditionally recognized" harm. Although CNN removed this action to federal court roughly 20 months ago with a different legal landscape, these jurisdictional defects—which have only been illuminated as federal courts continue to wade

through the flood of CIPA litigation—cannot be waived or forfeited. Indeed, the Court has an independent obligation to evaluate subject matter jurisdiction and it is now clear that it is lacking here.

*Second*, Plaintiff's assertions that third-party trackers "hoover up" as much data as possible, in an effort to "de-anonymize" him, entirely ignore a central requirement of the statute. As both state and federal courts have concluded—and as the Second Circuit has concluded in construing an identical provision of the analogous federal law—pen registers collect "information" about a communication, "but not the contents." CIPA § 638.50. And yet, courts have readily concluded that any allegation that defendant is seeking to "de-anonymize" a plaintiff, as Plaintiff here alleges, necessarily involves the alleged collection of "contents." The "not the content" requirement appears in the plain language of the statute and cannot be discarded as superfluous.

*Third*, Plaintiff's framing that third-party trackers are trying to de-anonymize *him* is both baseless and misplaced. The California legislature enacted Section 638.51 to enable law enforcement to track who *else* the known subject of an investigation was communicating with. Foundational to that orientation is the notion that the police know the subject of their investigation. Here, though, Plaintiff's framing is that defendant sought to glean *his* identity—not the identity of anyone he communicated with. Further undermining Plaintiff's theory, he cannot plausibly allege that CNN was even able to discern his identity. A "pen register" is defined by its capabilities at the point of data collection, not based on any alleged network of "downstream" information syncing. Yet, Plaintiff has not alleged the collection of *any* personally identifying data.

*Fourth*, even if Plaintiff could sufficiently allege the use of a "pen register" within the meaning of Section 638.51, which he has not, CNN is safeguarded by a statutory exemption. CIPA allows for providers of an "electronic communication service" to utilize a pen register to "operate,

maintain, and test" their website. CIPA defines an "electronic communication" as a transfer of "signs, signals, writings, images, sounds, data or intelligence of any nature" by "wire" transmission. Thus, as a provider of news, via the internet, CNN transfers "electronic communications." This makes CNN an "electronic communication service" provider. And given that the collection of IP addresses and device-browser information is necessary to route the CNN website to Plaintiff's browser upon request, CNN falls squarely within the exemption's ambit.

Accordingly, CNN respectfully submits that the Complaint be dismissed with prejudice.

## BACKGROUND

### A. CNN's Website

CNN.com is a world leading online news and information platform that seeks to "inform, engage and empower" its users. *See* SAC ¶ 1. Plaintiff alleges that when a user voluntarily visits the website, the user's browser sends CNN's server a multi-layered "HTTP request" or "GET" request to CNN's server, where the relevant website data is stored. SAC ¶ 26. CNN's server then allegedly sends a response back to the browser, with a set of instructions that typically include basic functions of the website such as the text and images that should appear. *Id.* ¶¶ 26-27. A user's IP address—an impersonal device identifier associated with the user's internet router—enables the responding server to know where to display the website, facilitating "smooth communication between devices." *Id.* ¶ 32.

Like numerous other websites on the internet, CNN has ad space that it sells to advertisers. *Id.* ¶ 44 n.7. Plaintiff alleges that third-party ad tech companies like PubMatic and OpenX ("Ad Tech Companies") provide CNN with scripts to integrate with the HTML code of CNN.com. *Id.* ¶¶ 57, 59. When someone visits CNN.com, the integrated third-party script allegedly causes a third-party cookie to be installed on the user's browser. *Id.* ¶ 60. That third-party cookie then allegedly collects the user's IP address and device-browser information and generates a unique ID

number ("cookie value") which, depending on the browser settings, may be transmitted to Ad Tech Companies. *See, e.g.*, *id.* ¶¶ 3, 60-61. Those companies then allegedly use the user's cookie value to "cookie sync" with one another and other third-party data brokers to build an advertising "profile" of the user based on shared information, refer in advertisers who bid on the ad space, and ultimately cause so-called targeted ads to be displayed to the user. *See, e.g.*, *id.* ¶¶ 62, 74, 113, 132, 163, 205, 239.

