**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANTHONY D'ANTONIO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CABLE NEWS NETWORK, INC.,<br><br>Defendant. | 1:24-cv-03132-VM |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

*Attorneys for Defendant Cable News Network, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 3

I. Plaintiff Has Not Established Article III Standing ........ 3

A. Plaintiff Cannot Demonstrate A "Concrete" Privacy Harm ........ 3

B. Plaintiff Cannot Demonstrate A "Concrete" Unjust Enrichment Harm ........ 5

C. The Prior Removal Is Not A Basis For Finding Article III Standing Or Awarding Fees And Costs To Plaintiff ........ 6

II. No "Pen Register" Is Alleged Under The Plain Statutory Text ........ 7

III. No "Pen Register" Is Alleged Under The Legislative History ........ 9

IV. CNN Is Exempt From Liability As An Electronic Communication Service Provider ........ 10

CONCLUSION ........ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bradshaw v. Lowe's Cos.*,
2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) ....1

*Camplisson v. Adidas Am., Inc.*,
2025 WL 3228949 (S.D. Cal. Nov. 18, 2025) ....5

*Casillas v. Transitions Optical Inc.*,
2024 WL 4873370 (Cal. Super. Ct. Apr. 23, 2024) ....10

*Dawidzik v. Tesla, Inc.*,
2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) ....2, 4, 6

*de Ayora v. Inspire Brands, Inc.*,
2025 WL 3707561 (N.D. Cal. Dec. 22, 2025) ....1

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) ....3

*Fregosa v. Mashable, Inc.*,
2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) ....1, 10

*Gabrielli v. Insider, Inc.*,
2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) ....1, 3, 5, 6

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal. July 14, 2025) ....5, 11

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ....10

*Harris v. iHeartMedia, Inc.*,
2026 WL 247875 (N.D. Cal. Jan. 29, 2026) ....5

*Hassid v. Alex & Ani, LLC*,
2026 WL 160535 (C.D. Cal. Jan. 20, 2026) ....5

*Heiting v. FKA Distributing Co.*,
2025 WL 736594 (C.D. Cal. Feb. 3, 2025) ....8

*Int'l Controls Corp. v. Vesco*,
556 F.2d 665 (2d Cir. 1977) ....6

*In re Jetblue Airways Corp. Priv. Litig.*,
379 F. Supp. 2d 299 (E.D.N.Y. 2005) ....................11

*Khamooshi v. Politico LLC* (*"Khamooshi I"*),
786 F. Supp. 3d 1174 (N.D. Cal. 2025) ....................4

*Khamooshi v. Politico LLC* (*"Khamooshi II"*),
2025 WL 2822879 (N.D. Cal. Oct. 2, 2025)....................4

*Kishnani v. Royal Caribbean Cruises Ltd*,
2025 WL 1745726 (N.D. Cal. June 24, 2025) ....................8

*Krzyzek v. OpenX Techs., Inc.*,
2026 WL 206855 (N.D. Cal. Jan. 27, 2026) ....................5

*Lesh v. CNN*,
767 F. Supp. 3d 33 (S.D.N.Y. 2025)....................1, 4, 7

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....................5

*Martin v. Franklin Cap. Corp*.,
546 U.S. 132 (2005)....................6

*In re Meta Pixel Tax Filing Cases*,
793 F. Supp. 3d 1147 (N.D. Cal. 2025) ....................7, 8

*Mirmalek v. L.A. Times Commc'ns LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ....................11

*Mitchener v. CuriosityStream, Inc*.,
2025 WL 2272413 (N.D. Cal. Aug. 8, 2025) ....................4, 7, 8

*Moody v. C2 Educ. Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) ....................8, 9

*In re Parmalat Sec. Litig.*,
421 F. Supp. 2d 703 (S.D.N.Y. 2006)....................7

*Popa v. Microsoft Corp*.,
153 F.4th 784 (9th Cir. 2025) ....................3, 4, 5

