USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__4/9/2026__

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ANTHONY D'ANTONIO, individually and on behalf of all others similarly situated,

                    Plaintiff,

                - against -

CABLE NEWS NETWORK, INC.,

                  Defendant.

**24 CV 3132 (VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Plaintiff Anthony D'Antonio, individually and on behalf of all others similarly situated ("D'Antonio"), brings this class action against defendant Cable News Network, Inc. ("CNN"), alleging violations of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 638.51(a) ("Section 638.51"). D'Antonio alleges that CNN caused third party trackers to be installed on CNN.com visitors' internet browsers and that CNN, along with those third parties, used the data collected by the trackers to de-anonymize and identify users and hyper-target them with advertising. (See "Second Amended Complaint" or "SAC," Dkt. No. 64.) CNN now moves to dismiss D'Antonio's claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack of Article III standing and Rule 12(b)(6) for failure to state a claim upon which relief may be granted. (See "MTD," Dkt. No. 73.) CNN

1

separately argues that even if D'Antonio has stated a claim, CNN is safeguarded by a CIPA exception that applies to electronic communication service providers. (See id.) For the reasons set forth below, CNN's motion to dismiss is **DENIED.**

## I.    BACKGROUND[1]

CNN owns and operates the website CNN.com (the "Website"), which uses third-party trackers (the "Trackers") to collect Website visitors' internet protocol ("IP") addresses and device identifier information such as device type, browser type, and other metadata. (See SAC ¶¶ 1-3.) The Trackers are operated by separate third parties, including PubMatic, Microsoft, and OpenX (the "Third Parties"). (See id. ¶ 2.) The Trackers set a cookie that includes unique user identifiers, which the Third Parties use, as D'Antonio alleges, to identify and de-anonymize Website users and target them with advertising. (See id. ¶ 3.) By synchronizing with data brokers, or as a result of being data brokers themselves, the Third Parties match user information and metadata with "comprehensive profiles" held by those data brokers, enabling the Third Parties to create a "more complete and non-anonymous portrait of the user," which can include

---

[1] Except as otherwise noted, the following background derives from the Second Amended Complaint. (See Dkt. No. 64.)

personal and demographic information. (See, e.g., id. ¶¶ 98, 118, 164.) D'Antonio additionally alleges that the "data brokers possess information that can identify users by name (in addition to a whole host of other information), and combine that information with information about users' hobbies, interests, and attributes." (See id. ¶ 168.) Ultimately, the user profiles as compiled are sold through a bidding process to advertisers who are able to better target Website users, resulting in increased advertising revenue for CNN. (See id. ¶ 164.)

D'Antonio contends that at least one advertiser bid on his information, alleging that the third party PubMatic received a response from "Jaguar Land Rover," which showed D'Antonio an advertisement by filling a "banner" space on the Website. (Id. ¶ 239; Opp'n at 6.) D'Antonio further asserts that "Jaguar Land Rover was likely one of hundreds of advertisers to whom D'Antonio's profile - linked to him via the information collected by the Trackers on the Website - was broadcast without his knowledge and consent." (Opp'n at 8; see, e.g., SAC ¶¶ 188, 193, 238, 240.)

D'Antonio alleges that the Trackers constitute a "pen register" pursuant to CIPA § 638.50(b) ("Section 638.50") and that CNN violated CIPA Section 638.51, which states that "a person may not install or use a pen register or a trap and

trace device without first obtaining a court order." Cal. Penal Code § 638.51(a); (see SAC ¶¶ 5-6).

The first complaint in this action was filed on January 25, 2024, in California Superior Court by plaintiff Carol Lesh ("Lesh"). (See CNN's memorandum of law, "Mem.," Dkt. No. 74 at 4.) CNN removed the case to federal court and, on April 11, 2024, the parties stipulated to transfer the action to this District. (See Dkt. Nos. 1, 9.) On June 14, 2024, Lesh filed a first amended complaint. (See "First Amended Complaint" or "FAC," Dkt. No. 25.) On August 7, 2024, CNN moved to dismiss that complaint and/or strike the class allegations. (See Dkt. No. 32.) On February 20, 2025, the Court denied CNN's motion to dismiss. (See "2025 Decision," Dkt. No. 49.) On March 14, 2025, Lesh's counsel informed the Court of Lesh's death, stating that counsel had been retained by a new client and intended to file an amended complaint to substitute representatives of the putative class. (See Dkt. No. 51.) After failing to resolve the dispute through mediation, on October 16, 2025, D'Antonio filed the Second Amended Complaint. (See SAC.)