Based on these allegations, Plaintiff brings a single claim asserting that CNN violated CIPA § 638.51. *Id.* ¶¶ 251-261. Plaintiff alleges that CNN violated CIPA § 638.51 because the IP addresses, device-browser information, and "unique user IDs" (*i.e.*, cookie values) of Plaintiff and the putative class were collected using third-party "Trackers" that purportedly constitute "pen registers." *See id.* ¶¶ 253-261. Plaintiff claims to be a California resident who "regularly visited [CNN.com] on his desktop browser during the [undefined] class period, including in March 2025[,]" and seeks to represent a proposed class under Fed. R. Civ. P. Rules 23(a) and (b)(3) of "all California residents who accessed the Website in California and had their IP address collected by the Trackers." *Id.* ¶¶ 9, 235, 244.

### B. Procedural History

On January 25, 2024, Carol Lesh filed a putative class suit in California Superior Court, claiming that CNN violated CIPA § 638.51 because it collects IP addresses with the help of third-party Ad Tech Companies. CNN removed to federal court and, on April 11, 2024, the parties stipulated to transfer the action to the United States District Court for the Southern District of New York. ECF Nos. 1, 9. On June 14, 2024, Lesh filed a First Amended Complaint, and on August 7, 2024, CNN moved to dismiss the complaint and/or strike the class allegations. ECF Nos. 25, 32. By order dated February 20, 2025, the Court denied the motion, finding certain allegations sufficient "[a]t [the pleadings] stage." ECF No. 49.

On March 13, 2025, CNN wrote to the Court to promptly advise of two decisions, in this District, dismissing near-identical CIPA allegations for lack of Article III standing. *See* ECF No. 50. The following day—nearly six months after her death, and after briefing a motion to dismiss and filing several letters on her behalf—Plaintiff's counsel advised the Court that that Ms. Lesh had died. *See* ECF No. 51. Plaintiff's counsel indicated an intent to amend the pleadings and substitute a new plaintiff. *Id.*

At that juncture, CNN and Plaintiff's counsel agreed to engage in mediation. ECF No. 54. The parties did not resolve the dispute. ECF Nos. 58, 62. On October 16, 2025, Plaintiff D'Antonio filed the Second Amended Complaint against CNN. ECF No. 64.

## LEGAL STANDARD

To survive a Rule 12(b)(1) motion, "a plaintiff must show (1) an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressable by the court." *Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276, 283 (2d Cir. 2023) (quotation marks omitted). "A federal court lacks subject matter jurisdiction—and therefore cannot consider a lawsuit's merits—unless [all] three constitutional standing requirements are met." *Salazar v. NBA*, 118 F.4th 533, 540 (2d Cir. 2024), *cert. denied*, No. 24-994, 2025 WL 3506972 (U.S. Dec. 8, 2025). Moreover, the "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists." *Giammatteo v. Newton*, 452 F. App'x 24, 27 (2d Cir. 2011).

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In determining a complaint's adequacy, a court must disregard conclusory allegations and legal conclusions, which are not entitled to the assumption of truth, and determine whether the remaining "well-pleaded factual allegations" suggest the plaintiff

has a plausible—as opposed to merely conceivable—claim for relief. *Id.* at 679. The court is "not required to credit conclusory allegations or legal conclusions couched as factual . . . allegations." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020).

## ARGUMENT

### I. Plaintiff Cannot Establish Article III Standing

The Supreme Court is clear: "No concrete harm, no standing." *TransUnion*, 594 U.S. at 442. Here, Plaintiff cannot establish a concrete injury-in-fact, and thus, Plaintiff cannot meet the "irreducible constitutional minimum" of Article III standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Notwithstanding that this action was removed to federal court, a challenge to constitutional standing "cannot be waived or forfeited." *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 662-63 (2019). Indeed, federal courts "have an independent duty to consider whether subject matter jurisdiction exists even when no party has called the matter to the court's attention." *Williams v. Harry's Nurses Registry, Inc.*, No. 24-34-CV, 2025 WL 842041, at *2 (2d Cir. Mar. 18, 2025) (quotation marks omitted).