*Price v. Converse, Inc.*,
2025 WL 3295119 (C.D. Cal Sep. 30, 2025)....................4

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) ....................11

*Rodriguez v. Ink Am. Int'l Grp. LLC*,
2025 WL 4034985 (Cal. Super. Ct. Dec. 10, 2025)....................11

*Kirstie Semien, et al., v. Pubmatic Inc.*,
2026 WL 216333 (N.D. Cal. Jan. 27, 2026)....................5

*Shoemaker v. Myers*,
52 Cal. 3d 1 (1990)....................8

*Tamm v. Cincinnati Ins. Co.*,
858 F. App'x 412 (2d Cir. 2021)....................6

*TransUnion LLC v. Ramirez*,
594 U.S. 413....................1, 3, 5

*Va. House of Delegates v. Bethune-Hill*,
587 U.S. 658 (2019)....................6

**Other Authorities**

Restatement (Second) of Torts § 652B (A.L.I. 1977)....................3

**PRELIMINARY STATEMENT**

Despite its bluster, Plaintiff's Opposition cannot remedy the fact that he lacks Article III standing and fails to state a CIPA "pen register" claim against CNN. To mask these flaws, Plaintiff makes sweeping pronouncements that "the case law is not in Defendant's favor" (Opp. 1), quoting *Bradshaw v. Lowe's Cos.*, 2025 WL 3171740, at *7 (S.D. Cal. Nov. 12, 2025). But *Bradshaw* actually supports CNN, as the court there *dismissed*, on Article III grounds, allegations that "trackers" collected, *inter alia*, "IP addresses" and "undefined unique identifiers"—allegations near-identical to Plaintiff's here. *Id.* at *6.[1] Plaintiff also fails to grapple with the myriad CNN-favorable decisions cited in CNN's Motion, while many of his own cited authorities misapply the law or are inapposite. At bottom, when critically assessed, Plaintiff's allegations are defective for several standalone reasons.

*First*, Plaintiff has not alleged a "close relationship" to any "traditionally recognized harm," as required by the Supreme Court's Article III standing analysis in *TransUnion*. Plaintiff undisputedly has not alleged monetary harm or any other tangible injury. Instead, for the first time in his opposition brief, Plaintiff asserts that his alleged harm is "at least analogous to the tort of intrusion upon seclusion." Opp. 5. But such a theory "requires the intrusion"—*i.e.*, whatever *CNN* allegedly collected through CNN.com—"to have caused an injury, not a *subsequent* disclosure of the information gained from the intrusion"—*i.e.*, what third parties may have done downstream with Plaintiff's data. *Gabrielli v. Insider, Inc.*, 2025 WL 522515, at *6 (S.D.N.Y. Feb. 18, 2025) (emphasis added). Plaintiff focuses solely on what third parties allegedly did downstream. Opp.

---

[1] As for the other federal cases cited in Plaintiff's opening paragraph, one did not discuss Article III standing at all, *Fregosa v. Mashable, Inc.*, 2025 WL 2886399 (N.D. Cal. Oct. 9, 2025), and the other *granted* the motion to dismiss, *de Ayora v. Inspire Brands, Inc.*, 2025 WL 3707561 (N.D. Cal. Dec. 22, 2025).

3-5. But applying Plaintiff's new theory, the purported "intrusion" by CNN is the alleged collection of IP addresses, "Device Metadata," and "user identifier[s]" generated by third-party cookies (SAC ¶ 3)—anonymous information that does not even identify *individuals* and is necessary for normal internet operations. Indeed, CNN.com would not even render to the user without this information. Such conduct, thus, neither concerns "private" information nor is akin to any "highly offensive" disclosure actionable at common law. *Dawidzik v. Tesla, Inc.*, 2025 WL 3786963, at *5 (C.D. Cal. Dec. 29, 2025). Plaintiff's far-flung analogy fails and Plaintiff remains without Article III standing. This is not changed by the prior removal of this action. Given the CIPA jurisprudence (or lack thereof) at the time, it was objectively reasonable for CNN to remove then.