On December 19, 2025, CNN filed its motion to dismiss, supported by a memorandum of law and supporting exhibits. (See Dkt. Nos. 73-75.) On January 20, 2026, D'Antonio filed an opposition and supporting exhibits. (See "Opp'n," Dkt. No.

76; Dkt. No. 77.) On February 6, 2026, CNN filed a reply. (See "Reply," Dkt. No. 81.) The parties have additionally filed several notices of supplemental authority and corresponding responses. (See Dkt. Nos. 78-80, 82-84.)

## II.  **LEGAL STANDARD**

When a matter before the Court involves a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), the Court must consider the Rule 12(b)(1) motion first because "disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." Gannon v. 31 Essex St. LLC, No. 22-CV-1134, 2023 WL 199287, at *2 (S.D.N.Y. Jan. 17, 2023) (internal quotation marks and citation omitted).

Pursuant to Rule 12(b)(1), the Court must dismiss a case for lack of subject matter jurisdiction if the Court "lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). The party asserting subject matter jurisdiction bears the burden of establishing, by a preponderance of the evidence, that jurisdiction exists. See Morrison v. Nat'l Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted). "[T]he court must take all facts alleged in the complaint as true," Nat. Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006) (citation

omitted), but "no presumptive truthfulness attaches to the complaint's jurisdictional allegations." Guadagno v. Wallack Ader Levithan Assocs., 932 F. Supp. 94, 95 (S.D.N.Y. 1996). When evaluating a Rule 12(b)(1) motion, the Court may consider evidence outside of the pleadings to resolve the disputed jurisdictional fact issues. See Zappia Middle East Construction Co. Ltd. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Sikhs for Justice v. Nath, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (citation omitted). Thus, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court accepts all factual allegations in the complaint as true and draws all

reasonable inferences in the plaintiff's favor. See Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009). In considering a Rule 12(b)(6) motion, a district court may also consider "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." Doe v. N.Y. Univ., No. 20-CV-1343, 2021 WL 1226384, at *10 (S.D.N.Y. Mar. 31, 2021) (citation omitted).

### III. DISCUSSION

#### A.    ARTICLE III STANDING

CNN argues that D'Antonio cannot establish Constitutional Article III standing because he fails to identify a "'traditionally recognized' harm upon which the Court might anchor its jurisdiction" – contending that D'Antonio's claimed privacy invasion is not the type of injury "traditionally cognizable under the common law." (Mem. at 7.)

Under Article III, federal courts have the power to resolve "Cases" and "Controversies." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021). As the party invoking federal jurisdiction, a plaintiff must establish that he or she has standing, or a personal stake, in a case. See id.; Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). To establish standing, plaintiffs must show that they have suffered an injury in fact that is (1) concrete and particularized; and (2) actual or imminent. See Lujan, 504

U.S. at 560. "Plaintiffs must also show that the injury is traceable to the defendant's alleged conduct and that it is likely that the injury is redressable by judicial relief." Gabrielli v. Insider, Inc., No. 24-CV-01566, 2025 WL 522515, at *3 (S.D.N.Y. Feb. 18, 2025).

"Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." TransUnion, 594 U.S. at 427. To determine whether a plaintiff has alleged a concrete harm, courts "consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." Spokeo, Inc. v. Robins, 578 U.S. 330, 341 (2016). Although "an exact duplicate in American history and tradition is not required," courts have explained that Spokeo is not an "open-ended invitation for federal courts to loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." TransUnion, 594 U.S. at 424-25.

Traditional harms can include intangible harms such as "reputational harms, disclosure of private information, and intrusion upon seclusion." Id. at 425. "To evaluate whether an alleged intangible harm is concrete, the Court must ask whether the plaintiff has identified a close historical or

common-law analogue for their asserted injury." <u>Gabrielli</u>, 2025 WL 522515, at *3 (internal quotation marks and citation omitted).

In summary, D'Antonio argues that the information the Third Parties collect allows them to identify users by linking those users to "comprehensive, non-anonymous profiles maintained by data brokers using the IP addresses, Device Metadata, and unique identifiers collected directly from users on the Website." (Opp'n at 3-4; <u>see, e.g.</u>, SAC ¶¶ 4, 7, 238-40.) D'Antonio contends that "those profiles are offered up for sale to a near endless supply of advertisers without [the users'] knowledge or consent." (<u>Id.</u>) Those allegations in the Second Amended Complaint, D'Antonio asserts, sufficiently support a claim for injury "at least analogous to the tort of intrusion upon seclusion." (<u>Id.</u>)

"[A] claim for intrusion upon seclusion has two elements: (1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person." <u>Opperman v. Path, Inc.</u>, 205 F. Supp. 3d 1064, 1072 (N.D. Cal. 2016).