"*TransUnion* is the touchstone" for assessing whether Plaintiff has pled a concrete injury. *Bohnak*, 79 F.4th at 283. And now, decisions from this District and elsewhere, construing the constitutional sufficiency of near identical allegations, are the guideposts.[1] *See, e.g.*, *Zhizhi Xu v. Reuters News & Media Inc.*, No. 24 CIV. 2466 (PAE), 2025 WL 488501, at *3 (S.D.N.Y. Feb. 13, 2025) (dismissing CIPA § 638.51 claim for lack of Article III standing); *Gabrielli v. Insider, Inc.*, No. 24 Civ. 01566 (ER), 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) (same); *Khamooshi v. Politico LLC* ("*Khamooshi II*"), No. 24-CV-07836-SK, 2025 WL 2822879 (N.D. Cal. Oct. 2,

[1] As the first—and, to date, only—such decisions in this District were reached, CNN promptly wrote to the Court on March 13, 2025. *See* ECF No. 50.

2025). Most foundationally, these decisions illustrate that Plaintiff cannot establish any injury-in-fact bearing a "close relationship" to a "traditionally recognized" harm. *See, e.g.*, *Gabrielli*, 2025 WL 522515, at *3 (quotation marks omitted). Here, D'Antonio does "not allege that he has suffered the type of concrete injury that courts have commonly recognized as supporting standing, such as physical, monetary, or reputational harm." *Xu*, 2025 WL 488501, at *3. Rather, "sparse on facts particular to [him]," Plaintiff alleges a "privacy" injury. *Id.* But Plaintiff's generalized theory of intangible harm folds under examination.

To begin, Plaintiff has not even *identified* a "traditionally recognized" harm upon which the Court might anchor its jurisdiction. Plaintiff has claimed a "privacy inva[sion]," SAC ¶ 242, but this is not an "injury [that] resembles harm traditionally cognizable under the common law." *Xu*, 2025 WL 488501, at *3. Rejecting an identical "invasion of privacy" theory under the strictures of *TransUnion*, Judge Rakoff recently explained (sitting by designation on the Ninth Circuit) that there existed "no free-roaming privacy right at common law." *Popa v. Microsoft Corp.*, 153 F.4th 784, 792 (9th Cir. 2025). Rather, there were "four discrete torts" that addressed privacy-related harms, and courts must "look to the *specific* underlying harm experienced by the plaintiff and compare it, in detail, to a *specific* common-law tort." *Id.* at 791–92 (emphasis in original)). But Plaintiff has not identified such a tort, much less pleaded facts sufficient to support such a harm.[2] *Price v. Converse, Inc.*, Case No. 2:24-cv-08091, 2025 U.S. Dist. LEXIS 198738, at *4, *6 (C.D. Cal. Sept. 30, 2025) (finding that plaintiff's mere allegation of "invasion of privacy" "does not align with the analysis adopted in *TransUnion*," and cannot support Article III standing).

[2] Plaintiff separately alleges that "CIPA was enacted to protect against" "the right to determine who does and does not get to know one's information, a harm long recognized at common law." SAC ¶ 197. But as the *Gabrielli* court explained, an alleged "statutory violation" of CIPA is "a bare procedural violation, divorced from any concrete harm." 2025 WL 522515, at *8 (quotation marks omitted); *TransUnion*, 594 U.S. at 427 ("an injury in law is not an injury in fact").

Even "liberally construed" and held to the light of relevant common-law torts, Plaintiff cannot establish concrete harm. *Xu*, 2025 WL 488501, at *5 ("[Plaintiff's] analogy (to the extent he attempts one) fails"). Construing near identical allegations, courts have looked to the common-law claims for public disclosure of private facts and intrusion upon seclusion. *See, e.g.*, *Gabrielli*, 2025 WL 522515, at *4–6. Those claims both require disclosure of *personally identifying* information that is *highly offensive* to a reasonable person.[3] *Id*. And while an "exact duplicate" with a common law harm is not required, *Salazar*, 118 F.4th at 541, "where a key element of the analogous common-law or historical harm is missing, the plaintiff lacks standing." *Sputz v. Alltran Fin., LP*, No. 21-cv-4663 (CS), 2021 WL 5772033, at *3 (S.D.N.Y. Dec. 5, 2021). As it relates to Plaintiff's allegations against CNN, these harms require him to "identify the *specific* information allegedly disclosed." *Khamooshi II*, 2025 WL 2822879, at *3; *Xu*, 2025 WL 488501, at *3 (finding plaintiff failed to "allege that Reuters collected *sensitive* or *personally identifying* information" (emphasis added)).