*Second*, Plaintiff's new insistence that his Article III standing is based on downstream data stitching is his downfall on the merits. While Plaintiff selectively ignores the plain text of CIPA § 638, a pen register, by definition, does not record "the contents" of communications—which digital "fingerprints" have been found to constitute. And while the definition of "pen register" refers to "record[ing]" certain information, it does not refer to any downstream activities using the allegedly recorded data. Therefore, any third-party use of *data* recorded by the Trackers does not equate to CNN's "use" of any "pen register."

*Third*, the legislative history also confirms that Plaintiff fails to allege any "pen register." In contending that the Trackers aim to discern *his* identity, Plaintiff's theory is inconsistent with the California legislature's conception of a "pen register"—devices used to discern who *else* an investigation subject communicates with.

*Finally*, as an electronic communication service provider, CNN is safeguarded by a statutory exception. Plaintiff voluntarily visited CNN.com, and to transmit the website to his browser, the CNN server requires the information allegedly collected.

Plaintiff's Complaint, thus, should be dismissed with prejudice.

## ARGUMENT

### I. Plaintiff Has Not Established Article III Standing

#### A. Plaintiff Cannot Demonstrate A "Concrete" Privacy Harm

As explained in CNN's Motion, Plaintiff lacks Article III standing because his Complaint fails to allege any concrete injury satisfying *TransUnion*. *See* Mot. 6–11. He undisputedly does not allege a tangible harm like monetary or physical injury. But in attempting to belatedly identify an intangible harm bearing a "close relationship" to a "traditionally recognized" harm, Plaintiff's opposition brief newly posits that the alleged privacy-related injuries are "at least analogous to the tort of intrusion upon seclusion." Opp. 5. But the *pleadings* must link a "*specific* common-law tort" to a "*specific* underlying harm experienced by the plaintiff." *Popa v. Microsoft Corp*., 153 F.4th 784, 791–92 (9th Cir. 2025) (noting "no free-roaming privacy right at common law").

Even running with Plaintiff's newfound theory, Plaintiff has not established a "close relationship" to such harm. *Gabrielli*, 2025 WL 522515, at *3. Intrusion upon seclusion requires that (1) a person intrude upon "*private* affairs or concerns," and (2) such intrusion "be *highly offensive* to a reasonable person." Restatement (Second) of Torts § 652B (A.L.I. 1977) (emphasis added). That theory of harm "requires the *intrusion* to have caused an injury, not a *subsequent* disclosure of the information gained from the intrusion." *Gabrielli*, 2025 WL 522515, at *6 (emphasis added). Plaintiff's authorities confirm as much: "it is the 'intrusion itself that makes the defendant subject to liability.'" *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 579 (N.D. Cal. 2025).

And yet, in Plaintiff's own words, the "information gained from the [alleged] intrusion" consists of three impersonal pieces: IP address, "Device Metadata," and a "user identifier" that third-party cookies allegedly "set."[2] SAC ¶¶ 3, 237; Opp 3. Most recently, the court in *Dawidzik v. Tesla* found that *none* of this information invades Plaintiff's "private affairs" or would be "highly offensive" to a reasonable person to disclose, making intrusion upon seclusion an inapt analogy. 2025 WL 3786963, at *4–5. Numerous courts also have found such information "too vague to assert a protectable privacy interest," *Khamooshi v. Politico LLC* (*"Khamooshi I"*), 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025), and the collection thereof not "remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law," *Price v. Converse, Inc.*, 2025 WL 3295119, at *3 (C.D. Cal Sep. 30, 2025); *see also Mitchener v. CuriosityStream, Inc.*, 2025 WL 2272413 at *3 (N.D. Cal. Aug. 8, 2025) (similar); *Khamooshi v. Politico LLC* (*"Khamooshi II"*), 2025 WL 2822879, at *3 (N.D. Cal. Oct. 2, 2025) (similar).[3] Plaintiff fails to reckon with these decisions. Instead, he claims that his Complaint stands apart because of allegations regarding third-party downstream activities. Opp. 9–10. But that line of argument runs counter to his new theory of harm. The purported "intrusion" is the alleged collection from CNN.com, not anything that allegedly occurred afterwards amongst third parties.