CNN first argues that D'Antonio does not adequately plead disclosure of personally identifying information or that the intrusion would be highly offensive to a reasonable person. (<u>See</u> Mem. at 8-9.) CNN contends that despite D'Antonio

alleging "that CNN caused the disclosure of his 'IP address,' 'Device Metadata,' and other 'unique identifiers'" – in addition to assertions that "third parties were able to 'identify and de-anonymize [D'Antonio],' creating a 'unique fingerprint' and 'behavioral profil[e]'" – D'Antonio fails to plead "any mention of the specific identifying and highly offensive information." (Id.) Further, CNN contends that D'Antonio does not allege that he ever received or was harmed by any targeted advertising and does not "lend any allegation from which the Court could reasonably infer 'that anyone could actually identify *him* from the [data] allegedly collected.'" (Id. at 8-10.) Finally, CNN argues, citing Gabrielli, 2025 WL 522515, at \*6, that D'Antonio fails to plead that the intrusion itself caused the injury – contending that D'Antonio's allegations merely constitute the "subsequent disclosure of the information gained from the intrusion," which is insufficient to support a theory of harm. (Reply at 3.)

Courts are divided over whether plaintiffs who bring similar actions, asserting analogous factual allegations and circumstances to those presented by the instant litigation, can establish Article III standing. CNN points the Court to cases including Zhizhi Xu v. Reuters News & Media Inc., No. 24-CV-2466, 2025 WL 488501 (S.D.N.Y. Feb. 13, 2025),

10

Gabrielli v. Insider, Inc., No. 24-CV-01566, 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025), and Khamooshi v. Politico LLC, No. 24-CV-07836, 2025 WL 2822879 (N.D. Cal. Oct. 2, 2025), in which CIPA Section 638.51 claims were dismissed because the courts found that the plaintiffs lacked Article III standing. In Xu, for example, the court dismissed allegations that Reuters unlawfully collected the plaintiff's IP address and disclosed information to third parties, finding that the complaint did not plead that Reuters "collected sensitive or personally identifying information data that could be used to steal [plaintiff's] identity or inflict similar harm." 2025 WL 488501, at *3. The Khamooshi court also found that similar allegations – including, in part, the disclosure of IP addresses, browser and device data, browsing activity, and geolocation data - were insufficient to support a concrete privacy injury. 2025 WL 2822879, at *2; see also Maghoney v. Dotdash Meredith, Inc., No. 24-CV-2394, 2026 WL 497402, at *5 (S.D. Cal. Feb. 23, 2026) (finding that the alleged dissemination of search history did not constitute a legally protectable privacy interest that could establish the concrete injury required for Article III standing).

Nevertheless, other courts have found that similar allegations sufficiently support Article III standing and have declined to dismiss plaintiffs' claims on that ground.

11

For example, in <u>Camplisson v. Adidas America, Inc.</u>, 809 F. Supp. 3d 1095, 1106 (S.D. Cal. 2025), the court – presented with similar allegations – found that the plaintiffs adequately alleged that the trackers on the defendant's website "collected a broad set of their personal identifying and addressing information without their consent." Those assertions, the court explained, were sufficient to maintain a claim for "violation of privacy, particularly in the control of their own information." <u>Id.</u> Because the alleged "injury-in-fact [wa]s in accordance with traditional privacy harms and [wa]s concrete," the plaintiffs did not lack Article III standing. <u>Id.</u> Further, in <u>Gilligan v. Experian Data Corp.</u>, No. 25-CV-02873, 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026), the court declined to dismiss the plaintiffs' allegations that the defendant engaged in "unauthorized widespread tracking and data collection, allowing it to compile detailed profiles of each Plaintiff's online web browsing activity." In reaching its outcome, the court explained that "[a]t the pleading stage, such allegations satisfy the requirement for a 'highly offensive' intrusion that invades reasonable internet users' expectations of privacy." <u>Id.</u>

From those decisions – and others presented by the parties – the Court can glean no determinative or dispositive

factual circumstance or allegation warranting adherence to a specific line of cases.[2] Therefore, given the stage of the litigation here, the Court is persuaded to follow the direction of the district courts that have declined to grant a motion to dismiss on the basis of lack of Article III standing. Several of D'Antonio's allegations lead the Court to conclude that he has adequately pleaded a concrete injury – or an intangible harm that has a close, but not identical relationship to a harm that has traditionally been recognized at common law. See Spokeo, 578 U.S. at 341; TransUnion, 594 U.S. at 424–25.