Plaintiff does not plausibly allege that the disclosure or intrusion revealed his identity, much less that any "highly offensive" material was revealed. Plaintiff alleges that CNN caused the disclosure of his "IP address," "Device Metadata," and other "unique identifiers." SAC ¶¶ 3, 7, 60–62. From those ill-defined disclosures, Plaintiff alleges that third parties were able to "identify and de-anonymize the user," creating a "unique fingerprint" and "behavioral profil[e]."

[3] Public disclosure of private facts is triggered when one "gives publicity to a matter concerning the private life of another, . . . if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." *See* Restatement (Second) Torts § 652D (A.L.I. 1977)).

The intrusion upon seclusion tort states that "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *See* Restatement (Second) of Torts § 652B (A.L.I. 1977).

SAC ¶¶ 3, 61. But despite nearly 300-paragraphs outlining "data broker[ing], real-time bidding, and cookie syncing," *id*. at ¶ 163, Plaintiff omits the most "basic facts"—namely, any mention of the specific identifying and highly offensive information allegedly disclosed. *Heiting v. FKA Distrib. Co.*, No. 2:24-CV-07314-HDV-AGR, 2025 WL 736594, at *3 (C.D. Cal. Feb. 3, 2025). Ultimately, Plaintiff provides a screenshot showing that "Jaguar Land Rover" placed a "bid" to display a "banner" advertisement on CNN's website. *Id.* at ¶ 239. But Plaintiff "does not allege that [he actually] *received* any targeted advertising," "much less that [he] was concretely *harmed* by any such advertising."[4] *Xu*, 2025 WL 488501, at *3 (emphasis added). At bottom, there is no plausible basis to conclude that the bid to display a car ad on a particular browser evidences the disclosure of identifying or highly offensive information.

A slew of recent decisions construing *identical* allegations foreclose Plaintiff's theory of concrete harm. Considering the alleged disclosure of "browser and device data, IP addresses and other identifying information"—allegations mirroring Plaintiff's to the letter—the court in *Khamooshi v. Politico LLC* found plaintiff's assertions "too vague to assert a protectable privacy interest." *See Khamooshi v. Politico LLC* ("*Khamooshi I*"), 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025); *see also Khamooshi II*, 2025 WL 2822879, at *3 (dismissing with prejudice and finding that, despite re-pleading, plaintiff alleges "no embarrassing, invasive, or otherwise private information collected"). In *Price*, plaintiff alleged nearly identical data collection used to "fingerprint" and "deanonymize Plaintiff," but there, too, the court found the allegations not "remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Price*, 2025 U.S. Dist. LEXIS 198738, at *5–6. So, too, in *Michener*, the court

[4] Further still, Plaintiff suggests the bid was targeted at his *browser*, SAC ¶ 239, but information about the "*the device* used by [Plaintiff] to visit the [CNN] Website" is not "the type of information that courts have recognized as 'personal.'" *Xu*, 2025 WL 488501, at *5.

found that allegations where "personally identif[ying]" data was matched with "existing data" were too "conclusory" to anchor standing. *Mitchener v. CuriosityStream, Inc.*, No. 25-CV-01471-NW, 2025 WL 2272413, at *4 (N.D. Cal. Aug. 6, 2025); *see also Carolus v. Nexstar Media Inc.*, No. 24-CV-07790-VC, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025) (finding no injury-in-fact where plaintiffs alleged that defendant tracked "browser and device data" and "other identifying information" alongside IP addresses).

These decisions reflect a basic premise. To assess whether Plaintiff has pleaded the disclosure of both identifying and highly offensive information, "courts must examine the nature of the *specific* information at issue." *Gabrielli*, 2025 WL 522515, at *4 (emphasis added). Construing similarly generalized allegations, courts in this District and elsewhere have long recognized that there is "no reasonable expectation of privacy in an IP address," *id.*, and "[c]ourts have similarly concluded that internet users have no right to privacy in the metadata of their communication." *Rodriguez v. Culligan Int'l Co.*, No. 25-CV-00225-AJB-KSC, 2025 WL 3064113, at *5 (S.D. Cal. Nov. 3, 2025) (citing *Mitchener*, 2025 WL 2272413, at *5). And even more foundational than any categorical treatment of certain data, Plaintiff does not lend any allegation from which the Court could reasonably infer "that anyone could actually identify *him* from the [data] allegedly collected." *See Gabrielli*, 2025 WL 522515, at *4; *Mitchener*, 2025 WL 2272413, at *5 ("[Plaintiff] fails to convert that hypothetical into concrete harm to *him*" (emphasis in original)). Plaintiff's broad-brush allegations do not show that he was concretely harmed.