Plaintiff's cited authorities do not help him. For one, he relies on several decisions involving the alleged collection of sensitive health, political, and/or demographic information. *See*

---

[2] Plaintiff does not allege (nor could he) that *CNN* has anything to do with the generation of this cookie-created "identifier."

[3] Plaintiff's attempt to "distinguish[]" *Popa* on its facts (Opp. 10) is of no avail. Courts considering "allegations regarding device type, browser type, and device fingerprints," as alleged here, have found them "even *less specific* than the 30 different categories of information alleged in *Popa*." *Khamooshi II*, 2025 WL 2822879, at *3 (emphasis added).

Opp 4–5.[4] Here, the data allegedly collected from CNN.com is wholly impersonal—indeed, this data fuels normal internet operations. Plaintiff also draws on cases that suggest that CIPA § 638 "codif[ies] a substantive right to privacy, the violation of which gives rise to a concrete injury" for Article III standing. *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *6 (N.D. Cal. July 14, 2025); *see also Camplisson v. Adidas Am., Inc.*, 2025 WL 3228949, at *6 (S.D. Cal. Nov. 18, 2025) (similar). But that is not the law: "an injury in law is not an injury in fact." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427.[5] And Plaintiff's repeated reliance on *Deivaprakash v. Condé Nast Digital* is confounding—the defendant there solely challenged *statutory* standing. 798 F. Supp. 3d 1100, 1107 (N.D. Cal. 2025) ("Article III standing is different from, and not to be measured by, statutory standing.").[6]

**B. Plaintiff Cannot Demonstrate A "Concrete" Unjust Enrichment Harm**

Plaintiff's effort to bolster an unjust enrichment theory of harm likewise fails. As explained in CNN's Motion, that theory requires that one party be "enriched at the expense of another." *Gabrielli*, 2025 WL 522515, at *7. Plaintiff contends that CNN "derived a profit" from the sale

---

[4] Plaintiff's post-briefing submission of *Krzyzek v. OpenX Technologies, Inc.* and *Semien v. PubMatic, Inc*. is much the same. Dkt. 79; Dkt. 80. The plaintiffs in both cases brought suit against *data brokers* alleging that they themselves stitched together "cradle-to-grave profiles" comprised of sensitive personal information like "sociopolitical views" and "health status and treatment." Dkt. 79-1 at 4–5; Dkt. 80-1 at 7.

[5] Plaintiff's post-briefing submission of *Hassid v. Alex & Ani, LLC* (Dkt. 78) can be disregarded for similar reasons. The cases upon which the *Hassid* court relies "find[] no support in *TransUnion*." *Popa*, 153 F.4th at 794. Likewise, the court in *Harris v. iHeart Media, Inc.* nowhere grafts the allegations onto the framework of any traditionally recognized harm, much less intrusion upon seclusion. Dkt. 80-2.

[6] Plaintiff also cites *Deivaprakash* and a California state court decision to suggest that CNN fails to challenge the traceability prong of Article III standing. Opp. 5. But neither case discusses Article III standing. Nor is traceability alone sufficient to confer standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

of data associated with his "profile," Opp. 6, but Plaintiff does not allege that he incurred any corresponding monetary loss. *See Dawidzik*, 2025 WL 3786963, at *5. And while a "loss" for unjust enrichment purposes need not be monetary, as detailed above, Plaintiff fails to allege any other loss, including that of any "legally protected privacy interest." *Gabrielli*, 2025 WL 522515, at *7.