D'Antonio's Second Amended Complaint includes allegations that: (1) CNN "causes numerous trackers" owned by the Third Parties "to be installed on Website visitors' internet browsers"; (2) "the Third Parties are data brokers or sync with the Linked Data Brokers to uniquely identify and de-anonymize Website users by matching users' their IP addresses, Device Metadata, and unique ID values with

---

[2] However, the Court is persuaded – similar to the Gilligan and Camplisson courts – that Popa v. Microsoft Corp., 153 F.4th 784 (9th Cir. 2025), which CNN also cites, is off-point given the factual circumstances present in that case. In Popa, the court found that the alleged injury did not have a common-law analogue, see 153 F.4th at 789, but as the Camplisson court remarked, the facts in that case are "distinguishable from the facts presented in this case, where the collection of Plaintiffs' information concerns their person, is much broader in scope, and has been found to be a privacy harm in a wide variety of cases." 809 F. Supp. 3d at 1106.

comprehensive profiles held by the Linked Data Brokers (or the Third Parties themselves)"; (3) "the Third Parties share that information amongst one another and with other entities like the Linked Data Brokers to create the most complete user profile they can (through cookie syncing), which includes a more complete and non-anonymous portrait of the user"; and (4) "those profiles are offered up for sale through the real-time bidding process to the benefit of Defendant, the Third Parties, and the Linked Data Brokers and to the detriment of users' privacy interests." (SAC ¶¶ 2, 164, 257.)

Based on the above allegations, the Court finds that D'Antonio has sufficiently pleaded a violation of a privacy interest bearing a "close relationship" to a traditionally recognized harm. See, e.g., Krzyzek v. OpenX Techs., Inc., No. 25-CV-05588, 2026 WL 206855, at *4 (N.D. Cal. Jan. 27, 2026) (allegations that the defendant collected "cookies, IP addresses, hashed email addresses, HTTP headers that specify information such as type of browser, device and operating system information, location information, and other unique identifiers" were sufficient to establish standing, as they constituted a "highly offensive intrusion of privacy that invades a reasonable internet user's expectation of privacy") (internal quotation marks and citation omitted); Harris v. iHeartMedia, Inc., No. 25-CV-06038, 2026 WL 247875, at *2

14

(N.D. Cal. Jan. 29, 2026) (finding Article III standing where plaintiff alleged that defendant installed trackers onto browsers that sent identifying information, including the user's IP address and device metadata, to third parties); Hassid v. Alex & Ani, LLC, No. CV 25-0679, 2026 WL 160535, at *1, *3 (C.D. Cal. Jan. 20, 2026) (finding Article III standing where the plaintiff alleged that trackers engaged in "fingerprinting" and collected data about users' device and browser information, geographic information, and other personalized information).

Accordingly, the Court finds that D'Antonio has established Article III standing sufficient to enable this action to proceed to the next stage of the litigation.

B.    FAILURE TO STATE A CLAIM

CNN next argues that even if D'Antonio has standing to bring this action, the allegations must be dismissed for failure to state a claim because CNN did not use a "pen register" as defined by CIPA. (See Mem. at 12.) To state a claim for relief under Section 638.51, D'Antonio must adequately allege that the third-party Trackers qualify as pen registers, which are defined by the statute as a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic

communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b).

In its 2025 Decision, relying on Greenley v. Kochava, Inc., 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023), this Court found that the Trackers could be considered a "device or process," because they constitute software that identifies consumers, gathers data, and correlates that data. (2025 Decision); Cal. Penal Code § 638.50(b). This Court further found that the IP addresses collected by the Trackers qualify as "addressing information" under the statute and that the IP addresses are "transmitted by an instrument or facility from which a wire or electronic communication is transmitted." Id.

In the instant motion, CNN argues that the statute does not apply because D'Antonio "alleges the tracking of the *content* of his communication," which runs counter to CIPA's requirement that the device or process records or decodes "information . . . but not the contents of a communication." Cal. Penal Code § 638.50(b); (Mem. at 12). CNN contends that because D'Antonio's "new claimed theory of Article III injury" is that the Trackers "form a detailed, unique *fingerprint* that allows for cross-site tracking and *behavioral* profiling," and that the Trackers collect "as much personal and demographic information as possible," the claim in dispute must fail because those allegations relate to the

tracking of the communication's content. (Id. at 12-14; Reply at 8.)

Similar to the divided authority regarding Article III standing, courts that have faced the question of whether a digital fingerprint revealing user information constitutes the "content" of the communication at issue have reached differing conclusions. CNN points to cases such as Mitchener v. CuriosityStream, Inc., No. 25-CV-01471, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025), in which the court found that "TikTok Software [that] 'fingerprint[ed]' Website visitors to 'collect[ ] as much data as it [could] about a normally and otherwise anonymous Website visitor'" collected "content" and thus fell outside the statute's purview.