These defects stand in stark contrast to the types of disclosures that courts have found actionable. By way of example, the Second Circuit has found disclosure of a "social security … number, driver's license …, and passport," *Bohnak*, 79 F.4th at 281, 283, or, even, online behavior

linked to an "individual Facebook account," *Salazar*, 118 F.4th at 538, to be sufficiently identifying. But these disclosures are readily distinguishable because Plaintiff here fails to allege any "particular content" that was disclosed *and* fails to demonstrate that a third-party could "specifically identify *him* by reference" to the alleged disclosures. *Gabrielli*, 2025 WL 522515, at *5 (emphasis in original) (citing *Salazar*, 118 F.4th at 537–38). Put differently, "the exposure of data that is … unaccompanied by other [personally identifying information]" is not a concrete injury. *Liau v. Weee! Inc.*, No. 23 CIV. 1177 (PAE), 2024 WL 729259, at *5 (S.D.N.Y. Feb. 22, 2024) (quoting *Bohnak*, 79 F.4th at 288). Plaintiff's allegation that "user identifiers" were disclosed does not cure that defect.

Finally, Plaintiff's alternative theory that CNN was "unjustly enriched" is also futile. *See* SAC ¶ 242. Unjust enrichment requires that one party be "enriched at the expense of another." *Gabrielli*, 2025 WL 522515, at *7; *see also Xu*, 2025 WL 488501, at *3 ("To state the obvious, Reuters's increasing its revenue, by itself, does not harm Xu."). But even accepting Plaintiff's allegations as true at the pleading stage, he has not alleged monetary injury. Courts in this District have explained that a plaintiff does not have "standing merely because [defendant] profited off information associated with [plaintiffs]." *Gabrielli*, 2025 WL 522515, at *7. Thus, absent injury to any "legally protected privacy interest," Plaintiff's unjust enrichment theory does not establish Article III standing. *See Khamooshi I*, 786 F. Supp. 3d at 1179.

In sum, Plaintiff cannot establish Article III standing and the Court should dismiss the Complaint under Fed. R. Civ. P. 12(b)(1).

## II. Plaintiff Has Insufficiently Alleged A "Pen Register" To Support His CIPA § 638.51 Claim

### A. The Statute's Plain Text Forecloses Plaintiff's Claim

Even if Plaintiff had standing, which he does not, he has failed to state a claim because he does not allege that CNN used a "pen register" as that term is defined in the statute.[5] Both state and federal courts have recognized case-dispositive limitations on CIPA's reach, one of which is an outgrowth of this Court's prior ruling. As this Court previously explained, "when interpreting a statute, courts start with the text." *Lesh v. CNN*, 767 F. Supp. 3d 33, 41 (S.D.N.Y. 2025) (citing *Salazar*, 118 F.4th at 546). In so doing, the Court explained that CIPA § 638.50 is "vague and inclusive as to the *form* of [data] collection" but "specific as to the *type* of data collected." *Id*. (emphasis added) (quoting *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023)). State and federal courts alike have now expanded on this conclusion and found the statutory definition of "pen register" unambiguously clear in one vital respect.

A "pen register" is defined as being a device or process that collects certain "information" about a communication, "*but not the contents* of a communication." CIPA § 638.50 (emphasis added). In short, "if [content] is collected, the statute ceases to apply." *Mitchener*, 2025 WL 2272413, at *5; *see also Price v. Headspace, Inc.*, No. 24STCV19921, 2025 WL 1237977, at *3 (Cal. Super. Ct. Apr. 01, 2025) ("[pen registers] are designed to capture information about the communication, *but not the content* of the communication itself" (emphasis added)). Indeed,

---

[5] CNN "did not waive" statutory defenses "by failing to raise [them]" in moving to dismiss the prior complaint. *Feldman v. Comp Trading, LLC*, No. 19-CV-4452 (RPK) (RLM), 2021 WL 930222, at *2 (E.D.N.Y. Mar. 11, 2021) (citing *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)) ("the only defenses that are waived . . . involve the core issue of a party's willingness to submit a dispute to judicial resolution" (quotation marks omitted)). Accordingly, CNN may "raise [new] substantive arguments aimed at judicial resolution of the controversy in a new responsive pleading." *In re Parmalat Sec. Litig.*, 421 F. Supp. 2d 703, 713 (S.D.N.Y. 2006) (quotation marks omitted).