The Complaint, thus, does not establish Article III jurisdiction and should be dismissed.

### C. The Prior Removal Is Not A Basis For Finding Article III Standing Or Awarding Fees And Costs To Plaintiff

This conclusion does not change simply because CNN previously removed the case nearly two years ago under a different legal landscape, and the Court should not award fees and costs to Plaintiff on that basis either. As Plaintiff concedes, a challenge to constitutional standing "cannot be waived or forfeited." *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 662-63 (2019). Further, in the absence of any CIPA decision (let alone in this District) casting doubt on federal jurisdiction over Plaintiff's CIPA claim at the time of removal, CNN held an "objectively reasonable basis for seeking removal." *Tamm v. Cincinnati Ins. Co*., 858 F. App'x 412, 413 (2d Cir. 2021) (quoting *Martin v. Franklin Cap. Corp*., 546 U.S. 132, 136 (2005)).

CNN also promptly notified the Court of two S.D.N.Y. decisions dismissing near-identical CIPA allegations for lack of Article III standing (*see* Dkt. 50), which Plaintiff's counsel tried to brush away. It was only thereafter that Plaintiff's counsel advised the Court that the first plaintiff had died—nearly six months after-the-fact. The initial Complaint ultimately faltered for that reason. The current Complaint, with a new plaintiff and numerous new allegations, is not the same pleading that began the case. Accordingly, both CNN and the Court are all-the-more justified, and indeed have a duty, to properly assess Plaintiff D'Antonio's Article III standing. *See Int'l Controls*

*Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977) ("[A]n amended complaint ordinarily supersedes the original, and renders it of no legal effect.").

## II. No "Pen Register" Is Alleged Under The Plain Statutory Text

On the merits, Plaintiff again fails to meaningfully engage with CNN's Motion. Instead, Plaintiff misstates the Court's prior decision, which addressed the question of whether CIPA's pen register prohibition solely applies to the capture of telephone information. *See Lesh v. CNN*, 767 F. Supp. 3d 33, 40 (S.D.N.Y. 2025). And Plaintiff nowhere disputes that CNN may "raise [new] substantive arguments" in response to amended pleadings. *In re Parmalat Sec. Litig.*, 421 F. Supp. 2d 703, 713 (S.D.N.Y. 2006). CNN's Motion picks up where this Court left off: with "the plain text of Section 638.50." *Lesh*, 767 F. Supp. 3d at 41.

As this Court explained, CIPA's plain text is "specific as to the *type* of data collected." *Id*. (emphasis added). Specifically, "pen registers" are defined as collecting certain types of "information" about a communication, "*but not the contents* of a communication." CIPA § 638.50 (emphasis added). The upshot is simple: "if [content] is collected, the statute ceases to apply." *Mitchener*, 2025 WL 2272413, at *5.

Plaintiff's only rebuttal is that this carve-out "may" not matter.[7] Opp. 19. Referencing a line of decisions citing *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1153 (N.D. Cal. 2025)—and without referring to the statute's plain text—Plaintiff argues that a "pen register" can collect "both addressing information *and* the contents of a communication." Opp. 19. But *Meta Pixel* turned on the narrow question of whether CIPA precludes a device from being both a pen register under section 638 and a wiretap under section 631. *Meta Pixel*, 793 F. Supp. at 1153. The

[7] Plaintiff also contends that "it may be that differing processes collect 'addressing' information as opposed to 'contents.'" Opp. 19. But the Complaint is silent on Plaintiff's newest theory.

court found the "relevant statutory language [to be] ambiguous" as to that question. *Id.* But there is *no* ambiguity in the legislature's explicit carve-out of "contents" where Plaintiff himself now affirmatively pleads those "contents" to bolster a different argument. That language cannot be "render[ed] . . . superfluous." *Shoemaker v. Myers*, 52 Cal. 3d 1, 22 (1990).