In opposition, D'Antonio cites cases that reach opposite conclusions and find that "fingerprinting" does not always constitute the collecting of content. See, e.g., Fregosa v. Mashable, Inc., No. 25-CV-01094, 2025 WL 2886399, at *5 (N.D. Cal. Oct. 9, 2025), motion to certify appeal denied, No. 25-CV-01094, 2026 WL 183857 (N.D. Cal. Jan. 23, 2026) (finding that, at the pleading stage, alleging that device "fingerprints" – which serve as "unique identifiers across websites and browsing sessions" - record information "while not capturing the substantive content of the communications,

is sufficient to plausibly state that they function as pen registers").

Given a survey of the recent case law, this Court is once again persuaded to follow the trend of other courts that have found that trackers collecting fingerprinting information or other similar data do not necessarily collect the "content" of that information such that exclusion from CIPA's purview is warranted. See, e.g., Semien v. PubMatic Inc., No. 25-CV-03164, 2026 WL 216333, at *1, *10 (N.D. Cal. Jan. 27, 2026) (finding plaintiffs' allegations that the PubMatic tracker collected "fingerprint information" could support a CIPA Section 638.51 claim); Garon v. Keleops USA, Inc., No. 25-CV-02124, 2025 WL 2522374, at *2, *4 (N.D. Cal. Sept. 2, 2025) (finding plaintiff's allegations that the trackers formed a "unique fingerprint that allow[ed] for cross-site tracking and behavioral profiling" were sufficient to withstand a motion to dismiss); Greenley, 684 F. Supp. 3d at 1050 (finding that "software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting'" could constitute a pen register); Camplisson, 809 F. Supp. 3d at 1107 (finding that trackers, which recorded personal information and data contained in IP addresses – and collected information through

18

"fingerprinting" – could "plausibly constitute pen registers").

The Court is similarly unpersuaded by CNN's argument that the "statute's plain text or the history that anchors it" belies D'Antonio's allegations. (Mem. at 14-16.) Any nuances in the circumstances present in the matter at hand are not dispositive given the ample precedent cited above – cases in which courts routinely found that the plaintiffs' claims could not be foreclosed at the motion to dismiss stage of the litigation despite CIPA's legislative history.

Therefore, the Court finds that D'Antonio has sufficiently alleged the use of a "pen register" in support of his CIPA claim.

C.    CIPA'S EXCEPTION

Finally, CNN argues that even if D'Antonio has stated a claim for a violation of CIPA Section 638.51, CNN is "safeguarded" by Section 638.51(b)(1) of the statute, which provides that "[a] provider of electronic or wire communication service may use a pen register . . . [t]o operate, maintain, and test a wire or electronic communication service." Cal. Penal Code § 638.51; (Mem. at 16). CNN contends that the online news and information provided on its Website "is comprised of 'writings, images, sounds, data, or intelligence of any nature,' and is

19

transmitted by 'wire,'" pursuant to CIPA Sections 638.50 and 629.51. (Mem. at 16-17.) CNN further argues that the exemption applies because CNN "requires the allegedly collected information" – including the "related device and browser metadata" – "to properly operate and load" the Website. (Mem. at 17; Reply at 10.) D'Antonio counters that "the extent of the recorded information" does not relate to CNN's operation, maintenance, or testing of the Website. (Opp'n at 23.)

Here, given the allegations and the breadth of data alleged to have been tracked in this case, the Court finds that this question raises factual issues not suitable to be resolved on a motion to dismiss. See, e.g., Garon v. Keleops USA, Inc., No. 25-CV-02124, 2025 WL 2522374, at *6 (N.D. Cal. Sept. 2, 2025) ("Whether [the defendant] uses the Trackers to operate, maintain, and test a wire or electronic communication service . . . is a question of fact not suitable for [resolution on] a Rule 12(b)(6) motion, which tests the sufficiency of the pleadings.") (cleaned up).

Accordingly, the Court declines to dismiss D'Antonio's claim pursuant to CIPA Section 638.51(b)(1).

## IV.  ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Dkt. No. 73) filed by defendant Cable News Network, Inc. to dismiss the Second Amended

Complaint (Dkt. No. 64) of plaintiff Anthony D'Antonio, individually and on behalf of all others similarly situated, is **DENIED**.

**SO ORDERED.**

Dated:    9 April 2026
          New York, New York

                                    _____
                                    Victor Marrero
                                    U.S.D.J.

21