construing an identical provision of the federal Pen Register statute, the Second Circuit has explained that "pen registers… may not capture the 'contents of any communication.'" *United States v. Ulbricht*, 858 F.3d 71, 95 (2d Cir. 2017) (quoting 18 U.S.C. § 3127(4)). This clause of CIPA § 638.50, of course, cannot be discarded as "superfluous, void, or insignificant." *United States v. Greenberg*, 127 F.4th 410, 413 (2d Cir. 2025). It is the "most basic [of] interpretive canons" that a "statute should be construed so that effect is given to all its provisions." *Corley v. United States*, 556 U.S. 303, 314 (2009) (citation omitted); *see also Shoemaker v. Myers* 52 Cal. 3d 1, 22 (1990) ("We do not presume that the Legislature performs idle acts, nor do we construe statutory provisions so as to render them superfluous.").[6]

Plaintiff's CIPA claim fails because he alleges the tracking of the *content* of his communication. While the pleadings lack requisite specificity, Plaintiff's entire theory of statutory harm is that the Trackers are able to "form a detailed, unique *fingerprint* that allows for cross-site tracking and *behavioral* profiling," which he contends serve to "*de-anonymize*" him. SAC ¶ 61–62 (emphasis added). Federal courts have explained that "[a]ny 'fingerprint' that reveals biographical information is 'the content' of any communication between [a] visitor and website." *Mitchener*, 2025 WL 2272413, at *5. California courts have likewise explained that an alleged "collection of user behavior" derived by collecting information "every time a user clicks on a [web]page" necessarily includes the content of communication. *Price*, 2025 WL 1237977, at *3. Such a collection reflects "the substance of the communications between users and a website."

[6] One court has found that the "relevant statutory language is ambiguous," and drew, instead, on the legislature's general intent to safeguard a "free and civilized society." *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1153 (N.D. Cal. 2025). But this Court—any many others—has already concluded that the statute is "specific as to the type of data collected." *Lesh*, 767 F. Supp. 3d at 41. Moreover, as set forth below, consideration of the relevant legislative history only further undermines Plaintiff's suit.

*Casillas v. Calvin Klein, Inc.*, No. 25STCV04499, 2025 WL 3529009, at *1 (Cal. Super. Ct. Nov. 25, 2025). While Plaintiff attempts to blur the statute's delineation, in alleging that the Trackers collect "as much personal and demographic information as possible," SAC ¶ 7; *see also id*. ¶¶ 96, 98–99, 118, 120, 156, Plaintiff unequivocally takes his allegations beyond the ambit of pure "addressing . . . information." *See* CIPA § 638.50.[7]

From here, Plaintiff's claim unravels. Where Defendant "collects content," as Plaintiff alleges, "§ 638.50 does not apply." *See Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-01473-NW, 2025 WL 1745726, at *5 (N.D. Cal. June 24, 2025); *Mitchener*, 2025 WL 2272413, at *5 ("[If content] is collected, the statute ceases to apply."); *Deivaprakash v. Conde Nast Digit.*, No. 25-CV-04021-RFL, 2025 WL 2541952, at *3 (N.D. Cal. Sept. 4, 2025) ("devices that … also collect the contents of a communication fall outside the definition"); *Price*, 2025 WL 1237977, at *3 ("a [pen register], by definition, cannot capture the content of the communications."). At bottom, Plaintiff has alleged "too much for a cause of action" under section 638.51." *Casillas*, 2025 WL 3529009, at *2.

### B. The Statute's Legislative History Forecloses Plaintiff's Claim

The legislative history undergirding § 638.51 draws out additional infirmities in Plaintiff's suit. Beyond reference to the text, "the court's fundamental task is to ascertain legislative intent." *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Ct. Jan. 27, 2025). Section 638.51's history makes clear that the legislature conceived of "pen registers" as surveilling the outgoing communication of one *person* (i.e., Person A) to another *person* (i.e., Person B). Bill Analysis, Assemb. B. 929, Reg. Sess., at pgs. S, T–U (Cal. July 8, 2015) ("Section

[7] To the extent Plaintiff contends that his allegations are more limited in scope, and purely relate to "dialing, routing, addressing, or signaling information," *see* CIPA § 638.50, his basis for establishing a concrete injury-in-fact sufficient for Article III standing is only further undermined.