Plaintiff next appears to back away from his own pleading, contending that he does not allege that communication "contents" were collected. However, Plaintiff's new claimed theory of Article III injury (which CNN rejects) is that third parties are able to "form a detailed, unique fingerprint" through the Trackers. SAC ¶¶ 61–62; Opp. 3-5. Plaintiff has alleged that such third-party Trackers collect "as much personal and demographic information as possible." SAC ¶ 7. But, collection of an alleged "'fingerprint' that reveals biographical information is"—precisely—"'the content' of any communication." *Mitchener*, 2025 WL 2272413, at *5.

Plaintiff posits that "content" collection would have required him to plead the use of "form fields" or information entry directly into CNN.com. Opp. 18. But Plaintiff presents no basis for this atextual reading of the statute. In fact, multiple courts have rejected CIPA claims where plaintiffs alleged the collection of "contents," regardless of whether the plaintiff entered information directly into the website. *See, e.g., Kishnani v. Royal Caribbean Cruises Ltd*, 2025 WL 1745726, at *5 (N.D. Cal. June 24, 2025); *Mitchener*, 2025 WL 2272413, at *5.

Plaintiff's authorities do not salvage his position. For example, in *Heiting v. FKA Distributing Co.*, 2025 WL 736594 (C.D. Cal. Feb. 3, 2025)—where the court dismissed on Article III grounds—the court did not address whether the software at issue collected the "contents of a communication." *See also Moody v. C2 Educ. Sys. Inc.,* 742 F. Supp. 3d 1072, 1077 (C.D. Cal. 2024) (declining to address whether certain "device and browser data" constituted "contents"). Plaintiff again draws heavily on *Deivaprakash*, but there, the court affirmed that "devices that . . .

collect the contents of a communication fall *outside* the definition" of a pen register. 798 F. Supp. 3d at 1105 (emphasis added). The court otherwise declined to determine whether "contents" were collected as a matter of law based solely "on an interpretation of a screenshot of 'traffic from [the plaintiff's] browser.'" *Id*.

Relatedly, Plaintiff has no real answer to the *Aviles v. LiveRamp, Inc.* court's finding that "downstream use of data" is "not a part of the *definition*[] of [a] pen register[] . . . ." 2025 WL 487196, at *3 (Cal. Super. Ct. Jan. 28, 2025) (emphasis added). Plaintiff points to CIPA § 638.51's prohibition on the "*use*" of a pen register (Opp. 21), but that is meaningless if there is no pen register at all. The definition of "pen register" in § 638.50 refers to "record[ing]" certain addressing information, but it does *not* refer to any subsequent use of recorded information, let alone by third parties, stitched together with data collected from elsewhere. Accordingly, Plaintiff's extensive allegations about "data broker[ing], real-time bidding, and cookie syncing" (SAC ¶ 163)—all downstream processes exclusively involving third parties, not CNN—have nothing to do with the existence of a pen register nor any use of one by CNN.

## III. No "Pen Register" Is Alleged Under The Legislative History

The legislative history of Section 638 similarly forecloses Plaintiff's claim. As discussed in CNN's Motion, the California legislature conceived of "pen registers" as surveilling the outgoing communication of one person (*i.e.*, Person A) to another person (*i.e.*, Person B). Mot. 14–16. Foundational to that conception was that law enforcement only sought to learn who *else* their investigation subject was communicating with (Persons B, C, etc.). *Id*. at 15. But the Complaint only claims "de-anonymization" of Plaintiff (Person A) and Plaintiff's Opposition fails to reckon with this inversion. Plaintiff only reiterates the Court's prior finding that "pen registers" need not "operate the same way as a traditional phone pen register," and rattles off cases that fail

to grapple with the legislature's conception of *whom* a pen register is designed to surveil.[8] Opp. 19–20.

Because Plaintiff fails to allege any "pen register" consistent with both the statutory language and the legislative history, his Complaint fails.