638.51 Analysis"), https://tinyurl.com/39jcb5np. The legislature recognized that such devices "are extremely useful for law enforcement" because they enable "law enforcement to track which *people* in an investigation are communicating with *one another*." *Id*. (emphasis added). Critically, as California courts have explained, the legislature started from basic the premise that "law enforcement by definition knows who the subject [of their investigation] is"—*i.e.*, Person A. Declaration of Sarah Ryu ("Ryu Decl.") Ex. A, Order re Demurrer & Mot. to Strike, at 3, *Camacho v. DG Premium Brands LLC*, No. 24STCV21672 (Cal. Super. Ct. Apr. 17, 2025). This foundational premise exposes two defects in the SAC.

First, in alleging that defendant sought to "de-anonymize and identify" *him*, Plaintiff's theory of harm is unmoored from the legislature's conception of a pen register. SAC ¶¶ 4, 7. Where "the allegations are not that Defendants were trying to learn who Plaintiff was communicating with"—but rather, that defendant sought to identify "Plaintiff[]" and his "undefined 'personal information'"—California state courts have dismissed CIPA § 638.51 claims. *See, e.g.*, Ryu Decl. Ex. A, *Camacho*, at 3-4. Of course, "the Legislature *could* regulate or prohibit" a defendant from "learning the identity of the person contacting it," but that is not what the legislature did with CIPA § 638. Ryu Decl. Ex. B, *See* Minute Order at 7, *Palacios v. Fandom*, No. 24STCV11264 (Cal. Super. Ct. Mar. 27, 2025) (emphasis added). Even stretching the statute into new digital contexts, the legislature's conception of a "pen register" cannot be disregarded.

Second, notwithstanding Plaintiff's inversion of the statute, Plaintiff cannot plausibly demonstrate that CNN even knew *his* identity. California courts have explained that "downstream use of data"—*i.e.*, the use of data post-collection—"is not a part of the definitions of pen registers or trap and trace devices." *Aviles v. LiveRamp, Inc.*, No. 24STCV19869, 2025 WL 487196, at *3

(Cal. Super. Ct. Jan. 28, 2025). Yet, Plaintiff's entire theory of harm rests on an exhaustive explanation of "data broker[ing], real-time bidding, and cookie syncing," *see* SAC ¶ 163—processes that occur "downstream" from the alleged collection. *Aviles*, 2025 WL 487196, at *3. "[I]t is the method of data collection itself that is at issue" in evaluating the existence of a pen register, and that determination is not impacted by allegations of "downstream" conduct. *Id*. As CNN explained in the Article III context, absent such post-collection conduct, there is no plausible basis to reasonably infer that an "IP address, Device Metadata, [or] unique user IDs" reveals his identity.[8] *See, e.g., Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *3 (Cal. Super. Ct. Mar. 13, 2024) (finding that IP addresses and related device information are not a "unique fingerprinting").

Whether viewed through the statute's plain text or the history that anchors it, Plaintiff has not plausibly pleaded the use or installation of a "pen register," and his lone claim must be dismissed.

## III. Even Were The Court To Find CNN Used Or Installed A "Pen Register," CNN Was Authorized As An Electronic Communication Service Provider

Even were the Court to find use or installation of a "pen register," CNN is safeguarded by a statutory exception. More specifically, as a "provider of electronic or wire communication service," CNN is entitled to use a pen register "[t]o operate, maintain, and test" its website. CIPA § 638.51(b)(1).

As Plaintiff explains, the CNN website provides "online news and information." SAC ¶ 1. As relevant to the statutory exemptions, that news and information is comprised of "writings,

[8] The Court's prior holding that IP addresses fall within the statute's reach does not establish otherwise. *Lesh*, 767 F. Supp. 3d at 40-42. Even applying the statute in new digital context, Plaintiff cannot demonstrate that the information he alleges is collected is sufficient, at the point of collection, to reveal his identity—much less who else he communicates with. *Id*.

images, sounds, data, or intelligence of any nature," and is transmitted by "wire." CIPA §§ 638.50, 629.51. In short, "[g]iven the breadth of the statutory definition," the pleadings demonstrate that the CNN website is an "electronic communication" provider. *Casillas v. Transitions Optical, Inc.*, No. 23STCV30742, 2024 WL 4873370, at *4 & n.2 (Cal. Super. Ct. Sept. 9, 2024) (finding defendant's website that sells eyeglasses qualifies under the statutory exception based on "[t]he broad definition of 'electronic communication.'"); *Casillas v. BOP LLC*, No. 24STCV15581, 2025 WL 2161288, at *2 (Cal. Super. Ct. June 18, 2025) (concluding defendant's clothing, shoes, and jewelry website ("www.shopbop.com") qualified as an "electronic communication service").