## IV. CNN Is Exempt From Liability As An Electronic Communication Service Provider

To the extent the Complaint alleges any "pen register," a statutory exemption entitles CNN to use it "[t]o operate, maintain, and test" CNN.com as an electronic communication service provider. CIPA § 638.51(b)(1). Plaintiff argues that CNN is not entitled to that designation merely because "it maintains a website that allows for the transmission of electronic communication." Opp. 22. But CNN.com does not *just* "allow for" electronic communication. As Plaintiff alleges, CNN.com provides "online news and information," SAC ¶ 1, and that "news and information"—transmitted via "wire," CIPA § 629.51—is comprised of "writings, images, sounds, data, or intelligence of any nature." CIPA § 638.51. Since CNN requires the allegedly collected information to properly operate and load CNN.com on Plaintiff's browser, *see* SAC ¶¶ 26-43, the § 638.51(b)(1) exemption shields CNN's conduct.

Plaintiff suggests that his allegations concerning data collection activities of *third parties* bars application of the exemption. Opp. 24. But that is belied by the exemption's plain language, which solely concerns how *the electronic communication service provider* uses the pen register. *See* CIPA § 638.51(b). Plaintiff's cited authorities (Opp. 24) also say no such thing—most do not even discuss the § 638.51(b)(1) exemption at all. *See, e.g.*, *Fregosa*, 2025 WL 2886399.

---

[8] Plaintiff's reliance on *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023), and its progeny, is particularly unavailing. As one California court explained, *Greenley* is unpersuasive because the case concerned a data broker rather than, as here, a website operator. *See Casillas v. Transitions Optical Inc.*, 2024 WL 4873370, at *7 (Cal. Super. Ct. Apr. 23, 2024).

As to Plaintiff's other cases, some do not involve a CIPA claim at all. *See, e.g.*, *In re Jetblue Airways Corp. Priv. Litig.*, 379 F. Supp. 2d 299, 307 (E.D.N.Y. 2005) (interpreting the Electronic Communications Privacy Act). In others, the defendant failed to identify allegations supporting the exemption's applicability. *Gabrielli*, 2025 WL 1939957, at *6; *Mirmalek v. L.A. Times Commc'ns LLC*, 2024 WL 5102709, at *5 (N.D. Cal. Dec. 12, 2024); *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 930 (C.D. Cal. 2025).

Further, as explained in CNN's Motion, applying the § 638.51(b)(1) exemption to CNN's alleged conduct is also justified when viewed in conjunction with the California Consumer Protection Act ("CCPA"), which was enacted to address internet tracking and permits reasonable data collection. Mot. 18. Plaintiff waves away the *Scharon v. Paramount Global* decision, Opp. 25-26, where the court reasoned that a CIPA claim like Plaintiff's is at odds with the CCPA's permissions. 2025 WL 2996812, at *2 (Cal. Super. Ct. Oct. 3, 2025). But other California courts have likewise held that an "expansive reading of CIPA, criminalizing web based analytical tools" (similar to those here) "would seemingly render CCPA void." *Rodriguez v. Ink Am. Int'l Grp. LLC*, 2025 WL 4034985, at *4 (Cal. Super. Ct. Dec. 10, 2025). CNN should not be drowned in a legislative vortex solely created by Plaintiff's unnatural and tortured reading of CIPA's "pen register" provisions.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

Dated: February 6, 2026

Respectfully submitted,

*/s/ David L. Yohai*

David L. Yohai
David R. Singh
Sarah Ryu
Blake J. Steinberg
Augustus I. Ipsen
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
david.yohai@weil.com
david.singh@weil.com
sarah.ryu@weil.com
blake.steinberg@weil.com
gus.ipsen@weil.com

Attorneys for Defendant CABLE NEWS NETWORK, INC.

**Word Count Certification**

Pursuant to Local Rule 7.1(c), I hereby certify that the total number of words in this memorandum, excluding the caption, table of contents, table of authorities, signature block, and this word count certification is 3,477.

/s/ *David L. Yohai*
David L. Yohai