As such, CNN may avail itself of the statutory exceptions and is entitled to use a pen register "[t]o operate, maintain, and test" its website. CIPA § 638.51(b)(1). As explained above, CNN requires IP addresses and related device and browser metadata to load the CNN website on Plaintiff's browser. *See, e.g.*, SAC ¶¶ 26-43. Accordingly, CNN's conduct, which enables users like Plaintiff to "communicate[] with the website and the Internet at large" (*Id.* ¶ 39), is necessary for the website to properly operate. Notwithstanding the technological nuances at issue, California courts recognize that CNN's conduct "is a normal component of accessing a website such that there can be no liability here." Ryu Decl. Ex. C, Order re: Demurrer, at 3, *Rodriguez v. First Am. Fin. Corp.*, No. 24STCV05383 (Cal. Super. Ct. Apr. 30, 2025); Ryu Decl. Ex. B, Order re: Demurrer, at 7, *Palacios v. Fandom, Inc.*, No. 24STCV11264 (Cal. Super. Ct. Mar. 27, 2025) (dismissing CIPA § 638.51 claim and noting that "it is normal for websites to learn the IP addresses of their visitors, just as it is normal for cell phones to track the phone numbers of callers."); Ryu Decl. Ex. A, *Camacho*, at 3 ("[W]hen a person goes on a website . . ., the website needs to know

who that person is."); C*asillas*, 2024 WL 4873370, at *4 ("[U]nder the terms of the statute, obtaining IP addresses from ordinary user access does not violate the pen register statute.").[9]

Finally, California courts have underscored that CIPA cannot be read to "ignore other facets of California law." *Scharon v. Paramount Glob.*, No. 25STCV10585, 2025 Cal. Super. LEXIS 60786, at *5 (Cal. Super. Ct. Oct. 3, 2025). Namely, the California Consumer Privacy Act (CCPA) affirmatively "authorize[s] a business to collect, use, retain, and share 'a consumer's personal information'" as "reasonably necessary and proportionate," and provides consumers with "several remedies." *Id*. at *5–6 (citing Cal. Civ. Code §§ 1798.100(c), 1798.105). Construing CIPA to "categorically" prohibit the collection of data from "website visitors" would render "the CCPA's provisions permitting reasonable collection of such data [] a nullity." *Id*. at *6.

Accordingly, independent of the Court's findings on the antecedent questions of CIPA liability, CNN's conduct is nevertheless exempted from the law's reach.

**<u>CONCLUSION</u>**

For the foregoing reasons, CNN respectfully requests that the Court dismiss the Second Amended Complaint with prejudice.

---

[9] Courts interpreting the nearly identical exception in the Federal Pen Register Act, 18 U.S.C. § 3121(b)(1), mirrored by CIPA § 638.51, have likewise found that "the collection of incoming IP addresses by [a website operator] is exempt" from penalty because defendants "necessarily capture such data . . . to operate the website." *Columbia Pictures Indus. v. Bunnell*, No. CV 06-1093FMCJCX, 2007 WL 2080419, at *11 (C.D. Cal. May 29, 2007).

Dated: December 19, 2025

Respectfully submitted,

*/s/ David L. Yohai*

David L. Yohai
David R. Singh
Sarah Ryu
Blake J. Steinberg
Augustus I. Ipsen
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
david.yohai@weil.com
david.singh@weil.com
sarah.ryu@weil.com
blake.steinberg@weil.com
gus.ipsen@weil.com

Attorneys for Defendant CABLE NEWS NETWORK, INC.

**<u>Word Count Certification</u>**

Pursuant to Local Rule 7.1(c), I hereby certify that the total number of words in this memorandum, excluding the caption, table of contents, table of authorities, signature block, and this word count certification is 5,866.

/s/ *David L. Yohai*
David L. Yohai